1          IN THE UNITED STATES BANKRUPTCY COURT

2             SOUTHERN DISTRICT OF TEXAS

3                HOUSTON DIVISION

4   WEST, TRUSTEE                §     CASE NO. 10-AP-03703
                                 §     HOUSTON, TEXAS
5   VERSUS                       §     TUESDAY,
                                 §     JUNE 21, 2011
6   WRH ENERGY PARTNERS, LLC,    §
    ET AL                        §     1:31 P.M. TO 2:25 P.M.

7

8                   ADVERSARY HEARING

9          BEFORE THE HONORABLE MARVIN ISGUR
             UNITED STATES BANKRUPTCY JUDGE

10

11

12                   APPEARANCES:

13      FOR DEFENDANT:      SEE NEXT PAGE

14      COURT RECORDER:     KIMBERLY PICOTA

15      COURTROOM DEPUTY:   RISHONA SMITH

16

17

18

19

20                   PREPARED BY:

21      JUDICIAL TRANSCRIBERS OF TEXAS, INC.
                 P.O. Box 925675
22            Houston, Texas 77292-5675
23      Tel:  281-277-5325 ▼ Fax:  281-277-0946
             www.judicialtranscribers.com
24

25      Proceedings recorded by electronic sound recording;
         transcript produced by transcription service.

1                          <u>**APPEARANCES**</u>**:**

2  **FOR THE TRUSTEE:**                **STRAWN PICKENS LLP**
                                    **By:  Andrew L. Pickens, Esq.**
3                                   **1001 Fannin Street, Ste 4665**
                                    **Houston, TX  77002**
4                                   **713-659-9600**

5                                   **STRAWN PICKENS, LLP**
                                    **By:  John R. Strawn, Jr., Esq.**
6                                   **1001 Fannin Street, Ste 4665**
                                    **Houston, TX  77002**
7                                   **713-659-9600**

8

9

   **FOR WRH ENERGY PARTNERS:**        **PATTON BOGGS LLP**
10                                  **By:  Robert Jones, Esq.**
                                    **2000 McKinney Ave., Ste 1700**
11                                  **Dallas, TX 75201**
                                    **214-758-1500**

12

13 **FOR HUFF ENERGY FUND, LP:**       **(Appearing Telephonically)**
                                    **Edward T. Dartley, Esq.**
14                                  **67 Park Place**
                                    **Morristown, NJ  07960**
15                                  **973-984-1233**

16

17

18

19

20

21

22

23

24

25

1      **HOUSTON, TEXAS; TUESDAY, JUNE 21, 2011; 1:31 P.M.**

2           **THE COURT:**  All right.  We're here in the West

3    versus WRH and Huff Adversary Proceeding, 10-3703.  I'll go

4    ahead and take appearances here in court.  And then we have

5    on appearance here on the phone today.

6               Mr. Strawn, go ahead.

7           **MR. STRAWN:**  Yes, John Strawn and Andrew Pickens

8    here for the Trustee.

9           **THE COURT:**  Thank you.

10              Mr. Jones?  Good afternoon.

11          **MR. JONES:**  Good afternoon, Your Honor.  Bob Jones

12   from Patton Boggs here on behalf of the Defendants.

13          **THE COURT:**  All right.  Who do we have on the

14   telephone today?  Is there anybody on the phone?  It's a 973

15   area code?

16          **MR. DARTLEY:**  Yes.  Ed Dartley for Huff Energy

17   Fund.

18          **THE COURT:**  All right.  And are you just going to

19   listen today, sir?

20          **MR. DARTLEY:**  Yes, sir.

21          **THE COURT:**  Okay.  I'll go ahead and mute your

22   line so you can take phone calls, type and things of that

23   nature.  Thank you.

24              All right.  I want to start with Federal Rule

25   of Civil Procedure 12(d), as incorporated by 7012, which

1   deals with when matters that are filed under Rule 12(b) can

2   be considered on a Summary Judgment basis.

3            What I'm focused on are the arguments that

4   are going back and forth between the parties as to whether

5   we can consider the *res judicata* issue that is one of the

6   principal issues in this motion at this stage.

7            I want to find out what additional evidence,

8   if any, needs to be presented to the Court or needs to be

9   discovered by the parties in order to get a full exposition

10  of the *res judicata* matter. so that if and when we decide

11  it, we're deciding it for all times.

12           So I want to know from both sides what do you

13  all need for me to proceed under Rule 12(d) to decide the

14  issue without a question?

15           Mr. Jones, it's your -- I guess it's sort of

16  your argument to begin with, but do you need any other

17  material to be satisfied you're getting a full and fair

18  hearing prior to the time of the final trial on that

19  question?

20           **MR. JONES:**  No, Your Honor.  In fact, one of the

21  issues, as the Court I'm sure is aware from reviewing the

22  pleadings, is whether or not this issue can be raised on a

23  12(b) Motion.

24           **THE COURT:**  Right.

25           **MR. JONES:**  And one of the things that I am

1  intending to address today is why it can be appropriately

2  addressed today because the allegations on which that

3  defense is based are in the Complaint.

4       **THE COURT:**  I've read that.  And I know you've

5  cited some cases there, but I'm not sure I'm even going to

6  have to get that far depending on what other people needed

7  additional evidence.  And I think I've got discretion

8  anyway.  So I really do want to hear what it's going to take

9  to get to the bottom of that question.

10       **MR. JONES:**  Nothing further.

11       **THE COURT:**  You don't need anything further in the

12  way of evidentiary records.

13           Mr. Pickens, Mr. Strawn, what do you all

14  need?

15       **MR. PICKENS:**  Well, we, you've read the briefs on

16  the necessary authority saying that *res judicata* is

17  appropriately addressed in Summary Judgment.  We would want

18  to do discovery in the run up to the Sale Order and see what

19  it is and was not that the parties thought that they

20  actually positing for the Court to be decided by means of

21  the Sale Order.

22       **THE COURT:**  But I mean, there's language in the

23  Sale Order.  And it determined that they are a good faith

24  purchaser.  It determines they have a valid claim.  That

25  can't be varied by anything that occurred prior to that

1  Order, I don't think, because it's an Order and it is

2  unambiguous.  So what good would that discovery do --

3         **MR. PICKENS:**  Agreed, Your Honor.

4         **THE COURT:**  -- in determining whether this is *res*

5  *judicata*?

6         **MR. PICKENS:**  Agreed, Your Honor.  But the parties

7  -- we would like to go into whether the parties truly

8  believe, whether Huff believed and the Trustee believed,

9  that is part of that Sale Order, they were actually

10 litigating the claims that the Trustee brings in this

11 action:  The torts of misrepresentation, the torts of non-

12 disclosure.  All the things that the Defendants say are

13 barred by the sale.  We don't believe there will be any

14 record of that and we'd like to confirm that.

15        **THE COURT:**  Well, for the purposes of today's

16 hearing, let me just ask Mr. Jones if he'll stipulate that

17 there'll be no record leading up to the Order and that if

18 he's relying on the pure Order -- I mean, will you stipulate

19 that there's nothing leading up to the Order that would

20 support that anybody had any particular intent?  It's just

21 the Order is the Order, is your position?

22        **MR. JONES:**  That's correct, Your Honor.

23        **THE COURT:**  So you have that stipulation for

24 today.  So now what do you need so that you can proceed

25 under a Summary Judgment basis, under Rule 12(d)?

1          **MR. PICKENS:**  Nothing but an opportunity to think

2    about it and if there's appropriate briefing to file it with

3    the Court.

4          **THE COURT:**  Okay.  Then I'm going to proceed under

5    Rule 12(d) of the Federal Rules of Civil Procedure and we're

6    going to hear the *res judicata* matter, both as Summary

7    Judgment and as a 12(b) Motion.  So I'm granting, sort of

8    both parties' position on that.

9          Because under 12(d), I think I can consider

10   it on both ways.  And I couldn't see what other evidence was

11   needed.  We've had a pre-document exchange.

12         With respect to the second principal issue in

13   the case, which is the post-sale activity, I'm going to ask

14   Mr. Jones a question.  I'm going to take things a bit out of

15   order.  I want Mr. Jones to tell me how the post-sale

16   activity, how you can prevail on a 12(b) Motion on the

17   current record?

18         Your client got the opportunity to prosecute

19   certain claims, allegedly got himself or got itself a

20   release, and then returned it back to the estate.

21         You're principal defense, as I understand it,

22   is -- well it went back to the Trustee.  He's going to

23   prosecute the claims on his own.

24         I think that's an interesting defense.  I

25   think it's a defense.  I don't see how it's a dispositive

1  defense.  And I want to know how you win that part on a

2  12(b) just by asserting the defense.

3          And then what we're going to do, after I hear

4  that, is I'm going to shift the burden to you all to tell me

5  why I don't live with my Order from a *res judicata* point of

6  view because the Order seems pretty unambiguous.

7          And I don't really don't need to hear

8  argument from you on that because yours -- I'm telling you

9  I've read the pleadings right now, I'm leaning your way.

10 I'm going to give you a chance to respond to what they say.

11 But I don't understand your argument on the post-sale stuff.

12 And I don't understand your argument on the pre-sale stuff.

13          So that's how I'm going to allocate the

14 burden of persuasion today, because I've already read all

15 the briefs.  So go ahead.

16          **MR. JONES:**  All right.  Thank you, Your Honor.

17 The Court is asking about the one limited allegation that is

18 post-sale.  There is a post-sale allegation.  The

19 allegations there are that Huff breached a fiduciary duty by

20 negotiating a settlement with SKH, the seller of the

21 properties.  And then advising the Debtors that any estate

22 claims against SKH were not worth pursuing.

23          And the claim --

24          **THE COURT:**  And getting a release for itself in

25 the process, right?  From SKH?  That's the allegation.

1          **MR. JONES:**  That's the allegation, Your Honor.

2          **THE COURT:**  All right.

3          **MR. JONES:**  That is the allegation.  And the

4   reason -- and Your Honor, what we point out, and by the way

5   the -- what we do point out on this is something from the

6   public record, which we believe means that this is not --

7   it's not extraneous information that really transforms this

8   motion here into a Summary Judgment Motion because the

9   evidence that we have there is from the -- it's from public

10  testimony of the Trustee here.  And the Trustee acknowledged

11  that the actions were returned to the Trustee and the

12  Trustee was free to pursue them.

13          The reason that we think that's a ground to

14  dismiss those claims is because the pleadings do not allege

15  how the estate was harmed, by Huff negotiating a settlement

16  with SKH; how that is misconduct.  That's not plead.  Why

17  that would be misconduct or how it's misconduct.  And why it

18  -- what about that process is wrongful activity and what

19  about that process given the fact that the claims went back

20  to the Trustee.  And the Trustee was free to do whatever the

21  Trustee wanted to do with those claims, to pursue them or

22  not to pursue them, why any of that constitutes any wrongful

23  action on behalf of the Trust -- excuse me, on behalf of

24  Huff.

25          And so we don't think that that meets the

1  minimum standard of stating a claim -- simply just doesn't

2  state a claim.  It's plausible on it's face, which is the

3  duty that the Plaintiff is after.

4         **THE COURT:**  What do I do about the allegation?

5  And I'm not suggesting that maybe we won't get a little more

6  meat on the bones, but we've got an allegation that says

7  that while you've got these estate assets temporarily

8  transferred over to your client, your client used --

9  effectively the allegation is your client used its leverage

10 holding those assets before returning to get itself

11 released.  And if that can be proven, I don't know what the

12 precise measure of damages will be.  It might be a some sort

13 of a quantum meruit if they're seeking an equitable

14 subordination of your claim.  And it might not be a good

15 thing if that's what your client did.  And I don't know they

16 did that, but if they did, I don't see how I dismiss it

17 under 12(b).

18        **MR. JONES:**  Well, Your Honor, again the only -- it

19 just doesn't appear to me that that sets out a claim.  Or

20 what exactly the claim is and how that is misconduct.  TI

21 mean, the pleadings simply don't do that.  And that's -- if

22 you look at the pleading, it makes those statements, but it

23 does -- but that doesn't lead to the statement of a claim

24 that is plausible on its face for relief, and that's --

25        **THE COURT:**  Well, they're seeking equitable

1  subordination, right, of your client's claims?  They're

2  seeking 510 subordination.

3          **MR. JONES:**  For that action of claims that are --

4          **THE COURT:**  Part of the overall facts of what are

5  being plead.

6          **MR. JONES:**  That's not what's plead.  There is an

7  equitable subordination claim plead, but it's based on the

8  pre-sale.

9          **THE COURT:**  On the pre-sale only?  Okay.

10          Is there a reason why I shouldn't ask you-all

11  to add some meat to the bone as to how that's a good cause

12  of action, but leave it in place?

13          **MR. PICKENS:**  Well, Your Honor, we -- you've

14  zeroed in on an issue I intended to speak to, quickly, but

15  again from the Trustee's prospective I want to share this

16  with Mr. Jones and also with the bench so it will have --

17  may I approach, Your Honor?

18          **THE COURT:**  Yes, sir, please.

19          **MR. PICKENS:**  Here's our point.

20          **THE COURT:**  Thank you.

21          **MR. PICKENS:**  Huff filed its own motion prior to

22  the Sale Order, and these are Huff's own words, it sought

23  authority to assert cause of action on behalf of the

24  desert's estates -- or Debtor's Estates.  And the Trustee

25  has requested and Huff agreed that any settlement offers

1   would be conveyed to the trust.  And the Trustee would

2   receive periodic reports from Huff of the status of the

3   investigation.

4             Huff also promised that its pursuing the

5   claims is in the best interest of the Estates because Huff

6   had identified significant value that could yield

7   substantial recovery for the estates.  And these are Huff's

8   own words.

9        **THE COURT:**  Right.

10       **MR. PICKENS:**  And Huff further represented that

11  Huff's counseling recovered substantial judgments in similar

12  cases.  Now that motion was granted near the end of 2009.

13  And upon it's being granted, at that point, Huff became the

14  Trustee's agent in fiduciary for purposes of pursuing these

15  SKH claims.

16            Now the duties that is owed by an Agent to

17  its principals are matter of form, good faith in candor, a

18  duty of full disclosure, not only on matters that are

19  precisely the principles of business, but on matters that

20  affect the principles of business.

21            The fiduciary, the agent has a duty to suborn

22  his own interest and the principle is entitled to rely on

23  what the Agent tells him, especially where the Agent is

24  picked due to his, you know, special qualifications to do

25  the task.

1          We note that these -- a breach of fiduciary

2   claim is not subject to Rule 9(b).  We think that our claim

3   is well developed.  It's in the complaint.  We've quoted

4   part of it here.  We said that Huff cloaked in the garb of

5   the Trustee, used that improved status to negotiate a better

6   settlement for itself with SKH and then cut the Trustee

7   loose.

8          And then told the Trustee that the claims

9   against SKH weren't worth pursuing.

10       **THE COURT:**  Right.  And let's assume that they

11   were wrong about that, but the Trustee had an opportunity to

12   investigate.  How is the Estate then damaged?

13       **MR. PICKENS:**  Well, here's what we'd like to say

14   is that Huff would have had credibility making this over to

15   the Trustee.  Because as we understand Huff did six months

16   of its own due diligence in the SKH transaction before it

17   agreed to lend 25 million of its shareholder's money to

18   Austam (phonetic).

19          Now -- and here's what we'd like to know.

20   You told us you were going to give us status reports.  You

21   told us you were going to give us updates.  What we later

22   find out is that you have entered your own agreement with

23   SKH and that you refuse to disclose the terms of your

24   agreement to us.  And the Trustee would like to see that.

25          We want to know the terms of that agreement.

1   We want to know what analysis Huff did to determine if the

2   claims weren't pursuing -- weren't worth pursuing.  And if

3   it didn't do any analysis, we want to know that, too.  And

4   we also want to know what communications Huff had with SKH

5   while on the Trustee's watch.

6           **THE COURT:**  Let me go back to Mr. Jones for a

7   minute.  I'm looking at the Complaint.  Paragraph 59 seeks

8   equitable subordination based on the post-petition conduct;

9   is that right?

10          **MR. JONES:**  Sorry, Your Honor.  I was mistaken on

11  that.

12          **THE COURT:**  Yeah, so why isn't there then a claim

13  stated here?

14          **MR. JONES:**  Well, simply, the fact that equitable

15  subordination is sought wouldn't mean -- I stand by my

16  position, Your Honor, that it still doesn't assert -- it

17  still doesn't assert harm to the Estate from this activity

18  or wrongful activity.

19          **THE COURT:**  Yeah, I disagree.  I think they do.  I

20  think when they take the claim and if they used it for their

21  own benefit and then came back to the Trustee and said we've

22  investigated, there isn't anything here.  All that's

23  alleged.  And if that wasn't done in good faith -- and I'm

24  not suggesting it wasn't done in good faith, but if it

25  wasn't done in good faith, I think that states a claim for

1  equitable subordination.

2          **MR. PICKENS:**  Your Honor, if I could speak further

3  to --

4          **MR. JONES:**  Do you want any more questions on this

5  or?

6          **THE COURT:**  No, I'm going to rule against him on

7  the 12(b) on the post-sale activity.  I think that there is

8  a claim stated here.  I thought that when I walked out.  I

9  listened to his argument.  I think he's wrong.  I think it's

10  stated.

11          But let's go to the issue on the *res*

12  *judicata*.  I don't understand why this isn't *res judicata*.

13          **MR. PICKENS:**  Would you like to hear first from

14  the Trustee or from Mr. Jones?

15          **THE COURT:**  No, from you.  Because I'm telling you

16  I've read all your briefing and I don't see how you win this

17  one.

18          **MR. PICKENS:**  Okay.  By way of prefacing this

19  argument, Your Honor, we want to be clear about what the

20  Trustee is and is not alleging.

21          **THE COURT:**  Okay.

22          **MR. PICKENS:**  We're not alleging that Huff

23  violated it's loan agreement with Austam.  We're not

24  challenging the sale of the property.  That was a case in

25  *Southmark*, but it's not the case here.

1           We're not alleging violations of the loan

2    agreement, the Debenture.  We're not making any objection to

3    Huff's Proof of Claim.  Huff had a claim.  Huff did loan us

4    money.  It's did he get paid back.

5           We're not challenging the Bankruptcy Court

6    authorizing the sale of any part of the Bankruptcy Estate to

7    Huff.  So we want to be clear about that because they keep

8    wanting to come back to that point and dwell on it when that

9    type of claim is found no where in the Trustee's complaint.

10          We're not saying Huff breached the Debenture.

11   We're not challenging Huff's Proof of Claim.  And we're not,

12   certainly not seeking to rescind or undo the Sale Order.

13          So what are we saying?  Well, lots of things

14   in particular.  Two things that Huff committed pre-petition,

15   pre-petition towards the misrepresentation and non-

16   disclosure on the Debtor.  That's part one.

17          Part two, the Court has already addressed.

18   And this time line helps show what we're talking about here.

19          **THE COURT:**  Is that showing up on your --

20          **MR. PICKENS:**  It is, Your Honor.

21          **THE COURT:**  Hold on.

22          **MR. PICKENS:**  It's actually slide number three in

23   the deck that I provided to Mr. Jones and to the Court.

24          **THE COURT:**  There it is.  Okay.

25          **MR. PICKENS:**  And here's where I want to be very

1  clear about this.  We are making tort claims for torts of

2  misrepresentation and non-disclosure, seeking money damages

3  with the wrongful acts giving rise to the torts occurring

4  post-petition or -- pardon me, post-debenture --

5  post-debenture of pre-petition.  But we're not seeking to

6  unwind or rescind the Sale Order.  And we're not bringing a

7  breach of contract claim.  We're seeking money damages for

8  those torts.

9         Now, this is a speed bump argument, but I

10  want to make it anyway because it calls into question the

11  strength of conviction that Huff has itself for the *res*

12  *judicata* argument.

13         On the Sale Order that Huff relies on was

14  entered in May of 2009.  About ten months later the Trustee

15  filed an instrument notifying the Court that the Trustee and

16  Huff had reached an agreement to sell the claims against the

17  D's and O's to Huff.  Huff was going to be the sole owner

18  and have the sole right to any recovery for $10,000 cash.

19         But that deal was going to be twofer.  In

20  addition to getting the claims against the D&O's, Huff was

21  going to get a release of any Estate claims against Huff.

22         **THE COURT:**  Right.

23         **MR. PICKENS:**  And this was ten months after the

24  Sale Order was entered.  Now take away *res judicata* context,

25  if I'm effectively litigated non-liable by way of Summary

1    Judgment or a Judgment on a verdict or a Judgment after a

2    bench trial, I don't then circle back to the party that was

3    suing me beforehand and try and buy release of the claims

4    that I was relieved of liability on in the Judgment.  And

5    yet that seems to be what Huff did here and that, to us,

6    suggests a lack of strength of conviction that we think is

7    well warranted in the case law.

8              We cited the *Mariner* case.  It's from the

9    District of Delaware.  It's not binding here, but it's very

10   well reasoned and it notes that applying *res judicata* in the

11   context of a bankruptcy case is fraught with peril.  And the

12   Court says that bankruptcy cases differ from regular

13   lawsuits and that when you sue someone there's a Plaintiff

14   and a Defendant.  And early on, everyone knows who is

15   adverse to whoever else.

16             And on top of that you have orderly

17   scheduling -- a Scheduling Order where you have Motions to

18   Dismiss, deadline for Discovery, deadlines for Motions to

19   Amend, deadline for dispositive motions and then you go onto

20   trial.  And in that context, it's fair to say, "Speak now or

21   forever hold your peace."

22             The *Mariner* Court said bankruptcy not so

23   much.  You've got a lot of different moving parts.  Some of

24   which we had here -- liens on property, sale of property,

25   claims which a Debtor may have against others, which are not

1   expected to be litigated at one time.

2          And the Court goes on to say on it's face

3   that's what *res judicata* would require.  It would bring

4   bankruptcy cases to a halt.  And here is why.  And this

5   applies very much to the condition of our own Trustee.  You

6   can have a Trustee who is compliant with fruit that's

7   withering on the vine.

8          And his duty is to get that fruit picked, get

9   it preserved and march on preserve the assets of the estate

10  -- the estate for the benefit of the creditors.  If you tell

11  him, look we've got to file this expedited motion to get the

12  creditors some recovering, but by the way, Mr. Trustee, when

13  you do that, all your claims against that creditor are going

14  to be barred, there's a potential to paralyze the Trustee to

15  keep him from doing what he needs to do in order to maximize

16  recovery for the Estate.

17         Now here, no one questions but that this was

18  an expedited motion on the Trustee requested expedited

19  consideration in order to avoid termination of the leases.

20  Prompt action not taken, the collateral is going to

21  decrease, they're subject to rapid deterioration and

22  termination and that he needed a wave of the Estate to

23  immediately consummate the transaction was granted less than

24  a month later, Your Honor.  Expedited Motion between the

25  time of the filing -- so you probably had two weeks before

1    this Motion was filed to see it prepared.  It's filed with

2    the Court and three and half weeks later it's granted.

3              That is not a full and fair opportunity for

4    the Trustee to litigate its claims although it's clearly

5    consistent with the Trustee doing his job of marshalling all

6    the assets for the benefit of the Creditors.

7              We think the most duplicable case here is _D-1_

8    _Enterprises_.  It's a short, very well thought out opinion by

9    Judge G --

10             **THE COURT:**  Well, but that deals only with Motions

11   for Relief from the Stay in which there's a particular rule

12   that says that you can't file any counterclaims, plus in _D-1_

13   there wasn't any finding of good faith.  I mean --

14             **MR. PICKENS:**  We want to address each of those

15   points --

16             **THE COURT:**  -- it was a whole lot different.

17             **MR. PICKENS:**  Well, we think there are great

18   similarities.  And we want to point out why, if the Court

19   will allow us to.

20             **THE COURT:**  No, go ahead.  I'm just telling you.

21   When I read Judge G's opinion with which it make sense, it

22   seems far removed from what we have.

23             **MR. PICKENS:**  Well, he did do a few things.  He

24   dealt with both _res judicata_, also the Motion to Lift Stay

25   and Abandoned Assets for Creditor, which despite what one

1  might think, it's not an expedited Sale Order, but it is an

2  expedited proceeding whereby assets are being conveyed into

3  the hands of a creditor.

4          **THE COURT:**  Oh, no, they're not.

5          **MR. PICKENS:**  Well, weren't they being abandoned

6  to a creditor?

7          **THE COURT:**  The stay was lifted to allow the

8  creditor to proceed with its state law rights.

9          **MR. PICKENS:**  Okay.  Well, we --

10         **THE COURT:**  It's not a sale by the Estate.

11         **MR. PICKENS:**  Okay, well let me point out other

12 similarities in the case.  He did address *res judicata* and

13 he pointed out one cardinal rule of that doctrine.  And that

14 is essential to raise to *res judicata* is a previously un-

15 litigated claim could and should have been brought earlier.

16             And he said the counterclaims that we're

17 trying to deal with here, were not to be handled in the

18 summary fashion required by the expedited nature of that

19 proceeding.  He said in fact, those indirect defenses

20 through the abandonment order, those ought to be severed out

21 and scheduled for a separate adversary because the real

22 claims --

23         **THE COURT:**  He said not only that, they have to

24 be.

25         **MR. PICKENS:**  Beg your pardon?

1          **THE COURT:**  He said they have to be, right?

2          **MR. PICKENS:**  He said they would be, yes.

3          **THE COURT:**  No, he then goes into the rules and

4    says you can't even raise them --

5          **MR. PICKENS:**  In this context.

6          **THE COURT:**  -- in response to a Motion for Relief

7    from the Stay.

8          **MR. PICKENS:**  Right.  You can't raise into this

9    context.

10         **THE COURT:**  The Supreme Court last year decided

11   *Espinosa*.  *Espinosa* is a contested matter, confirmation of a

12   Chapter 13 claim in which the Supreme Court says this should

13   have been brought by adversary proceeding -- had to have

14   been brought by adversary proceeding.  The Bankruptcy Court

15   was wrong not to have that brought by Adversary Proceeding,

16   but the contested matter order will be enforced under *res*

17   *judicata*.

18              How do I reconcile that with your argument?

19         **MR. PICKENS:**  The power of Bankruptcy Courts to do

20   equity, Your Honor.  The --

21         **THE COURT:**  Actually, that's not what *Espinosa*

22   did.  It sort of ignores the equity and said the finality of

23   orders is the important thing.  I mean it really does.  And

24   I don't see how I reconcile what you're asking me to do with

25   *Espinosa*.

1          **MR. PICKENS:**  Well, we -- Your Honor, when we --

2    our feeling is that the way this evolved, the Trustee did

3    not, in fact, have a full and fair opportunity to litigate

4    these claims.  He was being told to hurry up and get this

5    fruit picked and get it preserved.  Why?  So Huff's

6    collateral can be protected.

7          And to put him in a position where he says --

8    you know, where you've got an expedited proceeding, sticking

9    current with that, you have to have a full-blown adversary

10   action within the context of that expedited Motion for Sale

11   Order, would put the Trustee to tremendous disadvantage in

12   bringing viable claims on behalf of the estate.

13          And we think that is what --

14         **THE COURT:**  He didn't have to sell to Huff.

15         **MR. PICKENS:**  I beg your pardon?

16         **THE COURT:**  He didn't have to sell to Huff.  He

17   could have sold to somebody else.

18         **MR. PICKENS:**  This is true.

19         **THE COURT:**  I mean, he chose to sell to Huff.

20   This is your client doing this.

21         **MR. PICKENS:**  This is true.

22         **THE COURT:**  And your client came in and -- I mean,

23   what do I do with Paragraph 5 of the Order?  Paragraph 5

24   says, "Huff is paying 200,000 in cash, reducing its claim by

25   $12,550,000 and waiving any right to a distribution."

1          I guess I'm not getting the point that this

2    is the Trustee's choice to come in quickly, move quickly,

3    move with Huff, allow them to spend their money in the sense

4    of credits.  And now what do you want me to do with all

5    that, take it away?

6          **MR. PICKENS:**  Well, we -- in speaking of the Sale

7    Order, we don't see anything, and this was a point that

8    Judge G made, in *D-1*, there is nothing in your Sale Order

9    that contradicts what the Trustee is trying to do here.

10   Even if one assumes -- even if one assumes that he would

11   have had the opportunity to fully and fairly litigate these

12   torts of non-misrepresentation and nondisclosure, there's

13   nothing in that Order that contradicts what the Trustee is

14   trying to do here.

15          Your Order speaks to can we blame under

16   363(f).  Yes, we can.  Can we assume and assign leases, can

17   the Trustee do that?  Yes, he can.  And has the Trustee

18   negotiated in good faith about the sales price.

19          **THE COURT:**  Well, no, wait a minute.  Is he going

20   to allow a credit of $12,550,000?  That's the critical issue

21   here because by allowing the credit -- if there was a

22   counterclaim against the credit, he could have allowed it --

23   I could have allowed it.  And that's how -- that's what

24   distinguishes *D-1* from the other cases that are cited by

25   Huff.

1          There was no such opportunity in *D-1*.  All *D-*
2 *1* does is lifts the stay.  If somebody then goes and
3 forecloses, all the claims are still there.  The Bankruptcy
4 Court isn't giving it's imprimatur to the claims.  Here the
5 Bankruptcy Court gave it's imprimatur to the claims.

6          **MR. PICKENS:**  Understood, but we've read the Sale
7 Order and we think it speaks to three things.  Is it okay in
8 this situation to strip lanes.  It is okay to assume assign
9 the leases to Huff.  Yes, it is.  And has Huff negotiated in
10 good faith with the Trustee about a fair sales price for the
11 Estate.  And should Huff be allowed to credit bid on its
12 secured claim in the Bankruptcy against that purchase price.

13          **THE COURT:**  I guess maybe we're talking past each
14 other because --

15          **MR. PICKENS:**  None of that speaks to pre-petition
16 misconduct by Huff for the Debtor.

17          **THE COURT:**  I think the question then goes towards
18 whether -- and maybe I'm now understanding the argument a
19 little better although I still don't think I agree with it
20 yet, but that if the pre-petition conduct could, in fact,
21 have constituted a counter-claim against Huff's claim.

22          **MR. PICKENS:**  Then Judge G would say you don't
23 have to bring it then.

24          **THE COURT:**  Well, that's -- but assume that --
25 there was no determination of the validity of any claim in

1   *D-1.*

2           **MR. PICKENS:**  Well, that's exactly right.  That's

3   how he distinguished it from *Southmark* where they determined

4   the claim had been validly accelerated.

5           **THE COURT:**  Here's there a valid claim of at least

6   12,550.

7           **MR. PICKENS:**  Understood.  But that valid --

8           **THE COURT:**  In *D-1* there was no determination of a

9   valid claim.

10          **MR. PICKENS:**  Exactly.

11          **THE COURT:**  So how can I determine there's a valid

12  claim, if there was a counterclaim to it?

13          **MR. PICKENS:**  Because the valid claim that Huff

14  has filed is a result of his having owned this money and not

15  getting paid back.

16          **THE COURT:**  Right.

17          **MR. PICKENS:**  Okay.  We're not bringing a claim

18  that says that you've breached the contract and you ought

19  not to be paid back or bring a claim saying that you

20  committed torts, extra contractual wrongs, upon the Debtor.

21              And the Court's Sale Order doesn't speak to

22  that.

23          **THE COURT:**  Let's take it out of this Order for a

24  minute and put me in a regular lawsuit.  If Huff had filed a

25  suit seeking $12,550,000 on its promissory note, wouldn't

1  the Debtor have had to have brought its counterclaim for

2  pre-petition misconduct arising out of the administration of

3  that same note and the origination of it?

4       **MR. PICKENS:**  In an adversary action or in a

5  normal lawsuit?

6       **THE COURT:**  Well, I don't think there's a

7  difference.  So either one you want to answer.

8       **MR. PICKENS:**  Well, in the adversary case, this is

9  one thing I'd like to share with the Court.  The -- well,

10  *D-1*.

11            Your Honor, could you give me a moment?"

12            In *D-1* there's an interesting discussion and

13  I ask the question because I think it is different as

14  between an adversary and a regular lawsuit.

15            The first answer is that essential *res*

16  *judicata* is in a regular lawsuit, you would have had the

17  timing and scheduling order, the determinations of adverse

18  and a full and fair opportunity to litigate the claim.

19       **THE COURT:**  In an adversary proceeding?

20       **MR. PICKENS:**  Well, that's true.  But an adversary

21  proceeding goes one step further.  I've outlined this and

22  what Judge G notes is that -- and we're not conceding that

23  Sale Order was an adversary proceeding.  We're saying it's a

24  contested matter --

25       **THE COURT:**  The Sale Order was not an adversary

1  proceeding.

2        **MR. PICKENS:**  Okay.  And this is what we'd like to

3  point out --

4        **THE COURT:**  My question to you has to do with

5  either an adversary proceeding or a lawsuit whether if Huff

6  had filed a suit or filed an adversary proceeding seeking

7  payment of $12,550,000, would the Trustee have had to have

8  brought the claims you now raise, as a compulsory

9  counterclaim?

10       **MR. PICKENS:**  Under Rule 7013, it might not have

11  had to.

12       **THE COURT:**  Okay.

13       **MR. PICKENS:**  Because there's -- this is one thing

14  that Judge G went to the cites and he makes a point of this.

15  And he says that in -- pardon me, 7013 includes a liberal

16  escape clause.  It says, "The Trustee who fails to plead a

17  counterclaim, through oversight, inadvertence or excusable

18  neglect, when justice so requires may by leave of the Court,

19  amend the pleading or commence a new Adversary Proceeding in

20  a separate action."

21            And this is consistent with --

22       **THE COURT:**  You're tell me that's in 7013 or in

23  Rule 13?

24       **MR. PICKENS:**  Your Honor, you have -- I'm at a

25  disadvantage.  I'm simply reading from Judge G's opinion.

1          **THE COURT:**  Let me give you the rules.

2          **MR. PICKENS:**  Okay.

3          **THE COURT:**  Here's the 2009 set.

4       (Pause.)

5          **THE COURT:**  So you're saying the last sentence of

6   7013 says, "The Trustee fails to plead a counterclaim

7   through oversight, inadvertence or excusable neglect or when

8   justice so requires, may by leave of the Court, amend the

9   pleadings or commence the new Adversary Proceeding in a

10  separate action."

11         **MR. PICKENS:**  And I'm actually following that in

12  the G opinion but yes, that's what we're saying.

13         **THE COURT:**  Okay.

14         **MR. PICKENS:**  And we think that justice so

15  requires here because honestly this Motion to Sell, it was

16  dealt with under extenuating circumstances.  Huff would have

17  come to the Trustee deal of knowledge about what these

18  properties were actually worth because it did due diligence.

19              It appeared to be no negotiating in good

20  faith with the Trustee.  But, Judge G says even in that

21  context, you've got a liberal escape clause or liberal

22  escape hatch, an adversary action that would relieve you of

23  this necessity of pleading a compulsory counterclaim.

24              And it goes on to make a case that if the

25  escape route is that liberal and that lenient in a adversary

1   action, then surely it can't be more restrictive in a

2   contested matter where you don't have a full-blown

3   opportunity to litigate, because that would be an exact

4   inversion of what Congress is trying to achieve with the

5   rules.

6              I guess it's a two-part answer to your

7   question, Your Honor.  Number one, if he brought an

8   adversary action it would have the advantage of this liberal

9   escape clause that is not present in a case filed in the

10   Harris County Courthouse.

11             Number two, if a regular action were brought,

12   then you have all the advantages and the safeguards that

13   exist with typical similar litigation; namely, known

14   adversity, an Order scheduling -- an orderly Scheduling

15   Order, a chance to do discovery while posed in an

16   adversarial format.

17             And all these things that make *res judicata*

18   to speak now or forever hold your peace doctrine that it is.

19   That's all posited on the idea that you had a fair chance,

20   you had a fair go and you didn't bring the claim and you

21   should have.

22             That's why we -- that's the gist of why we

23   seek this contested proceeding -- or contested matter which

24   was done as an expedited proceeding is not the same as a

25   full-blown lawsuit to which *res judicata* would apply.

1          **THE COURT:**  Okay.

2          **MR. STRAWN:**  May I just add my two cents worth on

3    it?

4          **THE COURT:**  Sure.

5          **MR. STRAWN:**  I think from a policy standpoint, you

6    need to recall what type of situation we were in here, or

7    the Trustee was in.  You had an oil and gas company with

8    leases that had expirations on it that had different things

9    that had to be done or they would lose those leases.

10         You had a creditor who had loaned the money

11   saying you need to do these things right away or we're

12   losing our protected -- our collateral on our assets.  And

13   they were forcing this.  This was an estate that had no

14   money.  It had no resources as evidence by the other claims

15   that even Huff said that we can bring, you know, the claims

16   of SKH's because of the lack of resources of the Trustee.

17         And so to expect the Trustee in this

18   situation to say, "No, I can't sell you this property

19   because I need the opportunity to go investigate potential

20   claims," I think is unrealistic in the Bankruptcy.  It's

21   something that in an expedited basis when you're trying to

22   preserve the collateral and do this that the Trustee has the

23   obligation to try to do that as best he can under limited

24   circumstances.

25         And you wouldn't want to hold up a Sale Order

1   in order to have the Trustee try to investigate all these

2   claims.  Because what would the Trustee be able to do at

3   that point?  Would the Trustee have to initiate an adversary

4   in order to get any kind of discovery?  The Trustee wasn't

5   aware of any of this --

6           **THE COURT:**  Well, no, there's lots of things the

7   Trustee could have done here.  He could have dealt with

8   somebody besides Huff or in dealing with Huff, he could have

9   had a provision that says although we're going to give you

10  credit for the $12,550,000 we're reserving the right to

11  investigate and sue you.  Those aren't in there.

12              So he's not without options.

13          **MR. STRAWN:**  He's not without options.  But as the

14  rule -- as Judge G points out is the rule does have that

15  liberal escape in order to prevent a Trustee, who is after

16  all, trying to recover assets for all of the creditors, has

17  got that escape clause to allow the Trustee to come back and

18  do this once they've learned of those facts.

19              And it's intended, I think, to prevent the

20  exact thing that they're trying to assert here, is the *res

21  judicata* would just cut off everything.

22              And so a clever predator can come in and make

23  this sale proposal and thereby cut-off all future claims

24  against them before the Trustee has any real opportunity to

25  discover that.

1          And that's what the *Mariner*, I think, case

2    that Mr. Pickens has in the slides, goes on to address.  So

3    I just think from a policy standpoint, while *res judicata*

4    has a policy of finality of orders, we're not really

5    attacking that.  But *res judicata* also has a policy of --

6    it's really -- it's matters that were litigated, should not

7    be litigated again and there's a stipulation that this

8    wasn't litigated.

9          **THE COURT:**  Well, I think that *Mariner* really

10   doesn't apply because that's dealing with the non-

11   participating parties.  Here, this is the Trustee's Motion,

12   Trustee's Form of Order.  This is not the *Mariner* situation.

13          Mr. Jones, what do I do with 7013, the last

14   sentence in 7013?  Do you have a copy of that handy?

15          **MR. JONES:**  I do.  I've seen that, Your Honor.

16          **THE COURT:**  So what do I do with that?

17          **MR. JONES:**  Well, I think that this goes back to

18   -- let me -- I think if I talk a little bit about the

19   expedited -- the argument about the Trustee didn't have time

20   and this wasn't fair and this was expedited and I think that

21   will explain why 7013 really shouldn't apply here.

22          The short answer is because the elements that

23   would be necessary there, number one, don't exist because

24   it's virtually the same thing that they would have to proof

25   if they had done what they should have done, which is to

1    proceed under Rule 60.

2                The test is almost the same.  There has to be

3    some demonstration of excusable neglect or some reason to do

4    this, and the facts would never warrant that.  It's almost

5    the identical thing that they would have to prove to proceed

6    in a direct attempt to modify or alter the Sale Order.

7                And they know perfectly well that they would

8    never be able to meet that standard.  Because we're sitting

9    here, Your Honor, more than two years -- more than two years

10   after that Sale Order was entered.  We were also sitting

11   here more than a year after the Trustee came in this Court

12   and under oath and in pleadings told this Court that he had

13   investigated claims against Huff with the assistance of

14   Counsel and found none.

15               Now, there was no rush to judgment there.

16   That was one year after the Sale Order, the Trustee came to

17   this Court and said that.  How in the world is the Trustee

18   contending that the necessary elements of 7013 or Rule 60

19   conceivably apply here?

20               This is not a -- we are not here on a motion

21   under 7013.  For one thing, Your Honor, it talks in -- and I

22   don't -- it does answer the Courts hypothetical about, well,

23   "Let's pretend that this -- let's pretend that this was

24   lawsuit directly brought by Huff.  What would be your

25   answer?"

1          And they hadn't answered.  They hadn't

2    answered 7013.  But that's not what we're here on.  We're

3    not here on -- we are not here on a lawsuit brought by Huff.

4    We are here on a motion brought by this Trustee, on its own

5    timetable, when it chose to do that.

6          And as the Court pointed out the timing was

7    under the Trustee's control.  The Trustee never sought any

8    kind of a reservation of rights or insisted on that from

9    Huff.  The Trustee could have sought relief under Rule 60,

10   which is our collateral attack argument, which is somewhat

11   -- it's closely related to *res judicata*, but it is a

12   different argument and equally compelling that this is an

13   impermissible collateral attack on the Sale Order.

14         And then finally, Your Honor, when the

15   Trustee talks about the fact that he was rushed here, I

16   would ask the question:  Where does that leave us?  And

17   that's why this issue of what happened a year after the

18   sale, that's exactly why it's relevant.

19         Because a year after the sale, the Trustee

20   was back in this Court under oath and said, "There are no

21   claims against Huff and I thoroughly investigated that, with

22   the assistance of Counsel and there aren't any."

23         So now what?  What's new today?  Absolutely

24   no new facts.  Absolutely nothing whatsoever new.  The only

25   thing that's new is new Counsel.  We have new Counsel.  We

1    have newly minted theories from new Counsel.  That's it.

2               That's not going meet either Rule 7013 or

3    Rule 60.  And that's what's key there.

4               Let me talk just a moment also, Your Honor,

5    about I think the Court -- I can't state this any better

6    than the Court did with regard to the applicability of *D-1*

7    *Enterprises* here.  I understand the Trustee may say a

8    passionate argument that there was a rush here, that this

9    was an expedited proceeding and argues policy.

10              The problem with this argument -- well,

11   there's two problems.  The first problem is the policy

12   they're arguing is not the policy that's important to the

13   Circuit Courts.  If you look at the opinions from the Fifth

14   Circuit and then in particular the Judge Posner's opinion in

15   the *Geckos* [phonetic], case which talks about collateral

16   attack and is sort of the leading case on collateral attack.

17              The policy that the Circuit Courts are

18   focused on is the policy of finality in sales.  That is what

19   to the Circuit Courts is important.  Because if you start

20   allowing people to do this, it's going to affect the

21   Commercial, it's going to affect sales and it's going to

22   chill the prices that occur in sales.  That's what the

23   Circuit Courts say.  And that's the reason the argument of

24   *res judicata* --

25              **THE COURT:**  Well, I'm not so sure that *Scotia*

1  [phonetic] goes that direction right now.  So I don't know

2  you want put all your weight there.

3         **MR. JONES:**  I understand, Your Honor.  *D-1*

4  *Enterprises*, as the Court said, *D-1 Enterprises* was a lift

5  stay case.  The -- even in *D-1 Enterprises*, if the Court has

6  read that case, it knows that the Fifth Circuit was already

7  previewing why that opinion -- even in that opinion it was

8  briefing why that would not apply to the facts we have here.

9         And then in *Fodoing* [phonetic] and *Hendrick*

10 [phonetic] the cases that followed and we cite those

11 extensively in our briefs.  I know the Court has read those

12 cases.  Those cases explain very specifically why *D-1* would

13 not apply with what we have here because the lift stay issue

14 does not necessarily liquidate the amount of the debt.  It

15 doesn't address the validity of a lien.  It doesn't address

16 other limited liability findings but that is the case here.

17        It was the case in *Fodoing*.  It was the case

18 Hendrick.  And it is the case here because the test, as

19 stated by the Fifth Circuit, is could those matters --

20 could they and should they have been raised in connection

21 with the proposed sale.  And they should have.

22        And Your Honor, one of the things that is

23 important that we briefed here.  Counsel also said that --

24 says that while we're not directly challenging -- we're not

25 seeking to overturn the Sale Order.  The pleadings here

1  allege that Huff wrongfully obtained the Debtor's asset.

2  The pleadings alleged that Huff sought to wrongfully

3  accelerate its secure debt.  The pleadings seek to avoid or

4  unwind any transactions --

5       THE COURT:  Well, what he's saying is he's not

6  attempting to undo the Sale Order, he's attempting to get

7  damages.

8       MR. JONES:  I know, which is affecting -- it's

9  unraveling the economic effects of the Sale Order.  And the

10  opinions that address that both the Fifth Circuit opinions

11  as well as the *Geckos* opinion by Judge Posner, make that

12  very point.

13       That if you're trying to unwind the economic

14  effect of the Sale Order, it's attacking the Sale Order.

15  That's what Judge Posner says in great detail in *Geckos* and

16  that's what the Fifth Circuit also says in the *Hendrick* and

17  in the couple of the other cases.

18       **(Pause.)**

19       The Complaint, Your Honor, also certainly

20  seeks to attack the validity, allowability and priority of

21  Huff's claim against the Estate.  And the question would be

22  why does that attack the Sale Order?  And it does because as

23  we pointed out in brief, a credit bid and approval of the

24  credit bid, which is key here, necessarily incorporates the

25  finding that Huff held a valid allowed secured claim.  I

1   mean, the Court asked the appropriate question:  What do we

2   do now?

3            I mean, those findings, even though those

4   findings are not explicit in the Sale Order, those findings

5   are inherent in the Sale Order.  363(k) of the Code, allows

6   a party to credit bid for property that's subject to a lien

7   that secures an allowed claim.

8            The *Fodoing* case from the Fifth Circuit

9   flatly states that if a party is going to be allowed to

10  credit bid, that that necessarily determines the validity of

11  the underlying debt.  That's a direct quote from the Fifth

12  Circuit in both *Hendrick* and *Fodoing*.

13           So it is clear that the Sale Order is being

14  attacked here.  It is, despite the Counsel's denials, that

15  is very clear.  And it is equally clear that that cannot be

16  done collaterally.

17           If the Trustee wanted to do that, the Trustee

18  needed to do that pursuant to Rule 60.  There is a remedy

19  for the Trustee and it is Rule 60.  And the cases are very

20  clear here.

21           But we know, just as the Trustee knows, that

22  if that were the action sought by the Trustee that that

23  would fail.  We are two years after the sale here.  There's

24  only one very limited exception in Rule 60 to grant any

25  relief beyond one year.

1            That the case law with regard to that

2    catch-all provision of Rule 60 requires extraordinary

3    circumstances or extreme hardship.  That is not present

4    here.  Again, Your Honor, one year after the sale there was

5    testimony that there were no claims.  There had been no new

6    theories here and I would submit, Your Honor, that this

7    complaint should be dismissed based on both *res judicata* and

8    collateral attack.

9            **THE COURT:**  Mr. Pickens, I'm going to give you

10   five minutes to close.

11            **MR. PICKENS:**  Very good.  Your Honor, I'll pass up

12   the proposal to settle the claims, the D&O claims to Huff.

13   As the Trustee pointed out the Trustee was absent resources

14   to sufficiently develop those claims and pursue them.

15            If the Trustee did not then have resources to

16   pursue the claims against the D's and O's, it wouldn't have

17   had the resources to investigate and pursue the claims

18   against Huff.

19            In terms of the Trustee's representations,

20   and this is clearly included in the Sale Order, the Trustee

21   wrote, "Should the sale not be approved, the Trustee

22   believes unsecured creditors are unlikely to receive any

23   dividend" -- they still haven't -- "unless the Trustee is

24   able to identify and successfully prosecute a currently

25   unknown litigation claim."  It does contemplate that there

1   could be an unknown claim out there.

2             In terms of the *Geckos* opinion, we want to be

3   very clear about that.  Nothing about the Seventh Circuit's

4   opinion in *Geckos* or *Farmland* or the *Meadow Wood* case stands

5   of what the Trustee wants to do.

6             We've cited the Court to the *Katy Seed* case.

7   The *Katy Seed* case had been *Meadow Wood*.  The Plaintiff's

8   contended the Defendant's engaged in skullduggery during the

9   bankruptcy proceedings themselves, things like ex parte

10  communications to the Court, rigging the bid, other things

11  that corrupted the Sale Order itself.

12            We're not attacking the Sale Order.  That

13  case merely makes a point that if you want to attack the

14  Sale Order, the time to do so is then, not now.  But the

15  case, in an observation that's applicable here, said that

16  this case is distinguishable, the Plaintiff is not

17  challenging defending its ownership of the assets.  We don't

18  challenge it here.

19            The Plaintiff's claims relate to the behavior

20  of the Defendants prior to KC's bankruptcy.  They breached

21  their fiduciary duties, they committed other torts and the

22  Plaintiff has not attempted to attack the proceeding that

23  lead to the sale of the assets.

24            And that is consistent with the time line

25  that we've share with Counsel and shared with the Court

 1  earlier.  We're not alleging misbehavior after the petition

 2  was filed up to the date of the Sale Order.

 3             The allegation of misbehavior that we make

 4  are pre-petition and post-Sale Order.  We think that *Geckos*

 5  is distinguishable.  Your Honor, 510 -- would you like the

 6  Counsel to address 510 subordination or is that?

 7        **THE COURT:**  If you want.  That's fine.

 8        **MR. PICKENS:**  We --

 9     **(Counsel confer.)**

10        **THE COURT:**  Wait a minute.  That's something I've

11  already allowing you to bring, so.

12        **MR. PICKENS:**  Okay, okay.  Good.

13             They made other arguments that promises as to

14  the future is no -- you can't have a fraud claim based on

15  promises to do something in the future.  That's plainly not

16  the law.

17             The Fifth Circuit has said that with -- if

18  you make a promise to do something in the future, the

19  present intending not to perform your claim and fraud claim,

20  we've alleged that at the time Huff principals gave

21  assurance to Norm M. Ellis [phonetic} and approve the

22  financing, it didn't intend to do so.  That would state a

23  claim for fraud under Fifth Circuit law.

24     **(Counsel confer.)**

25             Oh, yes, Counsel has reminded me, one

1   important aspect of -- we meant to bring this up earlier,

2   but even if *res judicata* applies to bar the pre-petition

3   claims, it wouldn't have tried to bar claims against

4   Mr. Borack [phonetic].

5              The Fifth Circuit is clear that you have to

6   have an identity of the parties.  They have to be the same

7   parties.  We're not suing Mr. Borack in his capacity as an

8   employee of Huff.

9              We have not named Mr. Dartley individually.

10  We don't intend to.  We haven't named Mr. Bloom

11  individually.  We don't intend to.  We've named Mr. Bluff or

12  Mr. Borack individually because in his capacity as a

13  director of Huff, that he is not different than Mr. Loomis

14  [phonetic] or Mr. Hitchcock [phonetic] or Mr. Avery

15  [phonetic].  He's being sued in that capacity and that

16  capacity is different from Huff itself.

17             The -- I think that they want the broadest

18  distinction, but we want to be clear that Borack, Mr. Borack

19  was appointed by Huff.  But even so as a director of Austam

20  -- when he was director of Austam -- the Austam fiduciary

21  duties, it is clear the Directors have fiduciary duties to

22  act on behalf of the companies they serve not on behalf of

23  the entities that appointed them.

24             That's consistent with what we see in the

25  *Smith* case.  An agent maybe found to conspire with the

1   corporation if he acts outside his status as a corporate

2   agent.  That's what we're alleging Mr. Borack did here.  He

3   might as well be Mr. Avery.  He might as well be Mr. Loomis.

4            What he did was he advocated on his fiduciary

5   duty with Austam and conspired with Huff and committed torts

6   against its principal.  And that capacity is fully different

7   from Huff and *res judicata* ought not apply to claims against

8   Mr. Borack.

9        **THE COURT:**  Thank you.  I'm going to give you a

10  chance to respond to the *Borack* issue.

11       **MR. JONES:**  Thank you, Your Honor.  If the Court

12  will look at the pleading?  The Court --

13       **THE COURT:**  At the Complaint?

14       **MR. JONES:**  -- as an initial matter, *res judicata*

15  applies to parties and those in privy with them.  And the

16  law is clear on this that that includes an employer/employee

17  relationship.

18       **THE COURT:**  Well, but it wouldn't include -- it

19  would include the same tort but it wouldn't include a breach

20  of fiduciary duty tort.

21       **MR. JONES:**  Well, but what's been alleged here is

22  simply the same allegation.  What the parties are alleging

23  -- they're grouping Borack along with every other Huff

24  entity and saying in Borack's capacity as an employee of

25  Huff, he committed these acts.

1          Now what they're arguing now -- what the

2    Trustee is arguing now is, well, he was also on the Board.

3    And he was on the Board, but if you look at the allegations

4    that's of no consequence because he may have been on the

5    board, but the wrongful acts that are alleged are alleged as

6    a Huff employee.

7          **THE COURT:**  Let's take a look at Paragraph 69 of

8    the complaint.  It specifically says Huff and Borack

9    understood that Huff would make false statements to Austam

10   with the intent that Austam and Noram would rely on Huff's

11   false statements and that Borack in disregard of his

12   fiduciary duties to Noram and Austam and with full awareness

13   that Huff made the false statements knowingly would not

14   disclose such falsity to Austam and Noram."

15          I don't see how Borak gets released by the

16   Sale Order.  Tell me how he does.  It's a separate theory.

17   That's fine, you know.  Huff gets its claim.  But if they

18   get its claim through Borack's malfeasance as a director,

19   why would Borack be incorporated *res judicata* in the Sale

20   Order as to his breach of fiduciary duty portion only?

21          **MR. JONES:**  Well, Your Honor, what I would say

22   about that is that it's even though that is stated as a

23   different cause of action, that the allegations of his

24   conduct were in connection with his role as a Huff employee.

25          **THE COURT:**  Right.  And in that capacity suing for

1  a tort as an employee of Huff.  Let me assume that that's

2  *res judicata* out.  But committing the tort of breach of

3  fiduciary duty as a director of Austam, even out of the same

4  operative facts.  Tell me why that would be *res judicata* out

5  or any other method out.

6        **MR. JONES:**  Well, Your Honor, my position would be

7  that it's just simply because it's the same behavior.  The

8  behavior is in his capacity as an employee of Huff.

9        **THE COURT:**  Okay.  I'm going to tell you file some

10  subsequent briefs if you want to.  I'll try to write all

11  this down, but what I'm inclined to do at this stage is to

12  give you-all, what I think is obvious in terms of what I'm

13  currently intending to do, but I may change my mind.  Don't

14  take this one to the bank.  But you all can brief what you

15  want.

16        I'm inclined to allow the Trustee to maintain

17  his cause of action for post-sale misconduct.  I'm inclined

18  to dismiss under 12(b) all the claims against Huff and

19  Borack for their actions on behalf of Huff and Borack.

20        But not to disclaim to dismiss the claims

21  against Borack for breach of his fiduciary duty to Austam.

22  Even if he did so at the direction of Huff.  That he can't

23  get released by the Sale Order if he was breaching his

24  fiduciary duties to the estates.

25        I invite briefing as to why I am wrong on any

1  of those three.  Can I get briefing done within the next 21

2  days if you all want?  I'm not going to require it.

3       **MR. PICKENS:**  Yes, Your Honor.

4       **MR. JONES:**  Yes, Your Honor.

5       **THE COURT:**  Okay.  So that's the preliminary

6  ruling.  I may change my mind even if there's no briefing

7  because I'm going to go read some more.  But that's where I

8  am and I would appreciate if the brief would focus on

9  telling me why I'm wrong if you-all want to do that.

10       Okay.  Thank you.  We'll -- Ms. Smith, why

11  don't you give me a sheet to do that and start in 22 days.

12       Okay.  Thank you very much.

13       **MR. JONES:**  Thank you, Your Honor.

14       **MR. PICKENS:**  Thank you, Your Honor.

15       **(Proceeding adjourned at 2:25 p.m.)**

16                    * * * * *

17  *I certify that the foregoing is a correct transcript from*

18  *the electronic sound recording of the proceedings in the*

19  *above-entitled matter.*

20  */s mhenry*

21  _____

22  *JUDICIAL TRANSCRIBERS OF TEXAS, INC.*

23  *JTT INVOICE # 29155*

24  *DATE:  JUNE 23, 2011*

25