

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
12/30/2011

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 08-38222** |
| **NORAM RESOURCES, INC.,** *et al* | § | **CHAPTER 7** |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |

| | | |
|---|---|---|
| **WILLIAM G WEST** | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 10-3703** |
| | § | |
| **WRH ENERGY PARTNERS LLC,** *et al* | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

The chapter 7 Trustee for Ausam Energy Corporation and Noram Resources, Inc. (collectively, "Ausam/Noram") is suing Ausam/Noram's pre-petition creditor, Huff Energy Fund LP ("Huff"), along with related entities WRH Energy Partners LLC and W.H. Ave. LLC (collectively, "Huff Defendants") for fraud, breach of fiduciary duty, civil conspiracy, and various other causes of action. The Trustee is also suing Barry Borak, a former director of Ausam, for breach of fiduciary duty and civil conspiracy.

The Trustee alleges that Huff and Borak conspired to gain ownership of Ausam/Noram's interest in valuable oil and gas leases. According to the Trustee, Huff loaned money to Ausam/Noram. Ausam/Noram issued a Debenture and granted Huff a security interest in virtually all of Ausam/Noram's assets, including the leases. When the leases proved to be successful, Huff attempted to trigger a default under the terms of the Debenture. The Trustee

alleges that Huff fraudulently induced Ausam/Noram to violate the terms of the Debenture and then forced them into bankruptcy by threatening to foreclose on the assets.

Ausam/Noram filed bankruptcy on December 30, 2008.  On May 11, 2009, the Bankruptcy Court approved Huff's purchase of substantially all of Ausam/Noram's operating assets.  The Trustee filed this adversary proceeding on December 29, 2010.

The Defendants move to dismiss all claims, arguing that the claims are barred by *res judicata* and as a collateral attack on the sale order and that the Trustee failed to establish a plausible right to relief.  The Court grants, in part, and denies, in part, the Defendants' motion to dismiss.

## Jurisdiction

The District Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This matter has been referred to the Bankruptcy Court by General Order 2005-12, pursuant to 28 U.S.C. § 157(a).

## Bankruptcy Court's Authority

This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts.  *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011).  The Court may, however, issue interlocutory orders, even in proceedings in which the Court does not have authority to issue a final judgment.

The Court need not decide the extent of its authority to enter a final judgment with respect to any of the Trustee's claims.  The Court has the authority to decide an interlocutory motion to dismiss.  Because the Court does not enter a final judgment, the constitutional limitations on the Court's authority to enter final judgments are not implicated.

## Procedural Background

Noram and Ausam both filed voluntary chapter 11 petitions on December 30, 2008. Noram's bankruptcy case is No. 08-38222 and Ausam's bankruptcy case is No. 08-38223. The cases are jointly administered under No. 08-38222.

On February 27, 2009, the cases were converted to chapter 7 cases on the Debtors' motion. No. 08-38222, ECF No. 70. William G. West was appointed chapter 7 Trustee for the estates.

The Trustee moved to sell assets of the estate on April 14, 2009. Huff was the proposed purchaser. The assets sought to be sold included:

- Noram's oil and gas properties, which were located in Texas, Louisiana, Arkansas, Mississippi, and Alabama;

- Ausam's 18,000,000 shares of Bounty Oil and Gas NL, estimated to be worth as much as $300,000;

- Noram's personal property, including furniture, equipment, computers, and software maintenance contracts; and

- All rights under insurance proceeds related to Noram's oil and gas properties.

No. 08-38222, ECF No. 92, at 3-4. Huff would also be assigned certain assumed contracts. According to the Trustee's motion, the Debtors owed Huff "at least $25,563,651.00." No. 08-38222, ECF No. 92, at 4. The amount was secured by a lien on Noram's oil and gas properties as well as a blanket lien on all the Debtors' personalty. No. 08-38222, ECF No. 92, at 4. Huff was to provide the following consideration:

- $200,000.00 cash;

- The reduction of Huff's secured claim by the amount of $12,550,000.00;

- The waiver of any right to a distribution from the estate on account of any other estate assets, save and except any litigation claims of any nature that were owned by the estate; and

- Huff's assumption of all future obligations under the assumed contracts.

No. 08-38222, ECF No. 92, at 5.  The Trustee requested expedited consideration of the motion, asserting that "[t]he assets that are the subject of this motion consist primarily of oil and gas leases that, in some cases, require payments to be made and other actions to be taken in order to avoid their termination.  The leases are Huff's collateral and are worth significantly less than the debt owed to Huff."  No. 08-38222, ECF No. 92, at 2.  The Trustee also stated, "No party will be prejudiced by expedited consideration.  To the contrary, if prompt action is not taken, the value of Huff's collateral may decrease significantly."  No. 08-38222, ECF No. 92, at 2.

Three parties objected to the motion to sell.  Vision Resources, LLC, objected on the limited basis that the motion misstated the cure amount of its joint operating agreement with Noram, which was to be assumed by Huff.  No. 08-38222, ECF No. 102, at 2.  Ballard Exploration Company, Inc. similarly objected to the proposed cure amount on its contract with Noram, the motion's failure to provide for Huff's assumption of its participation agreement in addition to its operating agreement with Noram, and Huff's failure to provide adequate assurance of future performance.  No. 08-38222, ECF No. 107, at 2.

A more extensive objection was filed by SKH Management, L.P.; SKH Management II, L.P.; SKH Management III, L.L.C.; SKH Energy Fund, L.P.; and Antares Exploration Fund, L.P. (collectively, "SKH").  No. 08-38222, ECF No. 105, at 3.  SKH had sold oil and gas properties ("SKH Leases") to Ausam in 2006.  Ausam had then assigned its interests to Noram.  SKH objected to the motion, asserting that SKH had a 25 percent interest in the SKH Leases and a

reversionary interest in the properties.  SKH argued that the Debtors did not own and could not sell SKH's 25 percent interest or its reversionary interest and that Huff could not take title to the assets free and clear of its interests.  No. 08-38222, ECF No. 105, at 3.  According to SKH, Huff's liens did not encumber SKH's interests in the SKH Leases.  No. 08-38222, ECF No. 105, at 4.

Before the scheduled hearing on the motion to sell, the Trustee, Vision, Ballard, SKH, and Huff reached an agreement.

The Court entered the agreed order on May 11, 2009.  No. 08-38222, ECF No. 112.  The order approved the sale of the assets for the consideration proposed in the Trustee's motion. Additional terms were added: the order specifically provided that it did not adjudicate the claims between SKH and the Trustee that were being litigated in Adv. No. 09-3165.  The Court also found that "[t]he transactions contemplated by this Order are undertaken by Huff in good faith, as that term is used in 11 U.S.C. § 363(m)[.]"  No. 08-38222, ECF No. 112, at 4.  No appeal was taken.

The Trustee filed this adversary proceeding on December 29, 2010.  The Defendants filed the motion to dismiss on February 23, 2011, arguing that *res judicata* barred the Trustee's claims.  ECF No. 15.  After the Court extended the response time, the Trustee filed a response to the motion to dismiss on June 1, 2011.  ECF No. 21.  The Defendants filed a reply on June 20, 2011.  ECF No. 25.  The Court held a hearing on the motion on June 21, 2011.  At the hearing, the Court requested additional briefing.  The Trustee filed a supplemental brief on June 30, 2011, and the Defendants filed a supplemental brief on July 12, 2011.  ECF Nos. 30 & 31.  The Trustee filed a response to the Defendants' supplemental brief on July 29, 2011.  ECF No. 32.

On August 3, 2011, the Defendants filed a motion to strike the Trustee's July 29, 2011 response, and the Trustee responded to the motion on August 5, 2011. ECF Nos. 33 & 34. After considering the motion to strike, the Court allowed the Defendants to file a further responsive brief. ECF No. 36. The Defendants filed their supplemental brief on September 9, 2011. ECF No. 38.

### Rule 12(b)(6) Standard

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 129 S.Ct. 1937, 1950 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

Fraud claims must, in addition, meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements.  Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud.  Fed. R. Civ. P. 9(b).  *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations).  "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

Claims may be dismissed on the basis of an affirmative defense only if the defense is apparent from the face of the complaint.  *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006).  A motion under Rule 12(b)(6) will be treated as one for summary judgment under Rule 56 when matters outside the pleadings are presented and not excluded by the Court.  Fed. R. Civ. P. 12(d); Fed. R. Bankr. P. 7012(b).  Under Rule 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.  In the event a motion to dismiss is converted to one for summary judgment, a court must first give the parties notice and then may consider all evidence presented.  *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009).

### Trustee's Allegations

Beginning in 2006, Ausam/Noram carried out the purchase from SKH of numerous oil and gas properties, the SKH Leases.  Ausam/Noram and SKH executed an Asset Purchase Agreement ("APA") on September 21, 2006, and they closed on the transaction through a series of conveyances beginning around January 27, 2007 and concluding around July 30, 2008.  ECF No. 1, at 3.  SKH conveyed interests in the SKH Leases.  Ausam/Noram paid SKH consideration of approximately $13.5 million in cash and around $18,866,600.00 in stock.  ECF No. 1, at 3.

About six months after the closing of the APA began, Ausam borrowed money from Huff.  Ausam issued to Huff a $25,000,000.00 principal, 9% interest, senior secured debenture, due July 3, 2012 ("Debenture").  ECF No. 1, at 4.  Pursuant to Huff's rights under the Debenture, Borak, a principal at Huff, was appointed to Ausam's board.  ECF No. 1, at 4.  For about six months before purchasing the Debenture, Huff conducted due diligence into, among other things, the merits of Ausam/Noram's purchase of the SKH Leases.  ECF No. 1, at 4.  As security for the Debenture, Ausam/Noram granted Huff a security interest in all of its assets, including Ausam/Noram's interest in the SKH Leases.

According to the Trustee, the SKH Leases proved to be quite valuable, and Noram was successful in developing many of the oil and gas leases.  ECF No. 1, at 5-7.  The Trustee alleges that Huff began to look for ways to use its position as a senior secured creditor to obtain Noram's interest in the SKH Leases.  ECF No. 1, at 7.  Huff particularly began to scrutinize Ausam/Noram's conduct to try to identify one of the Events of Default identified under the terms of the Debenture.  ECF No. 1, at 7-8.  If an Event of Default occurred, Huff could accelerate and declare immediately due and payable the principal and interest on the Debenture.  If this happened, Ausam/Noram would not have sufficient liquidity to pay off the amount, and Huff

would be able to foreclose on Ausam/Noram's assets, including the SKH Leases.  ECF No. 1, at 8.

At the same time, in order to develop the SKH Leases, Ausam/Noram sought capital. Ausam/Noram considered a private placement of equity, an early exercise of warrants, and a subordinated debt issue.  ECF No. 1, at 9.  Ausam/Noram were aware that a private placement of equity could constitute an Event of Default under the Debenture.  The Debenture stated that Ausam "will not issue Shares . . . at a price below the then Current Market Price, or fair market value (as determined by an investment bank agreed upon as between the Holder [Huff] and the Parent [Ausam]) if the shares are not listed for trading on a recognized stock exchange."  ECF No. 1, at 9 (quoting Debenture ¶ 6.23(i)).  Concerned that Huff could argue that their planned price for the equity was below the current market price or fair market value, Ausam/Noram sought assurance that Huff would approve the private placement of equity and debt.  ECF No. 1, at 9-10.

The Trustee alleges that "Huff repeatedly assured Ausam and Noram that it would not interpret the planned capital raises as any type of Event of Default under the Debenture."  ECF No. 1, at 10.  According to the Trustee, Huff "falsely stated both its then-existing state of mind and its future intentions."  ECF No. 1, at 12.  The Trustee alleges numerous specific false assurances that Huff would not regard the capital raises as an event of default.  ECF No. 1, at 10-11.

Borak was involved in Huff's plans.  The Trustee alleges that "Borak was fully aware that Huff's assurances were false when made, and that Huff intended for Ausam to rely on the false representations."  ECF No. 1, at 12-13.  As a member of Ausam's board, Borak was a

fiduciary to Ausam.  The Trustee asserts that Borak breached his duties by failing to disclose his knowledge about Huff's plans.  ECF No. 1, at 12-13.

Ausam/Noram proceeded with the debt placement and equity private placement. Additionally, William Hitchcock, an Ausam board member, and Mooney Enterprises acted in reliance on Huff's statements, each making $1,000,000.00 loans to Ausam around October 7, 2008.  ECF No. 1, at 13.  Huff and Borak allegedly "voiced absolutely no concerns" about the loans from Hitchcock and Mooney, planning later to argue that the loans constituted an Event of Default.  ECF No. 1, at 13-14.

In November 2008, however, Huff declared for the first time that the financings were Events of Default under the Debenture.  ECF No. 1, at 14.  Huff told Ausam/Noram that it would waive the Events of Default only if they agreed to an "onerous" Forbearance Agreement.  ECF No. 1, at 14-15.

The terms of the Forbearance Agreement were "commercially unreasonable" for Ausam/Noram, and they attempted to work out a settlement with Huff.  ECF No. 1, at 17-18. After Huff representatives met with Ausam/Noram representatives at Huff's offices, Huff told the companies that it would send a letter with a proposed settlement.  ECF No. 1, at 18.

The proposed settlement, however, demanded that Ausam/Noram deed "the most lucrative and promising" of the SKH Leases directly to Huff.  ECF No. 1, at 19.

Additionally, Huff's behavior made Ausam/Noram's planned warrant early exercise program "impossible," keeping Ausam/Noram from raising approximately $2,000,000.00 and, ultimately, $3,500,000.00.  ECF No. 1, at 19.

Facing a liquidity crisis in late December 2008, Ausam/Noram filed chapter 11 bankruptcy. ECF No. 1, at 20. The Trustee alleges that Huff's actions "forced" Ausam/Noram into bankruptcy.

As discussed above in the Procedural Background, the Court approved the sale to Huff of substantially all operating assets of Ausam/Noram, including the SKH Leases, on May 11, 2009. After the sale of the assets, Huff and its general partner WRH assigned Huff's rights to W.H. Ave. ECF No. 1, at 21.

After the sale, SKH asserted that the SKH Leases had reverted to SKH. ECF No. 1, at 21. Huff sought and received authority from the Court to assert causes of action against SKH on behalf of the bankruptcy estates. ECF No. 1, at 21. Huff undertook to bring claims for "breaches of clear title and other warranties that SKH made to Ausam and/or Noram in the APA" as to the SKH Leases. ECF No.1, at 21. The Trustee alleges that Huff, acting as a fiduciary for the estates, used its authority to enter into a settlement agreement that benefitted Huff. ECF No. 1, at 22. Huff then allegedly inaccurately advised the Trustee that the claims against SKH were not worth pursuing and abandoned the estates' claims. ECF No. 1, at 22.

## Analysis

The Defendants argue that, to the extent the Trustee seeks to unwind the May 2009 sale of assets, the Trustee's complaint is barred as a collateral attack on the sale order. A direct attack on the sale order is now time-barred. The causes of action relating to Huff's conduct leading up to the sale, they argue, are also barred by *res judicata*. The Court grants, in part, and denies, in part, the Defendants' motion. Most of the Trustees' claims are barred on their face by *res judicata*, but a few claims survive the motion to dismiss.

*Hendrick v. Avent* establishes that "[a]n order issued by the bankruptcy court authorizing the sale of part of the bankrupt estate is a final judgment even though the order neither closes the bankruptcy cases nor disposes of any claim."  891 F.2d 583, 586 (5th Cir. 1990).  Sale orders therefore have *res judicata* effect.

"[A] bankruptcy judgment bars a subsequent suit if: 1) both cases involve the same parties; 2) the prior judgment was rendered by a court of competent jurisdiction; 3) the prior decision was a final judgment on the merits; and 4) the same cause of action is at issue in both cases."  *Bank of Lafayette v. Baudoin (In re Baudoin)*, 891 F.2d 736, 740 (5th Cir. 1993).  The Court's order approving the sale of estate assets to Huff meets the second and third requirements. This Court had jurisdiction to approve the sale of estate assets, and the sale order was a final judgment on the merits.  The Court therefore analyzes, with respect to each of the Trustee's claims, whether the same cause of action is at issue and whether both cases involve the same parties.

To determine whether "the same cause of action" is at issue, the Court looks to the "transactional test."  *Id.* at 743.  Under the transactional test, the Court examines whether the two actions are based on "the same nucleus of operative facts."  *Id.* (quoting *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990)).

The Court also looks at whether the "same parties" are involved.  Because the Trustee filed the motion to sell and Huff was the proposed purchaser, both were obviously parties to the litigation leading to the Sale Order.  There is no question that the Trustee is bound by *res judicata* from relitigating claims against Huff that could have been litigated in connection with the Sale Order.  The question is whether the Trustee is likewise barred from pursuing claims against WRH and W.H. Ave., who were not parties to the Sale Order.

"Res judicata does not require strict identity of the parties.  A non-party defendant to a prior suit may qualify as an 'identical party' for res judicata purposes if it is in privity with a named defendant."  *Wang v. Prudential Ins. Co. of Am.*, 439 F. App'x 359, 364 (5th Cir. 2011).  Here, although the Sale Order was not adversarial as between the Trustee and Huff, the Sale Order has *res judicata* effects as to them and any parties in privity with them.  The Fifth Circuit has "recognized that privity exists in three circumstances: '(1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit.'"  (quoting *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir.1990)).

## 1. *Trustee's Arguments Against* **Res Judicata**

The Court first addresses the Trustee's general arguments against the application of *res judicata*.  The Trustee first argues that the Defendants' motion to dismiss on the basis of *res judicata* is premature.  Because *res judicata* is an affirmative defense, the Trustee argues, it should be raised at the summary judgment stage or later.  ECF No. 21, at 11.  Generally, *res judicata*, like other affirmative defenses, cannot be brought in a motion to dismiss.  *Wang*, 439 F. App'x at 363 (quoting *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005)).

The Fifth Circuit has acknowledged two exceptions to the general rule that *res judicata* cannot be raised at the Rule 12(b)(6) stage:  "The first . . . applies to 'actions [that] were brought before the same court,' . . . . 'The other exception involves the situation in which all relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of res judicata.'"  *LaCroix v. Marshall Cnty., Miss.*, 409 F. App'x 794, 798-99 (5th Cir. 2011).  This case falls within the first

exception.  Because this Court issued the Sale Order, the Court may now consider the *res judicata* defense at the Rule 12(b)(6) stage.  "Additionally, [i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."  *Wang*, 439 F. App'x at 363 (internal quotation marks omitted).

The Trustee also argues that because the Trustee's motion to sell made a reference to "a currently unknown litigation claim," the Trustee must have contemplated the possibility of claims against Huff.  ECF No. 21, at 2.  The motion stated, "Should the sale not be approved, the Trustee believes that unsecured creditors are unlikely to receive any dividend unless the Trustee is able to identify and prosecute a currently unknown litigation claim."  No. 08-38222, ECF No. 92, at 6.  The Trustee's statement refers to the outcome if the sale had not been not approved and certainly does not have any bearing on whether the approved sale precludes any claims.  Moreover, the Court took the Trustee at his word.  No litigation claims were known.  The Trustee did not allege that the estate would recover an unknown amount on a known claim.

In *Hendrick*, the sale order included "an express reservation that the trustee conduct an investigation into the facts alleged by [the debtor]."  891 F.2d at 584.  Despite the express reservation, the fraud claims the trustee discovered as a result of the investigation were barred by *res judicata*.  *Id.* at 584, 589.  Certainly the situation in this case, with the good faith finding and without the *Hendrick*-type reservation, makes an even stronger argument for the application of *res judicata* than in *Hendrick*.

The Trustee also argues that Huff's attempt to buy a release of claims confirms that claims existed.  ECF No. 21, at 2-3.  The argument flies in the face of commercial reality.  Releases of claims are a standard feature in agreements and hardly evidence the existence of a valid claim.  They merely reflect prudence.

Finally, the Trustee argues that *res judicata* does not apply because of the Fifth Circuit's holding in *D-1 Enterprises, Inc. v. Commercial State Bank* that claims that could not have been previously litigated are not precluded.  864 F.2d 36, 39 (5th Cir. 1989).  In *D-1 Enterprises*, the debtor asserted lender liability claims against its major lender, Commercial, several months after the entry of an agreed order abandoning estate assets to Commercial.  *Id.* at 37-38.  The Court concluded that "counterclaims against a creditor seeking to lift the stay on largely unrelated matters are not to be handled in the summary fashion required by the expedited nature of the proceeding."  *Id.* at 38.  The debtor's lender liability claims therefore "were not, under the foregoing analysis, 'direct defenses' that the debtor could or should have litigated in response to the creditor's motion for relief from the stay."  *Id.* at 39.

The court further noted, "The abandonment order, which does not contemplate a public cash auction, does not necessarily determine the precise amount of the debt or that it was validly accelerated, and the subsequent adversary proceeding does not in substance challenge the creditor's acquisition of title."  *Id.* at 39.

The Sale Order is in some ways similar to the abandonment order:  it was expedited and it did not necessarily determine the precise amount owed to Huff.  However, as discussed below, the Court concludes that the Sale Order in this case was more like the sale orders in *Hendrick*, *Baudoin*, and *Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir. 1984).  Here, the lender liability claims against Huff could have been litigated—and were "litigated" to the extent of the good faith finding—leading up to the Sale Order.  *D-1 Enterprises* is therefore inapposite.

*2. Collateral Attack on the Sale Order*

The Trustee seeks several forms of relief, including "[u]nwinding, reversion and/or voiding of any transactions that Huff procured in the Debtors' bankruptcy case by reason of Huff's fraud or wrongful conduct[.]"   ECF No. 1, at 29.   The broad language of this request encompasses an attack on the Sale Order, which was a "transaction[] that Huff procured" in the bankruptcy case allegedly by reason of its fraud or wrongful conduct.

The Trustee's request for the unwinding of the sale is a prohibited collateral attack on the Sale Order.   A sale order in a bankruptcy case is a final judgment that can be attacked only under Fed. R. Bankr. P. 9024, which applies Fed. R. Civ. P. 60, with some additions, in bankruptcy cases.   *See Hendrick*, 891 F.2d at 585, 589 (affirming the district court's holding that the "plaintiff's sole remedy to contest the [sale] order of the bankruptcy court under the facts of this case is through a Rule 60(b) motion").

The facts in *Hendrick* are important in analyzing this case.   The trustee filed an application to sell stock that was an asset of the estate.   *Id.* at 584.   The bankruptcy court approved the sale "with the express reservation that the trustee conduct an investigation into the facts alleged by [the debtor]."   *Id.*   Rather than reserving claims against Huff, the order in this case explicitly found that Huff acted in good faith.   After an investigation in *Hendrick*, the trustee sued the purchaser of the stock, asserting fraud claims under the Racketeer Influenced and Corrupt Organizations Act and the Securities Exchange Act of 1934 along with various state-law claims.   *Id.*   The trustee also sought rescission of the sale.   *Id.*   The defendants moved to dismiss, arguing that the bankruptcy court's order approving the sale was *res judicata*, that the suit was an impermissible collateral attack on a final judgment (the sale order), and that the trustee's complaint could not be construed as a Rule 60(b) motion.   The Fifth Circuit ultimately

affirmed the district court's ruling that the complaint was an impermissible collateral attack on the sale order, that the complaint could not be treated as a Rule 60(b) motion, and even if the complaint were treated as a Rule 60(b) motion, it would be time-barred under Rule 60(c)(1). *Id.* at 585, 589.

The Fifth Circuit's conclusion applies to this case. The proper vehicle for attacking the Sale Order was a Rule 60(b) motion. However, a Rule 60(b) motion is now untimely. Rule 60(c) states, "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Even if the Court construed the Trustee's complaint as a Rule 60(b) motion, the apparent basis for relief from the Sale is fraud, which is reason (3). Because the Sale Order was entered on May 11, 2009, over a year and a half before the Trustee filed this adversary proceeding, the attack on the sale order would be untimely even if the Court construed the complaint as a Rule 60(b) motion. 891 F.2d at 588-89.

The expedited nature of the sale does not make any difference. Both *Hendrick* and *Baudoin* emphasized "the important interest in the finality of judgments in a bankruptcy case." *Baudoin*, 981 F.2d at 739 (quoting *Hendrick*, 891 F.2d at 587). This important interest would be threatened if the mere labeling of a motion as "expedited" could affect the finality of the court's order granting that motion.

As the Defendants argue, section 363(m) provides particular protections for the finality of bankruptcy sale orders.

The statute says:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in

> good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) is evidence of Congress' concern for the finality of sale orders, a policy that weighs against exceptions for expedited orders.

Moreover, although the motion to sell was labeled as "expedited," there is no indication that the motion was not fully litigated.  Three parties filed objections to the motion to sell.  After the parties reached an agreement with Huff and the Trustee, the Court held a hearing before issuing the agreed order.  Nearly a month's time passed between the filing of the motion and the entry of the order.

Finally, the Court notes that it was the Trustee that sought the expedited relief.  The Trustee cannot ask the Court to shorten deadlines and then claim that the Trustee needed more time to make an informed decision.  The Court therefore concludes that the "expedited" nature of the sale proceedings does not affect the finality of the sale.  The Sale Order is final.  Claims that involve the same nucleus of operative facts and that could have been brought in connection with the sale proceedings are also barred.

The Trustee argues that Fed. R. Bankr. P. 7013 provides an exception to the rule that compulsory counterclaims that are not brought with the original claim are barred.  Inasmuch as the Trustee asked for and obtained an affirmative finding of good faith, this argument would not preclude a *res judicata* finding in any event.  And contrary to the Trustee's arguments, Rule 7013 does not provide an exception.  Although Rule 7013 relieves strict compulsory counterclaim requirements with respect to a counterclaim to a proof of claim, that situation did not occur here.  The motion to sell was filed on April 14, 2009, and the Sale Order was issued on May 11, 2009.  Huff did not file a proof of claim until June 26, 2006.  Claims that should have been raised in

connection with the Sale Order are barred; they are not revived as counterclaims to that proof of claim. *See Merritt Logan, Inc. v. Fleming Foods of Penn., Inc.*, 138 B.R. 15, 28 (E.D. Pa. 1992) ("Though Logan's current complaint may be characterized as a counterclaim complaint, in response to Fleming's proof of claim, its original complaint cannot. The first complaint was filed almost a month before Fleming's proof of claim; there is no way that the original complaint could be called a counterclaim to the proof of claim not yet filed.").

### 3.  **Res Judicata** *and Other Claims Against Huff*

To determine which of the Trustee's other claims against Huff are barred by *res judicata*, the Court applies the "same transaction" test, discussed above, to determine whether the claims are part of the same cause of action. As *Baudoin* elaborated, "The issue is not what effect the present claim might have had on the earlier one, but whether the same facts are involved in both cases, so that the present claim could have been effectively litigated with the prior one." 981 F.2d at 743.

As discussed above, the Fifth Circuit held in *Hendrick* that fraud claims asserted against the purchaser of stock from the estate were part of the same cause of action and were therefore barred by *res judicata*. 891 F.2d at 586-87. The court noted that "[t]he initial determinations by the bankruptcy court are directly inconsistent with the crux of [the debtor's] later actions." *Id.* at 587. In *Baudoin*, similarly, the Fifth Circuit held that lender liability claims against the purchaser of the debtors' assets, which had credit bid its claim against the estate in a sale of assets and which had asserted a proof of claim against the estate, were barred. 981 F.2d at 743.

This case is more like *Baudoin* and *Hendrick* than *D-1 Enterprises*. The Trustee asserts claims against Ausam/Noram's lender after the entry of a Sale Order approving the sale of most of the estate's assets to Huff. Unlike in *D-1 Enterprises*, when the claims could not have been

raised in connection with the abandonment order, these claims could have been raised in connection with the Sale Order. The Trustee could have raised some of the claims against Huff in order to secure better sales terms for the estate. He did not. The claims that involve the same nucleus of operative facts as the Sale Order and that could have been raised in connection with the Sale Order are barred.

The Trustee's fraud and fraudulent misrepresentation claims are barred. These claims rely on the allegations that Huff misrepresented its intent to approve of the planned placements of equity and debt and to waive any Events of Default.

In the Sale Order, the Court found that Huff acted in good faith as the purchaser of the assets. The issue of Huff's conduct in the time leading up to Ausam and Noram's bankruptcies was considered in the litigation surrounding the Sale Order. As in *Hendrick*, the Sale Order's determinations are directly inconsistent with the crux of the Trustee's fraud and fraudulent misrepresentation claims. The fraud and fraudulent misrepresentation claims involve the same nucleus of operative facts and are barred.

The Trustee's negligent misrepresentation claim is also barred. Like the fraudulent misrepresentation claim, it concerns Huff's conduct in accelerating the Debenture. The negligent misrepresentation claim is therefore based on the same nucleus of operative facts as the Sale Order.

Nevertheless, the Trustee's breach of fiduciary duty claim against Huff is not barred by *res judicata*. The Trustee alleges that, after the Sale Order was entered, Huff agreed to investigate the estates' claims against SKH. According to the Trustee, Huff breached its fiduciary duty with respect to this investigation, obtaining a settlement for itself and advising the Trustee not to assert claims against SKH. This claim involves events that occurred after the Sale

Order.  The facts involved in the breach of fiduciary duty claim therefore could not have been litigated together with the Sale Order.  This claim does not meet the "same cause of action" test, and it is not dismissed because of *res judicata*.

The Trustee's claim for subordination of Huff's claim under 11 U.S.C. § 510(c) is barred. Huff paid for the assets in part through a credit bid of a portion of its claim against the estate. Although the Sale Order did not encompass a finding that the estate owed Huff the full amount of the Debenture, it did encompass a finding that Huff held a secured claim of at least $12.5 million.  Moreover, any claims the estate held against Huff would potentially have offset Huff's claims.  The validity and status of Huff's claim were therefore directly at issue in the Sale Order, and the claim for subordination involves the same nucleus of operative facts.  The Trustee's claim for disallowance of Huff's claims under 11 U.S.C. § 502 and Fed. R. Bankr. P. 3008 is similarly barred.

The Trustee's claim for detrimental reliance/estoppel/waiver/bad faith/oppressive conduct relies on the same allegations as the fraud and negligent misrepresentation claims, and it is also barred.  Finally, the Trustee's claim for civil conspiracy, as against Huff, is barred.  The alleged conspiracy involved plans to induce Ausam/Noram to default on the Debenture.  As with the misrepresentation claims, this claim is barred by the Court's finding in the Sale Order that Huff acted in good faith.

The Court acknowledges that this ruling may contradict the holding in *Estate of KDC, Inc. ex rel McNeilly v. Kraklow*, 368 B.R. 769, 779-81 (W.D. Wis. 2007), a case cited by the Trustee.  ECF No. 21, at 27-28.  The court in *KDC* denied summary judgment on the basis of *res judicata*.  The court noted, "However, none of the claims plaintiff asserts in this lawsuit are barred in their entirety by this determination because all relate, in large part, to acts that preceded

KDC's bankruptcy filing and thus stem from a different 'core of operative facts'[.]"  *Id.* at 780. Although the court denied summary judgment, it noted that the plaintiff would be required at trial to prove each element of its claims "without relying on facts related to the bankruptcy proceedings." *Id.*

This Court is bound by Fifth Circuit precedent.  The Court's analysis of whether claims arise from the same nucleus of operative facts therefore differs from that of the *KDC* court. Following *Hendrick* and *Baudoin*, the Court concludes that facts that do not directly relate to Ausam/Noram's bankruptcy proceedings are still part of the nucleus of operative facts.

### 4.  Res Judicata *and Claims Against WRH and W.H. Ave.*

Only Huff was a party to the Sale Order.  However, it is apparent from the face of the complaint that *res judicata* also applies to WRH.  The Trustee alleges that WRH is the general partner of Huff.  ECF No. 1, at 21.  General partners are "in privity" with the partnership for preclusive purposes.  *Advest Bank v. Herskovitz*, 1998 WL 103194, at *2 (E.D. Pa. 1998).  As in *Wang*, WRH's interests are closely aligned to Huff's.  WRH is alleged to have engaged in the same conduct.  WRH was therefore adequately represented by Huff in the litigation leading up to the Sale Order.  *See Wang*, 439 F. App'x at 364 (finding that related entities qualified as "identical parties" where their interests were aligned and the unnamed defendants were therefore adequately represented by the named defendants).  Accordingly, it is apparent from the face of the complaint that *res judicata* also bars the claims against WRH that could have been litigated as part of the proceedings surrounding the Sale Order.  Furthermore, although *res judicata* does not bar the breach of fiduciary duty claim against Huff, the Trustee does not allege that WRH was involved in the alleged breach.  The Court therefore dismisses all claims against WRH.

W.H. Ave. is described in the complaint as "a special purpose entity that [Huff] and [WRH] created for the express purpose of holding the assets wrongfully obtained from Ausam, Noram and/or these entities' estates in bankruptcy."  ECF No. 1, at 21.  W.H. Ave. may well be a subsidiary of Huff and/or WRH, and it may be in privity with Huff for *res judicata* purposes.  *See id.* (finding that subsidiaries who were "alleged to have committed the same wrongdoing" were adequately represented in the prior litigation and were thus "identical parties"); *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 162 (1st Cir. 2000) (finding a parent and subsidiary in privity where the parent always took responsibility for subsidiary's action, was ready to defend subsidiary in suit, and parent and subsidiary's interests in the suit were identical); *Fed. Deposit Ins. Corp. v. Alshuler (In re Imperial Corp. of Am.)*, 92 F.3d 1503, 1507-08 (9th Cir. 1996) (upholding a finding that a parent was the "virtual representative" of its wholly-owned subsidiary where their boards were almost identical, the parent had the authority to bind the subsidiary, and the entities' interests were closely aligned).  However, it is not apparent from the face of the complaint that such a relationship exists between Huff and W.H. Ave.  The Court therefore does not dismiss the claims against W.H. Ave. on the basis of *res judicata*.  The Court does, however, consider below whether the Trustee has sufficiently stated claims against W.H. Ave.

### 5.  *Claims Against Borak*

The claims against Borak are not dismissed.  The Trustee asserts claims for (i) breach of fiduciary duty/duty of loyalty and breach of duty of care; and (ii) civil conspiracy and principal-agent vicarious liability.  The Trustee also seeks pre- and post-petition interest and legal fees and exemplary damages.  Although Borak was a principal of Huff, he also owed fiduciary duties to Ausam as a member of Ausam's board.  Borak is alleged to have breached his fiduciary duties to Ausam.  Borak's alleged misconduct is not identical to Huff's, and their interests and duties may

23 / 28

not be sufficiently aligned to make them "identical parties."   The Court does not dismiss the claims against Borak on the basis of *res judicata*.

### 6.  *Alleged Failure to State Claims Against Huff*

The Defendants also argue that the Trustee fails to state a claim for breach of fiduciary duty against Huff.  Under Texas law, "[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of the fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach."  *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.).

First, they argue that because the Trustee alleges fraud, Rule 9(b) applies to the breach of fiduciary duty claim.  The Defendants assert that the Trustee does not plead breach of fiduciary duty with specificity.  Courts have applied Rule 9(b)'s specificity requirements to breach of fiduciary duty claims that are predicated on fraud.  *Brown v. Bilek*, 401 F. App'x 889, 893 (5th Cir. 2010).  "Only a breach of fiduciary duty claim which includes a fraud claim implicates Rule 9(b)."  *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d. 658, 672 (E.D. Tex. 2004).

The essence of the Trustee's breach of fiduciary duty claim is that Huff used its authority to bring claims to obtain a favorable settlement with SKH for itself and then "inaccurately advised the Trustee that the claims against SKH were not worth pursuing."  ECF No. 1, at 22. The Trustee alleges that Huff "had no such intentions" of "seeking redress for the estates against SKH[.]"  ECF No. 1, at 22 (original emphasis removed).  Because the Trustee's claim depends on the allegations that Huff did not intend to seek redress for the estates and that it "inaccurately advised" the Trustee, the Court concludes that the breach of fiduciary duty claim is predicated on fraud.  The Court also concludes that the complaint does not plead the breach of fiduciary duty

claim with particularity, as required by Rule 9(b).  The complaint does not set forth the time of the alleged misrepresentation to the Trustee or the circumstances.  The allegations are therefore insufficient to plead fraud.  *See Red Rock*, 1996 WL 97549, at *3 (requiring plaintiff to plead the time, place, and content of any misrepresentations).

The Court does not dismiss the claim for failure to plead fraud with particularity, but instead will allow the Trustee to replead.  *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.").

There are also negligence elements to the Trustee's breach of fiduciary duty claim.  The complaint alleges, as an alternative to the theory of intentional misrepresentation, that Huff negligently misrepresented that the claims were not worth pursuing.  To the extent that the breach of fiduciary duty claim relies on the alternative theory of negligence, it is adequately pleaded.

The Defendants also argue that the claim fails because the Trustee fails to allege any resulting harm to the estate.  The Trustee alleges that Huff "inaccurately" advised the Trustee that the claims against SKH were not worth pursuing.  ECF No. 1, at 22.  The Trustee specifically alleges that the "Debtors' estates were injured and damaged because they lost the benefits that a faithful fiduciary and agent could have achieved in asserting claims against SKH on behalf of the Trustee and the estates."  ECF No. 1, at 24.  The Trustee additionally asserts that "[a]ny benefit realized by Huff in breaching its duty to the estates should be returned to the bankruptcy estates."  ECF No. 1, at 24.  However, the fact that the Trustee is seeking damages in the amount of the benefit to Huff does not mean that the Trustee does not adequately plead harm

to the estate.  It is plausible that the estate was harmed by Huff's alleged breach of fiduciary duty, and the Court need not consider the Trustee's argument that he need not prove injury. Moreover, the claim may be characterized as one of unjust enrichment.

The Defendants' arguments (i) that the Trustee will be unable to establish damages "because he has always had the right, and still maintains the right, to pursue claims against SKH" and (ii) that the Trustee could have pursued the claims after Huff gave him notice that it would not pursue them may eventually defeat the claim.  ECF No. 38, at 11.  But it is not apparent that these arguments will prevail, and the Court will not engage in fact-finding at the motion to dismiss stage.  The Court therefore does not dismiss the breach of fiduciary duty claim against Huff on the basis of the failure to plead harm to the estate.

### 7. *Alleged Failure to State Claims Against Borak*

The Trustee adequately states claims for (i) breach of fiduciary duty/duty of loyalty and breach of duty of care and (ii) conspiracy against Borak.  The complaint alleges that Borak was a board member of Ausam and that he breached his duties as a board member by failing to disclose information about Huff's true intentions with respect to Ausam/Noram.

Borak's duties as a member of Ausam's board are governed by the law of Alberta, Canada. *See West v. Avery (In re Noram Res., Inc.)*, 2011 WL 5357895, at *5 (Bankr. S. D. Tex. 2011) ("Ausam is a Canadian corporation organized under the laws of Alberta.  This suit [for breach of the duty of care] is therefore governed by Alberta law.").  The fiduciary duties of directors are set forth in the Alberta Business Corporations Act § 122(1).

The Trustee adequately pleads that Borak owed duties of good faith and reasonable care to Ausam, that he breached those duties by failing to communicate information and by acting intentionally for the benefit of Huff rather than Ausam, and that Ausam/Noram suffered injury—

acceleration of the Debenture and the subsequent liquidity crisis—as a result of the breach. These allegations constitute a plausible claim.

The Trustee also adequately pleads conspiracy against Borak. Under Texas law,[1] "[t]he elements of civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *PAS, Inc. v. Engel*, 350 S.W.3d 602, 616 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The Trustee alleges that Borak acted in his capacity as a director of Ausam and therefore was a separate entity from Huff. *See Smith v. Greenshaw Oil and Gas, Inc. (In re Greenshaw Energy, Inc.)*, 359 B.R. 636, 646 (Bankr. S.D. Tex. 2007) ("An agent . . . may be found to conspire with a corporation if he acts outside of his status as a corporate agent."). The Trustee further alleges that Borak and Huff decided to deceive Ausam/Noram and thereby induce Ausam/Noram to default under the Debenture. They allegedly had a meeting of the minds as to their course of action, and the Trustee alleges specific facts that would allow an inference that a meeting of the minds occurred. Borak allegedly acted in furtherance of the plan by knowingly failing to advise Ausam/Noram that Huff's statements were false. Borak's alleged failure to advise Ausam/Noram violated his fiduciary duties as a director of Ausam, and it was, if true, unlawful. Ausam/Noram allegedly suffered damages when Huff accelerated the Debenture and caused a liquidity crisis. The Trustee has therefore stated a plausible claim for conspiracy against Borak.

---

[1] Because Ausam is a Canadian corporation and the Trustee's allegations concern conduct and subject matter connected to several jurisdictions, including Texas, Alberta, and New Jersey, it is unclear which jurisdiction's law applies to the conspiracy claim. The parties do not argue that any particular jurisdiction's law applies. The elements of conspiracy are generally similar across jurisdictions. *See, e.g.*, *Canada Cement LaFarge Ltd. v. British Columbia Lightweight Aggregate Ltd.*, [1983] 1 S.C.R. 452, para. 33 (Can.) (recognizing tort of civil conspiracy where parties have agreed either to cause injury to the plaintiff or to act unlawfully toward the plaintiff when the parties should know that injury is likely to and does result). The Court therefore applies Texas law, but concludes that the Trustee's allegations would also support a conspiracy claim under other the law of other jurisdictions.

*8. Failure to State Claims Against W.H. Ave.*

The Trustee does not state any claims against W.H. Ave.  The Trustee makes no allegations against W.H. Ave. other than that W.H. Ave. was the assignee of Huff's rights arising out of the sale.  The Trustee also does not seek any relief against W.H. Ave. other than the unwinding of the sale.  ECF No. 1, at 29.  As discussed above, the Trustee may not seek to unwind the sale.  The Trustee has not stated a claim against W.H. Ave. upon which relief may be granted.  W.H. Ave. will be dismissed as a defendant.

*9. Collateral Estoppel*

Because the Court has largely sustained the *res judicata* defense, Huff's argument for the application of collateral estoppel is moot.

**Conclusion**

The Defendants' motion to dismiss is granted, in part, and denied, in part.

The Court does not dismiss any claims against Borak.

The Court dismisses the fraudulent misrepresentation, negligent misrepresentation, subordination, disallowance, and detrimental reliance/estoppel/waiver/bad faith/oppressive conduct, and civil conspiracy claims against Huff.  The Court does not dismiss the breach of fiduciary duty claim against Huff.

The Court dismisses all claims against WRH and W.H. Ave.

A separate order will be issued.

SIGNED **December 30, 2011.**

Marvin Isgur<br>UNITED STATES BANKRUPTCY JUDGE