

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**06/27/2012**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 08-38222** |
| **NORAM RESOURCES, INC.,** *et al* | § | **CHAPTER  7** |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| **WILLIAM G WEST** | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 10-3703** |
| | § | |
| **WRH ENERGY PARTNERS LLC,** *et al* | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

The chapter 7 Trustee for Ausam Energy Corporation and Noram Resources, Inc. (collectively, "Ausam/Noram") sued Ausam/Noram's pre-petition creditor, Huff Energy Fund LP ("Huff") and Barry Borak, a former director of Ausam (collectively, "Defendants"), for breach of fiduciary duty and civil conspiracy.  The Court has already dismissed most of the claims against Huff on the basis of *res judicata*.  ECF No. 41.  The Defendants filed a second motion to dismiss on the basis of judicial estoppel and *res judicata*.  ECF No. 47.  The Court grants, in part, and denies, in part, the second motion to dismiss.

### Jurisdiction

The United States District Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This matter has been referred to the Bankruptcy Court by General Order 2012-06, pursuant to 28 U.S.C. § 157(a).

**Bankruptcy Court's Authority**

This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts. *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011). The Court may, however, issue interlocutory orders, even in proceedings in which the Court does not have authority to issue a final judgment.

The Court need not decide the extent of its authority to enter a final judgment with respect to any of the Trustee's claims. The Court has the authority to decide an interlocutory motion to dismiss. Because the Court does not enter a final judgment, the constitutional limitations on the Court's authority to enter final judgments are not implicated.

**Procedural Background**

Noram and Ausam both filed voluntary chapter 11 petitions on December 30, 2008. Noram's bankruptcy case is No. 08-38222 and Ausam's bankruptcy case is No. 08-38223. The cases are jointly administered under No. 08-38222.

On February 27, 2009, the cases were converted to chapter 7 cases on the Debtors' motion. No. 08-38222, ECF No. 70. William G. West was appointed chapter 7 Trustee for the estates.

The Trustee moved to sell assets of the estate on April 14, 2009. Huff was the proposed purchaser. The assets sought to be sold included:

- Noram's oil and gas properties, which were located in Texas, Louisiana, Arkansas, Mississippi, and Alabama;

- Ausam's 18,000,000 shares of Bounty Oil and Gas NL, estimated to be worth as much as $300,000.00;

- Noram's personal property, including furniture, equipment, computers, and software maintenance contracts; and

- All rights under insurance proceeds related to Noram's oil and
  gas properties.

No. 08-38222, ECF No. 92, at 3-4.  Huff would also be assigned certain assumed contracts.

According to the Trustee's motion, the Debtors owed Huff "at least $25,563,651.00."  No. 08-

38222, ECF No. 92, at 4.  The $25,563,651.00 was secured by a lien on Noram's oil and gas

properties as well as a blanket lien on the Debtors' personalty.  No. 08-38222, ECF No. 92, at 4.

Huff was to provide the following consideration:

- $200,000.00 cash;

- The reduction of Huff's secured claim by the amount of
  $12,550,000.00;

- The waiver of any right to a distribution from the estate on
  account of any other estate assets, save and except any
  litigation claims of any nature that were owned by the estate;
  and

- Huff's assumption of all future obligations under the assumed
  contracts.

No. 08-38222, ECF No. 92, at 5.  The Trustee requested expedited consideration of the motion,

asserting that "[t]he assets that are the subject of this motion consist primarily of oil and gas

leases that, in some cases, require payments to be made and other actions to be taken in order to

avoid their termination.  The leases are Huff's collateral and are worth significantly less than the

debt owed to Huff."  No. 08-38222, ECF No. 92, at 2.  The Trustee also stated, "No party will be

prejudiced by expedited consideration.  To the contrary, if prompt action is not taken, the value

of Huff's collateral may decrease significantly."  No. 08-38222, ECF No. 92, at 2.

Three parties objected to the motion to sell.  Vision Resources, LLC, objected on the

limited basis that the motion misstated the cure amount of its joint operating agreement with

Noram, which was to be assumed by Huff.  No 08-38222, ECF No. 102, at 2.  Ballard

Exploration Company, Inc. similarly objected to the proposed cure amount on its contract with Noram, the motion's failure to provide for Huff's assumption of its participation agreement in addition to its operating agreement with Noram, and Huff's failure to provide adequate assurance of future performance.  No. 08-38222, ECF No. 107, at 2.

A more extensive objection was filed by SKH Management, L.P.; SKH Management II, L.P.; SKH Management III, L.L.C.; SKH Energy Fund, L.P.; and Antares Exploration Fund, L.P. (collectively, "SKH").  No. 08-38222, ECF No. 105, at 3.  SKH had sold oil and gas properties ("SKH Leases") to Ausam in 2006.  Ausam had then assigned its interests to Noram.  SKH objected to the motion, asserting that SKH had a 25 percent interest in the SKH Leases and a reversionary interest in the properties.  SKH argued that the Debtors did not own and could not sell SKH's 25 percent interest or its reversionary interest and that Huff could not take title to the assets free and clear of its interests.  No. 08-38222, ECF No. 105, at 3.  According to SKH, Huff's liens did not encumber SKH"s interests in the SKH Leases.  No. 08-38222, ECF No. 105, at 4.

Before the scheduled hearing on the motion to sell, the Trustee, Vision, Ballard, SKH, and Huff reached an agreement.

The Court entered the agreed order ("Sale Order") on May 11, 2009.  No. 08-38222, ECF No. 112.  The Sale Order approved the sale of the assets for the consideration proposed in the Trustee's motion.  Additional terms were added: the order specifically provided that it did not adjudicate the claims between SKH and the Trustee that were being litigated in Adv. No. 09-3165.  The Court also found that "[t]he transactions contemplated by this Order are undertaken by Huff in good faith, as that term is used in 11 U.S.C. § 363(m)[.]"  No. 08-38222, ECF No. 112, at 4.  No appeal was taken.

The Trustee filed this adversary proceeding on December 29, 2010.  The Defendants filed the first motion to dismiss on February 23, 2011, arguing that *res judicata* barred the Trustee's claims.  ECF No. 15.  The Trustee filed a response at ECF No. 21, and the Defendants filed a reply at ECF No. 25.  The Court held a hearing on the motion, and the parties filed extensive additional briefing.  ECF Nos. 30, 31, 32, 36 & 38.  On December 30, 2011, the Court issued an order and memorandum opinion granting, in part, and denying, in part, the Defendants' motion to dismiss.

Holding that the Trustee's claims against Huff for fraudulent misrepresentation, negligent misrepresentation, subordination, disallowance, and detrimental reliance/estoppel/waiver/bad faith/oppressive conduct, and civil conspiracy claims arose out of the same nucleus of operative fact as the Sale Order, the Court ruled that the claims were barred by *res judicata*.  The Court dismissed the claims.  The Court also dismissed all claims against Defendants WRH and W.H.Ave. for failure to state a claim.  The Court did not dismiss any claims against Borak, concluding that it was not apparent from the face of the Trustee's Complaint that Borak was in privity with Huff for *res judicata* purposes.

The Trustee filed his First Amended Complaint on February 17, 2012.  The First Amended Complaint asserts a breach of fiduciary duty and unjust enrichment claim against Huff for Huff's post-sale conduct in connection with the SKH claims, as allowed by the December 30, 2011 Memorandum Opinion, but it also asserts claims for civil conspiracy, vicarious liability, and equitable subordination.  The Trustee continues to assert claims against Borak for breach of fiduciary duty/duty of loyalty and breach of duty of care, civil conspiracy, and vicarious liability.

Huff filed its second motion to dismiss and answer to the Trustee's First Amended Complaint on March 16, 2012. ECF No. 47. The Trustee filed a response on March 28, 2012, ECF No. 48, and Huff filed a reply on April 18, 2012, ECF No. 52.

### Trustee's Allegations

Beginning in 2006, Ausam/Noram carried out the purchase from SKH of numerous oil and gas properties, the SKH Leases. Ausam/Noram and SKH executed an Asset Purchase Agreement ("APA") on September 21, 2006, and they closed on the transaction through a series of conveyances beginning around January 27, 2007 and concluding around July 30, 2008. ECF No. 44, at 2. SKH conveyed interests in the SKH Leases. Ausam/Noram paid SKH consideration of approximately $13.5 million in cash and around $18,866,600.00 in stock. ECF No. 44, at 2-3.

About six months after the closing of the APA began, Ausam borrowed money from Huff. Ausam issued to Huff a $25,000,000.00 principal, 9% interest, senior secured debenture, due July 3, 2012 ("Debenture"). ECF No. 44, at 3. Pursuant to Huff's rights under the Debenture, Borak, a principal of Huff, was appointed to Ausam's board. ECF No. 44, at 3. For about six months before purchasing the Debenture, Huff conducted due diligence into, among other things, the merits of Ausam/Noram's purchase of the SKH Leases. ECF No. 44, at 3. As security for the Debenture, Ausam/Noram granted Huff a security interest in all of its assets, including Ausam/Noram's interest in the SKH Leases.

According to the Trustee, the SKH Leases proved to be quite valuable, and Noram was successful in developing many of the oil and gas leases. ECF No. 44, at 5-7. The Trustee alleges that Huff began to look for ways to use its position as a senior secured creditor to obtain Noram's interest in the SKH Leases. ECF No. 44, at 6. Huff particularly began to scrutinize

Ausam/Noram's conduct to try to identify one of the Events of Default identified under the terms of the Debenture.  ECF No. 44, at 7.  If an Event of Default occurred, Huff could accelerate and declare immediately due and payable the principal and interest on the Debenture.  If this happened, Ausam/Noram would not have sufficient liquidity to pay off the amount, and Huff would be able to foreclose on Ausam/Noram's assets, including the SKH Leases.  ECF No. 44, at 8.

At the same time, in order to develop the SKH Leases, Ausam/Noram sought capital. Ausam/Noram considered a private placement of equity, an early exercise of warrants, and a subordinated debt issue.  ECF No. 44, at 8.  Ausam/Noram were aware that a private placement of equity could constitute an Event of Default under the Debenture.  The Debenture stated that Ausam "will not issue Shares . . . at a price below the then Current Market Price, or fair market value (as determined by an investment bank agreed upon as between the Holder [Huff] and the Parent [Ausam]) if the shares are not listed for trading on a recognized stock exchange."  ECF No. 44, at 8 (quoting Debenture ¶ 6.23(i)).  Concerned that Huff could argue that their planned price for the equity was below the current market price or fair market value, Ausam/Noram sought assurance that Huff would approve the private placement of equity and debt.  ECF No. 44, at 8-9.

The Trustee alleges that "Huff repeatedly assured Ausam and Noram that it would not interpret the planned capital raises as any type of Event of Default under the Debenture."  ECF No. 44, at 9.  According to the Trustee, Huff "falsely stated both its then-existing state of mind and its future intentions."  ECF No. 44, at 11.  The Trustee alleges numerous specific false assurances that Huff would not regard the capital raises as an event of default.  ECF No. 44, at 9-11.

Borak was involved in Huff's plans.  The Trustee alleges that "Borak was fully aware that Huff's assurances were false when made, and that Huff intended for Ausam to rely on the false representations."  ECF No. 44, at 12.  As a member of Ausam's board, Borak was a fiduciary to Ausam.  The Trustee asserts that Borak breached his duties by failing to disclose his knowledge about Huff's plans.  ECF No. 44, at 12.

Ausam/Noram proceeded with the debt placement and equity private placement. Additionally, William Hitchcock, an Ausam board member, and Mooney Enterprises acted in reliance on Huff's statements, each making $1,000,000.00 loans to Ausam around October 7, 2008.  ECF No. 44, at 12.  Huff and Borak allegedly "voiced absolutely no concerns" about the loans from Hitchcock and Mooney, planning later to argue that the loans constituted Events of Default.  ECF No. 44, at 13.

In November 2008, Huff declared for the first time that the financings were Events of Default under the Debenture.  ECF No. 44, at 14.  Huff told Ausam/Noram that it would waive the Events of Default only if they agreed to an "onerous" Forbearance Agreement.  ECF No. 44, at 14.

The terms of the Forbearance Agreement were "commercially unreasonable" for Ausam/Noram, and they attempted to work out a settlement with Huff.  ECF No. 44, at 16-18. After Huff representatives met with Ausam/Noram representatives at Huff's offices, Huff told the companies that it would send a letter with a proposed settlement.  ECF No. 44, at 18.

The proposed settlement, however, demanded that Ausam/Noram deed "the most lucrative and promising" of the SKH Leases directly to Huff.  ECF No. 44, at 18.

Additionally, Huff's behavior made Ausam/Noram's planned warrant early exercise program "impossible," keeping Ausam/Noram from raising approximately $2,000,000.00 and, ultimately, $3,500,000.00.  ECF No. 44, at 18-19.

Facing a liquidity crisis in late December 2008, Ausam/Noram filed chapter 11 bankruptcy.  ECF No. 44, at 19.  The Trustee alleges that Huff's actions "forced" Ausam/Noram into bankruptcy.  ECF No. 44, at 19.

As discussed above, the Court approved the sale to Huff of substantially all operating assets of Ausam/Noram, including the SKH Leases, on May 11, 2009.

After the sale, SKH asserted that the SKH Leases had reverted to SKH.  ECF No. 44, at 20.  Huff sought and received authority from the Court to assert causes of action against SKH on behalf of the bankruptcy estates.  ECF No. 44, at 22.  The Trustee alleges that Huff, acting as a fiduciary for the estates, used its authority to enter into a settlement agreement that benefitted Huff.  ECF No. 44, at 25-26.  Huff then allegedly inaccurately advised the Trustee that the claims against SKH were not worth pursuing.  ECF No. 44, at 27.  Huff also failed to uphold its express agreement to provide periodic reports of the status of the investigation and prosecution of the claims.  ECF No. 44, at 26-27.

### Rule 12(b)(6) Standard

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."  *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).  However, the Court "will not strain to find inferences favorable to the plaintiff."  *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements.  Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct."  129 S.Ct. 1937, 1950 (2009) (quoting Rule 8(a)(2)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

Fraud claims must, in addition, meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements.  Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud.  Fed. R. Civ. P. 9(b).  *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations).  "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

A motion under Rule 12(b)(6) will be treated as one for summary judgment under Rule 56 when matters outside the pleadings are presented and not excluded by the Court.  Fed. R. Civ. P. 12(d); Fed. R. Bankr. P. 7012(b).  Under Rule 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.  In the event a motion to dismiss is converted to one for summary judgment, a court must first give the parties notice and then may consider all evidence presented.  *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009).

### Analysis

The Defendants assert three arguments for dismissal of the Trustee's remaining claims. First, they argue that the Trustee is judicially estopped from asserting the claims.  Second, the Defendants argue that the Trustee is barred by the Court's December 30, 2011 Memorandum Opinion from asserting the equitable subordination claim.  Third, the Defendants argue that the conspiracy and vicarious liability claims are also barred.  The claims were dismissed against Huff in the December 30, 2011 Memorandum Opinion, the Defendants note, and they argue that the claims cannot be asserted against only one co-conspirator.

### *1.  Judicial Estoppel*

The Defendants argue that the Trustee's claims should be dismissed on the basis of judicial estoppel.  On May 18, 2010, at a hearing on a motion to sell certain bankruptcy estate claims to Huff, ECF No. 149, the Trustee stated that he and his counsel had done an investigation of claims against Huff and had found none.  ECF No. 160, at 10.  At the hearing, the Court denied the motion without prejudice for want of proof.  ECF No. 160, at 35.  The Trustee filed a second motion to sell claims on August 27, 2010.  ECF No. 169.  The Trustee announced at a

hearing on October 5, 2010 that he was withdrawing the motion.  The Court never approved the sale of the claims.

In determining whether to apply judicial estoppel, courts primarily look for the presence of the following criteria:  (1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently.  *Love v. Tyson Foods, Inc.*, 677 F.3d 258 (5th Cir. 2012) (quoting *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc)).

Because the Court did not approve the sale of the claims, the Court did not "accept" the Trustee's statements.  Judicial estoppel therefore does not apply.

The Defendants argue that the judicial acceptance prong is met when a "statement is made with the express intent to induce the Court's reliance thereon[.]"  ECF No. 52, at 5.  The Defendants cite *Hall v. GE Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 399 (5th Cir. 2003); *Ahrens v. Perot Sys. Corp.*, 39 F. Supp. 2d 773, 779 (N.D. Tex. 1999); and *In re Osyka Corp.*, 426 B.R. 653, 663 (Bankr. S.D. Tex. 2010).

The cases the Defendants cite do not allow the application of judicial estoppel when a court did not make any ruling that adopted the earlier inconsistent statement.  It is true that judicial acceptance does not require ultimate success on the merits of the case, but it does require success with respect to matter being litigated when the prior inconsistent statement was made. *See Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 206 (5th Cir. 1999) ("[The] 'judicial acceptance' requirement 'does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits.  Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a

preliminary matter or as part of a final disposition.") (quoting *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988)).

The Defendants cite *Ahrens* for the proposition that "[s]tatements explicitly made for the purpose of inducing the court's reliance thereon are subject to judicial estoppel." 39 F. Supp. 2d at 779. This statement does not exclude the requirement that the court actually adopted the statement. *Ahrens* goes on to say that the judicial acceptance prong "does not require ultimate success on the merits, only that the court adopted the previous inconsistent statement." *Id.*

Similarly, although *Hall* notes that judicial estoppel may be applied when a party makes an argument "with the explicit intent to induce the district court's reliance," it does not hold that it is unnecessary that the court made a ruling adopting the position. 327 F.3d at 399. Instead, the court in *Hall* held that judicial acceptance was satisfied in that case because "the previous court 'necessarily accepted, and relied on' Hall's statements" when deciding summary judgment motions and a joinder motion. *Id.*

Finally, in *Osyka*, this Court found that it had accepted the party's prior position in a disclosure statement, noting that "the Court could not have approved the Disclosure Statement without assurance that Houff's interests were protected. . . . [A]greeing to take the assets 'subject to the Debtor's ongoing obligations to Houff is inconsistent with Legado's current position." 426 B.R. at 664. The Court noted that it had "explicitly accepted Legado's previous position." *Id. Osyka* thus does not support the argument that judicial acceptance does not actually require adoption of the position by a court.

Intent to induce the Court's reliance is insufficient to establish judicial acceptance unless the Court actually adopted the statements for some purpose. In this case, the Court did not accept the Trustee's statements for any purpose: the Court denied the Trustee's motion to sell

claims for want of proof, and the Trustee withdrew the second motion to sell claims before the Court ruled on it.  Because the Court never accepted the Trustee's position that the estate had no claims against Huff, judicial estoppel does not apply.

### 2. Equitable Subordination Claim

Huff argues that the Trustee's equitable subordination claim was foreclosed by the approval of the Sale Order and that the Court's December 30, 2011 Memorandum Opinion dismissed the equitable subordination claim against Huff.

The First Amended Complaint no longer contains an paragraph discussing the § 510(c) claim, but the Trustee continues to include, in his prayer for relief, a request for "[e]quitable subordination of Huff's claims, including claims as a secured creditor, in the Noram and Ausam bankruptcy case and/or the assignment of all liens to the estate[.]"  ECF No. 44, at 35.

The December 30, 2011 Memorandum Opinion dismissed the Trustee's subordination claim under 11 U.S.C. § 510(c), and the Court does not revisit this ruling.  Part of the purchase price of the assets, in addition to $200,000.00 in cash, was the reduction of Huff's claim against the bankruptcy estates by $12,550,000.00 and its waiver of any right to a distribution from the estates.  No. 08-38222, ECF No. 112.  The Sale Order thus established the validity and priority of Huff's claim against the estates.  As the Court noted in the December 30, 2011 Memorandum Opinion, the Trustee is free to seek actual damages for Huff's alleged conduct after the entry of the Sale Order.  However, the Trustee may not reopen the issue of Huff's claim against the estates.  The dismissal of the Trustee's equitable subordination claim on the basis of *res judicata* is the law of the case.  *See Hardy Rawls Enters. v. Cage (In re Moye)*, 437 F. App'x 338, 341 (5th Cir. 2011) ("Under the law-of-the-case doctrine, a court follows its prior final decisions in

the case as the law of that case, except for a few narrow exceptions.").  The Court now dismisses

the equitable subordination claim asserted in the First Amended Complaint.

### 3.  *Civil Conspiracy and Vicarious Liability Claims*

The Defendants correctly argue that the Trustee may not assert civil conspiracy and

vicarious liability claims against Huff for conduct that occurred before the Sale Order.  The First

Amended Complaint alleges that Huff and Borak conspired to deceive Ausam/Noram into

believing that Huff would not assert that the financings and warrant programs were events of

default.  ECF No. 44, at 34-35.  All of these allegations concern conduct that occurred before the

Sale Order.  In the December 30, 2011 Memorandum Opinion, the Court dismissed the civil

conspiracy claim, along with other claims that arise out of this alleged conduct, on the basis of

*res judicata*.  ECF No. 41.  Because the civil conspiracy and vicarious liability claims do not

allege any conduct that occurred after the Sale Order, these claims, as against Huff, are also

barred by *res judicata*.   As discussed extensively in the December 30, 2011 Memorandum

Opinion, the alleged conspiracy to induce Ausam/Noram to default on the Debenture involves

the same nucleus of operative facts as the Sale Order.  ECF No. 41, at 21.  The Court again

dismisses the civil conspiracy claim against Huff as asserted in the First Amended Complaint,

and the Court also dismisses the Trustee's vicarious liability claim against Huff.

The Defendants argue that because the Trustee is barred from asserting these claims

against Huff, he also may not assert the claims against Borak.  They argue that "due to the joint

nature of conspiracy claims, the ability to assert conspiracy claims against one alleged co-

conspirator depends entirely upon the ability to hold all other co-conspirators liable for civil

conspiracy."  ECF No. 47, at 8.  The Defendants cite *Schoellkopf v. Pledger*, 778 S.W.2d 897,

900 (Tex. App.—Dallas 1989, writ denied) and *Barbier v. Barry*, 345 S.W.2d 557, 565 (Tex. Civ. App. Dallas 1961).

The Defendants cherry-pick quotes from the two cases to argue that dismissal of a claim against one alleged co-conspirator necessitates dismissal against other alleged co-conspirators. The Defendants incorrectly interpret *Schoellkopf* and *Barbier*.

*Schoellkopf* states, "[A]n actionable conspiracy must consist of wrongs that would have been actionable against the conspirators individually." 778 S.W.2d at 900. In context, this means only that defendants cannot be held liable for conspiracy when the allegedly wrongful acts are not otherwise actionable. The *Schoellkopf* court goes on to state, "Generally, if an act by one person cannot give rise to a cause of action, then the same act cannot give rise to a cause of action if done pursuant to an agreement between several persons." *Id.* *Schoellkopf* thus says nothing about whether the dismissal of one alleged co-conspirator on procedural grounds necessitates the dismissal of another alleged co-conspirator.

*Barbier* states, "Certainly the liability of one [co-conspirator] is dependent on that of the other." 345 S.W.2d at 565. The issue before the *Barbier* court was whether a judgment was joint or severable. The court reversed a judgment against one of the co-conspirators because the judgment ought to have been joint. The Court does not read *Barbier* as establishing the principal that a plaintiff may not sue a co-conspirator after its conspiracy claim against another co-conspirator has been dismissed on procedural grounds. Moreover, under current Texas law, co-conspirators are jointly and severally liable for damages caused by the conspiracy's wrongful acts. *Energy Maintenance Servs. Grp. I, LLC v. Sandt*, --- S.W.3d ----, 2012 WL 1038043 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("A finding of civil conspiracy imposes joint and several liability on all conspirators for actual damages resulting from acts in furtherance of the

conspiracy."); *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 423-24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

Because co-conspirators are jointly and severally liable, a plaintiff may choose to sue only one co-conspirator for an alleged conspiracy. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 600 n.4 (5th Cir. 1981) ("[He] alleges a conspiracy but sues only one conspirator, which he is free to do."); 16 Am. Jur. 2d Conspiracy § 66 ("Under the principle of joint and several liability, all conspirators may be joined as parties defendant in the action, but it is not necessary, in order for one member of civil conspiracy to be liable, that all members of conspiracy be named defendants or be joined as defendants; the plaintiff, at his or her option, may maintain suit against any one or more of them.").

Because the Trustee would, if not for the application of *res judicata*, be free to sue both Huff and Borak, only Huff, or only Borak, there is no reason why the Trustee is now barred from suing only Borak—an option he would have regardless of whether Huff raised the *res judicata* defense. The Defendants effectively argue that conspiracy claims must be brought against all co-conspirators; this simply is not the law.

It is true that if Borak and Huff were in privity for *res judicata* purposes, the application of *res judicata* with respect to Huff would bar the Trustee from bringing the conspiracy claim against Huff. Borak was not a party to the litigation surrounding the Sale Order, but *res judicata* would bar claims arising out of the same nucleus of operative fact if Borak were in privity with Huff. *Wang v. Prudential Ins. Co. of Am.*, 439 F. App'x 359, 364 (5th Cir. 2011). Privity exists in three circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's

interests were adequately represented by a party to the original suit." *Id.* (quoting *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990)).

In its December 30, 2011 Memorandum Opinion, the Court held that, from the face of the Trustee's complaint, it is not apparent that Borak and Huff were in privity. As the Court stated, "Borak's alleged misconduct is not identical to Huff's, and their interests and duties may not be sufficiently aligned to make them 'identical parties.'" ECF No. 41, at 23-24. The Court again holds that dismissal of the claims against Borak on the basis of *res judicata* is not appropriate because it is not apparent from the face of the complaint that *res judicata* applies.

### 4. *Dispositive Motions*

The Trustee argues that the Defendants' motion to dismiss ought to be taken as a motion for summary judgment because it references material outside the pleadings. ECF No. 48, at 3-4. As discussed above, the Court dismisses the equitable subordination, civil conspiracy, and vicarious liability claims against Huff on the basis of the pleadings and other documents of which the Court may take judicial notice. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (internal quotation marks omitted). The Court does not dismiss any claims on the basis of the Defendants' judicial estoppel argument, and this argument does not require the consideration of any evidence outside of the pleadings and matters of which the Court may take judicial notice. The Court therefore does not convert the Defendants' motion to dismiss to a motion for summary judgment.

The Trustee also argues that the Defendants ought to be barred from filing future dispositive motions. The Trustee urges that the Defendants' motion should be taken as their one

opportunity to file a motion for summary judgment.  The Court does not at this time limit the Defendants' ability to file dispositive motions.  The Defendants' motion is only the second dispositive motion filed in this case, and the motion is, in part, meritorious.  Indeed, part of its merit is based on the Trustee's re-assertion of claims that the Court previously dismissed.

**Conclusion**

The Court dismisses the Trustee's equitable subordination, civil conspiracy, and vicarious liability claims against Huff.  The Court denies the Trustee's motion to dismiss as to all other claims.

SIGNED **June 27, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE