**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **NORAM RESOURCES, INC. and** | § | **Case No. 08-38222-H1-7** |
| **AUSAM ENERGY CORPORATION,** | § | **(Chapter 7)** |
| | § | **(Jointly Administered)** |
| Debtors. | § | |
| **WILLIAM G. WEST,** | § | |
| **CHAPTER 7 TRUSTEE** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Adversary No. 10-3703** |
| | § | |
| **WRH ENERGY PARTNERS, L.L.C.,** | § | |
| **HUFF ENERGY FUND, L.P.,** | § | |
| **W.H. AVE., LLC, and BARRY BORAK,** | § | |
| | § | |
| **Defendants.** | § | |

**TRUSTEE'S FIRST MOTION TO COMPEL**

William G. West, Chapter 7 Trustee (the "Trustee") for the Estates of Debtors Ausam Energy Corp. ("Ausam") and Noram Resources, Inc. ("Noram"), files this First Motion to Compel the production of documents and information from Defendant The Huff Energy Fund L.P. ("Huff"). The Trustee requested the documents and information at issue in the Trustee's First Requests for Production served April 27, 2012, more than eleven months ago. *See* Trustee's 1st Reqs. for Prod. of 4/27/12, attached as Ex. A. The Trustee seeks to compel Huff to withdraw privileges which Huff – due to its status as an agent and fiduciary of the Estates – cannot properly assert, and to compel Huff to produce information that Huff is now withholding based on these improperly asserted privileges.

The Trustee respectfully shows the following:

1

## I.     Procedural Background

The Trustee brings the above-captioned action against Huff and Ausam Energy Corp. ("Ausam") director Barry Borak.[1]   The Court has dismissed certain of the Trustee's claims against Huff in this action; however, important Estate claims against Huff remain pending.   These claims include the Trustee's causes of action against Huff for post-petition misconduct occurring after the May 11, 2009 Sale Order, No. 08-38222-H1-7, Doc. 112,[2] was entered in the underlying bankruptcy case.   Ex. 1 to Ex. A.   *See also* No. 08-38222, Doc. 112.   Specifically, the Trustee asserts claims against Huff for breaches of fiduciary duty and unjust enrichment in Huff's purported pursuit of claims (the "Post-Sale SKH Claims") against SKH Management LP and related SKH entities (collectively, "SKH") on behalf of Ausam's and Noram's bankruptcy Estates.   *See* Doc. 44, 1st Am. Compl., attached as Ex. B, ¶¶ 49-78.   This Motion to Compel is directed to the Trustee's First Requests for Production for information and documents relevant to these Post-Sale SKH Claims,[3] and numbered 1 to 24.   *See* Ex. A, Nos. 1-24.

Counsel for the Trustee and Huff's counsel have conferred on Huff's objections and assertions of privileges in response to the Trustee's Requests Nos. 1-24.   Huff has agreed to withdraw its assertion of privileges for any Requests Nos. 1–24 (except for

---

[1]   In addition, the Trustee brings actions against six (6) Ausam directors and officers ("D's and O's") in *West v. Avery, et al.,* Adv. No. 10-3701, United States Bankruptcy Court, Southern District of Texas (the "Avery Action"), and against five Ausam D's and O's (Borak, Mark Avery, William Hitchcock, Richard Lummis, and Ralph Davis) in *Kinloch Rice Field LLC, et al. v. Mark Avery, et al.,* Adv. No. 12-03322 (the "Kinloch Action").   Because the Trustee's claims against the Ausam D's and O's in the Avery Action and the Kinloch Action, as well as the Trustee's claims against Ausam director Borak in this action, are subject to a potential settlement, the Trustee's Requests for Production seeking documents and information relating to those D and O claims are not addressed in this Motion.

[2]   This Order conveyed substantially all of debtor Ausam's and Noram's oil and gas Properties, Leases and operating assets to Huff.

[3]   The Trustee reserves the right to serve additional discovery Requests, and to move to compel production on other Requests at a later date, as appropriate under the Rules.

Request No. 22), but *only* for documents or information prepared **on or after December 28, 2009**, *i.e.*, the date the Court granted Huff's **Motion for Authority to Assert Claims Against SKH for the Ausam and Noram Bankruptcy Estates**. *See* Ex. 3 to Ex. A; No. 08-38222, Doc. 145. By email, Huff has confirmed it will not withdraw (1) any privileges asserted in response to Requests Nos. 1-21 and 23-24 for documents and information created **prior to December 28, 2009**, and (2) all privileges it now asserts in response to Request No. 22 – regardless of timeframe. The Trustee files this Motion to Compel[4] Huff to withdraw it assertion of these privileges, and to produce documents and information responsive to Requests Nos. 1-21 and 23-24 created both **before and after December 28, 2009**, and to also produce documents and information created at any time and responsive to Request No. 22.

---

[4] Rule 26(b)(1), made applicable to adversary proceedings by Bankruptcy Rule 7026, governs the scope of discovery, and states that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense" or that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The federal discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979).

The party posing discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* Fed. R. Civ. P. 37; *Export World Wide Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.,* 227 F.R.D. 467, 470 (N.D. Tex. 2005) (citation omitted). "Unless it is clear that the information sought can have no possible bearing on the claim or defense of the party, the request for discovery should be allowed." *Id.*

The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Knight*, 241 F.R.D. at 263. Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus, should not be permitted. *See, e.g., Smith v. Detar Hosp. LLC*, No. C-10-83, 2011 WL 6217497, at *2 (S.D. Tex. Dec. 14, 2011).

The Fifth Circuit has repeatedly instructed that a "district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (citation and quotation marks omitted).

As explained below, due to its status as an agent and fiduciary of the Estates, Huff cannot properly assert the claimed privileges.

## II.    Factual Background

The time-line showing why this Motion to Compel should be granted is as follows:

April 14, 2009:      Trustee files a Motion to Approve Sale of Debtors Noram's and Ausam's Assets to Huff Free and Clear.  The assets that Huff seeks to buy are substantially all of Debtors Ausam's and Noram's oil and gas Properties, Leases and operating assets.

May 4, 2009:        SKH appears in the Ausam and Noram bankruptcy case, and files *its own* lawsuit against Huff in *SKH Management, L.P. v. The Huff Energy Fund, L.P.*, Adv. No. 09-3165.  SKH asserts that valuable portions of Ausam's oil and gas properties reverted to SKH under the terms of SKH's prior Asset Purchase Agreement with Ausam. Specifically, SKH asserts it owns (i) a 25% back-in property interest in all properties that Huff sought to purchase from the Debtors' estates, (ii) a 100% reversionary interest in all properties that Huff sought to purchase which remained untested as of December 31, 2009, and (iii) a 25% working interest in the Weatherford and Nolte Marsh wells, No. 08-38222, Doc. 108 at 6-7.  SKH asserts that any sale order sought by Huff or the Trustee would be *ineffective* to convey these assets to Huff.

As the result of SKH's filing this action, Huff became engaged in *its own lawsuit with SKH – prior to Huff's ever proposing and agreeing to act as the Ausam and Noram Estates' agent* for purposes of bringing the Estates' claims against SKH.

May 11, 2009       Court enters the Sale Order, Doc. 112, No. 08-38222, in the underlying case.  With this Sale Order, Huff purports to acquire substantially all of the oil and gas Properties, Leases and operating assets of Debtors Ausam and Noram.

May 26, 2009       Huff files Answer and Counterclaim against SKH in Adv. No. 09-3165.

July 28, 2009:       Huff files its Motion for Authority to Assert Causes Against SKH on Behalf of the Debtors' Estates. Prior to or – at the latest – as of, the date of this filing, Huff and the Chapter 7 Trustee had agreed that Huff would act as the Estates' *agent* for purposes of pursuing the Estates' claims against SKH.

Oct. - Nov. 2009: Huff and SKH draft a settlement agreement with an effective date November 1, 2009 directed to settling the dispute in Adv. No. 09-3165. *Unbeknownst to the Chapter 7 Trustee*, this draft settlement agreement acknowledges that Huff has filed a motion seeking to represent the Estates on claims against SKH (the "Estate's Claims") and states that the agreement settles *the Estate's Claims* against SKH. The Trustee is *not advised* of the existence or terms of this settlement agreement, nor that this agreement is designed to effect a release and discharge the Estates' claims against SKH.

December 28, 2009: The Court enters its Order Granting Huff Authority to Assert Estates' Claims Against SKH; again – even though this Order is entered after Huff agreed to settle the Estates' Claims against SKH – Huff still does not advise the Trustee that Huff already agreed to settle the Estates' Claims against SKH.

December 30, 2009: With the Court's Order Granting Huff the Authority to Assert Estates' Claims Against SKH in Huff's hands, SKH also signs the settlement agreement resolving Huff's and SKH's claims in *SKH Management, L.P. v. The Huff Energy Fund, L.P.*, Adv. No. 09-3165. As noted, the agreement also states that it *releases and discharges the Estates' Claims* against SKH.

February 3, 2010: Huff files an Agreed Motion to Dismiss with Prejudice the Adversary Proceeding between Huff and SKH in *SKH Management, L.P. v. The Huff Energy Fund, L.P.*, Adv. No. 09-3165. This Motion contains *no mention* of the fact that Huff had earlier settled the *Estates' Claims* against SKH, and the Trustee is still not advised of the November 2009 settlement agreement with SKH releasing the Estate's claims against SKH.

April 1, 2010: Huff sends a "Notice of Election Not to Prosecute Estates' claims against SKH" to Trustee Chapter 7 Trustee. Again, Huff fails to advise the Trustee or Trustee's counsel that it had earlier signed an agreement to settle the Estates' claims against SKH.

December 3, 2012: After repeated verbal and written requests from Trustee's counsel, Huff finally provides the Trustee with a copy of its settlement agreement with SKH in Adv. No. 09-3165. The Trustee then learns for the *first time* that Huff had signed an agreement settling claims against SKH that belonged to the Estates approximately three (3) years earlier on or about November 1, 2009.

5

The facts substantiating and elaborating on this time-line are set out below. Given these facts, the relief sought in this Motion is easy to understand. These Requests at issue seek documents and information directed to why Huff, in its efforts to be retained by the Trustee for the purpose of bringing claims against the SKH, first made such glowing representations to the Trustee and to the Court about Huff's ability to obtain a significant recovery against SKH for the Estates. But, after making these glowing representations – and while owing a fiduciary duty to the Estates to act as their agent – Huff suddenly dropped the claims against SKH without providing "any explanation and without sharing any analysis or results of its alleged investigation(s) into the SKH claims with the Trustee." Ex. B, Doc. 44, 1st Am. Compl. ¶ 66.

As the Trustee alleges, Huff dropped its pursuit of the Post-Sale SKH Claims for the Estates because Huff had *never actually intended* to pursue those claims in good faith for the benefit of the Estates. Rather, Huff's intent was simply to use the added leverage that it could gain over SKH from representing the Chapter 7 Trustee on the Estates' claims against SKH to achieve a more-favorable result for *Huff* in Huff's *own,* pre-existing lawsuit with SKH, Adv. No. 09-3165. Ex. B, Doc. 44, 1st Am. Compl. ¶ 78. This misconduct gives rise to the Trustee's current claims against Huff for, *e.g.,* breach of fiduciary duty and unjust enrichment.

As explained below, the case law shows that Trustee's right to discovery under Fed. R. Civ. P. 26 is clear, and that Huff's claims of privilege should be overruled. Huff should be ordered to produce documents and information responsive to the Trustee's requests without delay.

A.   **Huff makes glowing representations to the Court and to the Trustee about Huff's ability to achieve recoveries against SKH for the Estates.**

In a July 28, 2009 Motion for Authority to Assert Causes Against SKH on Behalf of the Debtors' Estates, Huff made the following statements to the Court:

- "The Trustee has consented to Huff's filing and prosecuting the Claims against SKH." Ex. 2 to Ex. A, No. 08-38222, Doc. 137, at 6.

- "[T]he Trustee has requested clarification that any recoveries on the Claims will be received by the Trustee on behalf of the estates. The Trustee has requested and <u>Huff agrees that any settlement offers will be conveyed to the Trustee</u> and that the Trustee will receive periodic reports from Huff of the status of the investigation and prosecution of the [Estates'] Claims." Ex. 2 to Ex. A, No. 08-38222, Doc. 137, at 6-7 (emphasis added).

- "Huff has conducted its own legal analysis of [SKH's] breaches of representations and warranties and <u>will share the same with the Court</u> *in camera* ... ." *Id.* at 6 n.2 (emphasis added).

- "Huff and its counsel have performed an <u>extensive and ongoing review of the [Estates'] Claims</u>." *Id.* at 8 (emphasis added).

- "Huff's ... prosecution of the Claims <u>is in the best interest of the Debtor's estates</u> because <u>Huff has identified significant value</u> that may yield <u>substantial recovery</u> for the benefit of the estates ... and the estates have no resources to pursue the Claims." *Id.* at 7 (emphasis added).

- "<u>Significant value that should be recovered by the estates could be lost if Huff is not authorized to ... prosecute the [estates'] Claims</u>." *Id.* (emphasis added).

This Motion for Authority shows, prior to the filing of this Motion for Authority on July 28, 2009, that – as between Huff and the Chapter 7 Trustee – there was agreement that Huff would act as the Estates' agent for purposes of pursuing the Estates' claims against SKH. At the time that Huff filed its July 28, 2009 Motion for Authority, Huff represented that it could and would act in good faith as the Estates' agent for the purpose of prosecuting the Estates' claims against SKH. *See* Ex. 2 to Ex. A.

7

In agreeing act as agent of the Debtors' Estates, Huff knew or should have known that it would owe the Estates the duty to suborn its own interest to the Estates' interests, and also owe the Estates' the duties of scrupulous good faith, candor and transparency, as well as the duty to act unselfishly.[5]  Just as significantly, Huff would owe the Estates "the general duty of *full disclosure* respecting matters affecting the principal's interests …." *United Teachers Assoc. Ins. Co. v. MacKeen & Bailey, Inc.*, 99 F.3d 645, 650 (5th Cir. 1996) (emphasis added).

On December 28, 2009, the Court granted Huff's Motion for Authority to assert causes of action on behalf of the Debtor's estates, thereby acting upon representations that Huff had earlier made to the Court.  Ex. 3 to Ex A, No. 08-38222, Doc. 145.  This Order divested the Trustee of control of the SKH litigation by giving Huff "exclusive authority to make all … decisions concerning" the claims that Huff would bring on behalf of the Estates of debtors Ausam and Noram "provided, however, that Huff will provide any settlement offers and periodic status updates to the Chapter 7 Trustee."  *Id.* at 1-2 (underscoring original).

But as explained below, it appears that, *prior to* the Court's even granting Huff's Motion for Authority, Huff had *already used* its authority from the Trustee to bring the Estates' claims against SKH to benefit – not the Estates – but Huff *itself* in Huff's *own* lawsuit with SKH, Adv. No. 09-3165.

**B.    At the time Huff made its glowing representations about Huff's ability to represent the Estates against SKH, Huff already had its own lawsuit pending with SKH.**

---

[5]  *See, e.g., In re Allied Gaming Mgmt., Inc.*, 209 B.R. 201, 203 (Bankr. W.D. La. 1997); *Mullen v. Jones (In re Jones),* 445 B.R. 677, 706 (Bankr. N.D. Tex. 2011); *Annesley v. Tricentrol Oil Trading, Inc.*, 841 S.W.2d 908, 910 (Tex. App.—Houston [14[th] Dist] 1992, writ denied).

As noted – separate and apart from any dispute that the debtors' Estates may have had with SKH – Huff already had *its own*, *pre-existing* dispute with SKH.  Ex. B, Doc. 44, ¶ 50.  Prior to Huff filing its July 28, 2009 Motion for Authority, SKH filed a lawsuit against Huff on May 4, 2009, styled *SKH Management, L.P. v. The Huff Energy Fund, L.P.*, Adv. No. 09-3165.  In this action, SKH sought a declaration that the sale of substantially all of Debtors Ausam's and Noram's operating assets to Huff as approved by the Court in the May 11, 2009 Sale Order, No. 08-38222-H1-7, Doc. 112, was subject to the terms and conditions of the earlier Asset Purchase Agreement between Ausam and SKH for the purchase of those oil and gas Properties by Ausam from SKH.  Ex. B, Doc. 44, ¶ 50.  In particular, SKH asserted that Huff could only take the oil and gas Properties conveyed under the Court's May 11, 2009 Sale Order, *see* Doc. 112, *subject to* SKH's (1) undivided 25% after-Payout interest in certain leases and assets as defined in the APA, (2) reversionary rights to a 25% interest in certain leases as defined in the APA, and (3) reversionary rights to 100% of all leases where no drilling had commenced by December 31, 2009 for a test well as defined in the APA.  Ex. B, Doc. 44, ¶ 50.  *See also* Adv. No. 09-03165, Doc. 38 at 4-5.

In other words, SKH asserted that, despite the Court's May 11, 2009 Sale Order, *SKH – not Huff –* owned a significant and valuable portion of the oil and gas Properties which Huff thought that it would acquire free and clear out of the debtors' Estates due to the Sale Order.  Ex. B, Doc. 44, ¶ 51.  *See also* No. 08-38222, Doc. 112.  Huff disagreed, and filed a *Counterclaim* seeking to establish that Huff took these Properties free and clear of any interests or encumbrances running in favor of SKH.  Ex. B, Doc. 44, ¶ 52.  *See also, e.g.,* Adv. No. 09-03165, Doc. 11, at 10-13.

9

**C.    Huff formulates its plan to use the Estates' claims against SKH to further Huff's own interests in Huff's own dispute with SKH.**

The Trustee alleges that in or near the May/June 2009 time period, Huff began to perceive that it could gain an advantage in Huff's lawsuit with SKH, Adv. No. 09-03165, if – on behalf of the Trustee – Huff were also in control of any claims that the debtor's Estates held against SKH.  Ex. B, Doc. 44, ¶ 53; *id.* ¶ 60.  ("Huff simply wanted to be in the driver's seat on the estates' claims to give Huff added leverage over SKH in Huff's own dispute that company in *SKH Management, L.P. v. The Huff Energy Fund, L.P.*, Adv. No. 09-3165.").[6]

The Trustee further alleges, "When cloaked and/or about to be cloaked in its authority to act for the Trustee – Huff communicated to SKH that Huff had the ability to, and would, use its authority to investigate, analyze and pursue the estates' claims against SKH to SKH's detriment – unless SKH agreed to concessions on the positions that SKH had taken in" the action against Huff.  Ex. B, Doc. 44, ¶ 62.

**D.    The November 1, 2009 settlement agreement between Huff and SKH in Adv. No. 09-3165 confirms that Huff settled the Estates' claims against SKH without providing any reports, updates, settlement offers, benefits or recoveries to the Estates.**

Disappointingly – despite repeated requests from Trustee's counsel[7] – Huff only provided the settlement agreement resolving the claims between Huff and SKH in *SKH Management, L.P. v. The Huff Energy Fund, L.P.*, Adv. No. 09-3165, *three years* after this settlement agreement became effective.  And Huff still has not produced to the

---

[6]  *See id.* ¶ 55 ("Huff had no intention of bringing the Debtors' estates' claims against SKH in a manner that would truly benefit the Debtors' estates.  ... Huff's intent was to get itself appointed to represent the estates, and then to use its status as Trustee's litigation counsel in a way that would benefit Huff in Huff's own dispute with SKH.")
[7]  Trustee's counsel first requested a copy of this settlement agreement in December 2010 – approximately two years before Huff first produced it.

Trustee the "executed side letter agreement" to this settlement agreement which Huff admits exists.  *See* Ex. D, at 3 (privilege entry for "executed side letter agreement to Agreement and Release.").

The settlement agreement only appeared to confirm the Trustee's fears.  According to this agreement[8] – prior to the Court's granting Motion for Authority to Assert Claims Against SKH for the Ausam and Noram Bankruptcy Estates – Huff had *already* agreed *to settle* the *Estates'* claims against SKH that the Trustee had authorized Huff to bring.

Specifically, the terms of the November 1, 2009 Huff/SKH settlement agreement in Adv. No. 09-3165 provide:

> 8.    In addition to the Adversary Proceeding and the Counterclaim, Huff has filed a motion in the bankruptcy cases in which it is seeking approval from the Bankruptcy Court to pursue claims *against some or all of SKH Funds on behalf of the [Ausam Energy Corp. and Noram Resources] bankruptcy estate (the "Estate's Claims").*

> 9.    All of the parties to this Agreement now wish to resolve the differences between them, including but not limited to ... the Adversary Proceeding, the Counterclaim and the *Estates' Claims* ... .

> ….

> 5.    <u>Release by the Huff Group</u>.  The Huff Group … hereby *irrevocably releases and forever discharges SKH Funds* from any and all actions, claims, demands, suits, interests, taxes, penalties, causes of action, rights, costs, expenses, attorneys' fees, losses, damages and liability, of whatever kind and nature, whether in law or in equity, that were asserted or could have been asserted *against SKH Funds* in connection with the Adversary Proceeding, the Counterclaim, *and Estate's Claims*  and any other claims or causes of action *against SKH Funds*... .

> 7.    <u>Dismissal of Litigation Claims With Prejudice</u>.  Within five (5) days of the Closing Date ... SKH Funds and Huff shall file a Joint Motion to

---

[8]   The Trustee here describes certain terms Huff/SKH Settlement Agreement only insofar as they affect, or purport to affect, *the Estates'* rights or claims against SKH.  The Trustee does not describe the effect that this Agreement has or may have on any rights or claims of SKH or Huff. The Trustee is prepared to provide the Court with a copy of this settlement agreement upon the Court's request.

> Dismiss the Adversary Proceeding, the Counterclaim, and any interest or effort related to the *Estate's Claims* with prejudice. ...

SKH/Huff Settlement Agreement for Adv. No. 09-3165 at 2, 15 (emphasis added). (Though phrased to be effective on November 1, 2009, the settlement agreement was not signed by SKH until December 30, 2009 – after this Court granted Huff's Motion for Authority to Assert Causes of Action against for the Estates.  *See* Ex. 3 to Ex. A.)

Huff thus used its authority from the Trustee to represent the Estates to settle the Estates' claims against SKH – without ever telling the Trustee.  Unbeknownst to the Trustee, Huff had agreed to settle the Estates' claims against SKH prior the Court formally approving Huff's representation of the Estates against SKH on December 28, 2009.  The Estates received no consideration from Huff or SKH as the result of Huff's having settled the Estates' claims against SKH in November 2009.

In other words, as the Trustee alleges, "Huff's plan worked.  Huff and SKH agreed to a settlement of SKH's claims and Huff's counterclaims in Adv. No. 09-03165 ... with SKH making material concessions in that settlement agreement versus the positions that SKH had previously asserted, *e.g.,* in Complaints that SKH filed in that action.  SKH also made concessions that SKH would not have made had Huff not used its status as Trustee's litigation counsel to gain added leverage over SKH in Adv. No. 09-03165."  Ex. B, Doc. 44, ¶ 63.  As the Trustee alleges, Huff *never intended* to pursue those claims in good faith for the benefit of the Estates.  Rather, Huff simply wanted to use the added leverage that it could gain over SKH from representing the Chapter 7 Trustee on the Estates' claims against SKH to achieve a more-favorable result for *Huff* in Huff's own action against SKH.  Ex. B, Doc. 44, 1st Am. Compl. ¶ 78.

Huff's attorney then filed an agreed order to dismiss with prejudice all claims and counterclaims asserted by the parties in *SKH Management LP v. The Huff Energy Fund LP,* Adv. No. 09-03165 on February 3, 2010. Ex. B, Doc. 44, ¶ 64.  *See also* Adv. No. 09-03165, Doc. 52.  This agreed order *nowhere* advised the Trustee or the Court that the SKH/Huff settlement agreement in Adv. No. 09-03165 stated that it settled and released the Estates' claims against SKH.

The Court granted the agreed motion on February 24, 2010, ending the lawsuit between SKH and Huff.  Ex. B, Doc. 44, ¶ 64.  *See also* No. 09-03165, Doc. 53.

**E.    Having used its status of representing the Trustee on the Estates' claims against SKH to obtain a better settlement for itself, Huff purported to "drop" the Estates' claims against SKH without explanation – and without advising the Trustee that Huff had earlier settled the Estates' claims as part of Huff's settlement agreement with SKH in Adv. No. 09-03165.**

On or about March 4, 2010, and after the dismissal of Adv. No. 09-3165, Trustee's general counsel spoke by telephone with Huff's counsel.  Ex. B, Doc. 44, ¶ 65.  Trustee's counsel inquired as to the status of Huff's pursuit of claims against SKH for the Estates.  *Id.  Without advising Trustee's counsel* that Huff had already entered an agreement to settle the Estates' Claims against SKH as part of Huff's own November 2009 settlement with SKF, Huff's counsel advised that Huff had resolved its own claims against SKH, and that Huff "was not going to do anything" with the Trustee's claims against SKH.  *Id.*

Huff, however, had already "done something" with the Estates' claims.  That is – prior to the Court's even granting Huff's Motion for Authority to Assert Causes against SKH on behalf of the Debtor's estates on December 28, 2009 – Huff had settled the Estates' claims against SKH effective November 1, 2009, as part of Huff's *own*

13

*settlement* with SKH in the Huff and SKH action, Adv. No. 09-03165.  (As noted, the Estates' received no consideration from Huff or SKH as a result of Huff's settling the Estates' claims against SKH.)

Having used its authority to bring theEstates' claims against SKH to achieve a benefit for itself in No. 09-03165 (*i.e.,* material concessions from SKH versus the positions that SKH would otherwise have taken), Huff then reneged on and walked away from its earlier agreement with the Trustee to provide "periodic reports ... of the status of the investigation and prosecution of the [estates'] Claims."  Ex. B, Doc. 44, ¶ 66. Further – having earlier told the Court and the Trustee on July 28, 2009 that Huff had conducted its "own legal analysis" of the Estates' claims against SKH, and its own "extensive and ongoing review" of those claims, and that Huff had "identified significant value that may yield substantial recovery" for the Estates – Huff simply abdicated on the responsibilities Huff had undertaken for the Estates with the Trustee's permission.

On April 1, 2010, Huff's attorney wrote the Trustee's counsel a one-sentence letter headed, "**Notice of Election Not to Prosecute Estate Claims Against SKH**." Ex. B, Doc. 44 ¶ 66.  This letter stated, without elaboration, "Please take notice that pursuant to paragraph 2 of the Order Granting The Huff Energy Fund LP's Motion for Authority to Assert Causes of Action on Behalf of the Debtors Estates [Docket No. 145] Huff has decided not to further investigate, commence or prosecute the Claims against SKH."  Ex. 4 to Ex. A (brackets original).  This April 2010 letter made no mention of the fact that Huff had earlier signed an agreement to settle the Estates' claims as part Huff's own November 1, 2009 settlement agreement with SKH in *SKH Management, L.P. v. The Huff Energy Fund, L.P*., Adv. No. 09-3165.

Despite its earlier, glowing statements to the Court and Trustee regarding the "significant value" and "substantial recovery" that Huff could obtain for debtors' Estates on the SKH claims, Huff purported to drop those claims. Despite earlier representations that it would provide "periodic reports" to the Trustee on the status of its investigation and prosecution of the claims, Huff never provided such periodic status reports to the Trustee. Ex. B, Doc. 44 ¶ 67. Huff never shared any results from its alleged "extensive and ongoing review" of the SKH claims with the Trustee. *Id.* Further, Huff never communicated any settlement overtures from SKH on the Debtors' estates' claims against SKH. *Id.* Finally, to the Trustee's knowledge, Huff never provided the Court with an *in camera* review of its analysis of the Estates' claims against SKH. *Id.* Instead, as part of its own settlement with SKH in Adv. No. 09-03165, Huff simply signed an agreement to settle the Estates' claims against SKH – *without* providing any recovery or benefit to the Estates.[9]

### F. The Trustee brings claims against Huff for its breaches of fiduciary duty and unjust enrichment.

The Trustee subsequently brought claims against Huff, alleging Huff breached its fiduciary duty and unjustly enriched itself. The Trustee alleges, *inter alia*:

> Among other things, Huff used its authority to act on behalf of the estates to negotiate a settlement or other agreement between SKH *and Huff.* This settlement benefitted – not Debtors' estates – but Huff instead. Huff then inaccurately and/or with an improper, self-interested purpose, advised the Trustee that Huff had determined that any estate claims against Huff were not worth Huff's pursuit. Huff made this statement without fulfilling the

---

[9]  The Trustee currently understands that Huff's position to be that – after Huff sent its April 1, 2010, "Notice of Election Not to Prosecute Estate Claims Against SKH," the Trustee was free to pursue the Estates' claims against SKH. This position ignores two clear facts. First, as Huff itself had already advised the Court, "the estates have no resources to pursue the Claims" against SKH. Ex. 2 to Ex. A, at 7. Second, from SKH's perspective, Huff had already settled the Estates' claims against SKH effective November 1, 2009. *See supra.*

duties it had committed to undertake in its Motion for Authority to Assert Causes of Action on behalf of the Debtors' Estates.  *See* No. 08-3822, Doc. 137.  Huff also failed and refused to provide the estates with material facts and information relating to, affecting or touching on the subject matter of its agency for the estates.  In fact, Huff did so despite the Trustee's express requests that Huff make the required disclosures.

Ex. B, Doc. 44, 1st Am. Compl. ¶ 78.

In light of these facts, the Trustee addresses Huff's refusal to withdraw the privileges that Huff asserts in response to Requests Nos. 1-21, 23-24 for documents and information created before December 28, 2009 (the date the Court granted Huff authority to bring claims against SKH on behalf of the estates of Ausam and Noram), and the privileges that Huff asserts in response to Request No. 22.

**III.   Analysis**

**A.   Huff's agency-in-fact for the Estates means Huff should withdraw privileges asserted in response to the Trustee's Requests Nos. 1-21, 23-24 for documents and information created before December 28, 2009**

The "gist" of Huff's argument for refusing to withdraw its asserted privileges for documents and information created prior to December 28, 2009 is that Huff did not formally become the Estates' agent – and thus did not owe the Trustee of duty of full disclosure on matters affecting its principal's interest – until the time that the Court actually granted Huff's Motion for Authority to Assert Causes Against SKH on Behalf of the Debtors' Estates on December 28, 2009.  The facts belie Huff's position.

As noted, prior to the time that Huff filed its July 28, 2009 Motion for Authority to Assert Causes Against SKH on Behalf of the Debtors' Estates, No. 08-38222, Doc. 137, *see* Ex. 2 to Ex. A, Huff and the Trustee had reached an agreement that Huff would act as the Estates' agent for bringing the Estates' claims against SKH.  This agreement is

evidenced by Huff's filing this Motion and Huff's statements in the Motion.   No. 08-38222, Doc. 137, at 6-7; *see also* Ex. 2 to Ex. A, at 6-7 ("The Trustee has consented to Huff's filing and prosecuting the Claims against SKH. ...   [T]he estates have no resources to pursue the Claims.")

Agency is a relationship that may be created by an express or implied contract. *See, e.g., GWTP Inv. LP v. SES Americom, Inc.*, 497 F.3d 478, 484 (5th Cir. 2007) ("'Under Texas law, agency is a legal relationship created by the express or implied agreement of the parties, or by operation of law, under which the agent is authorized to act for and on behalf of the principal ... .") (citation omitted); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* 491 F.Supp.2d 690, 706 (S.D. Tex. 2007) ("Agency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is authorized to act for the principal ... ."). As demonstrated by Huff's own statements to this Court, Huff and the Trustee reached an agreement for Huff to become the Estates' agent **before July 28, 2009** – when Huff's Motion for Authority to Assert Causes Against SKH on Behalf of the Debtors' Estates was first filed.  In fact, the Trustee and Huff reached this agreement well before this Motion for Authority was filed, as Huff would not have begun preparing the Motion until an agreement with the Trustee was reached.

This agency relationship is further confirmed by Huff's *holding itself out to others*, *i.e.,* SKH*, as the Estates'* agent for purpose of bringing the claims against SKH.  *See, e.g., Parrish v. National Football League,* 534 F. Supp. 2d 1081, 1098 (N.D. Cal. 2007) ("An implied agency relationship can arise when one party holds itself out to be acting as the agent for another.") (citing, *e.g.,* Restatement (Third) of Agency § 2.05 cmt. d

17

(2006)). As evidenced by the express language of the Huff/SKH Settlement Agreement which was phrased to be effective or about November 1, 2009 – approximately two (2) months before the December 28, 2009 Order granting Motion for Authority to Assert Causes Against SKH on Behalf of the Debtors' Estates – Huff was plainly representing itself to SKH as an agent with authority both to bring claims for the Estates, and to settle those claims, no later than the late summer and fall of 2009. *See supra* at 5-6, 11-12. Huff was also plainly representing itself to SKH as authorized to act on the Estates' behalves well before this November 1, 2009 Settlement Agreement between Huff and SKH was executed, because both Huff and SKH would have needed to negotiate, and communicate about, the settlement agreement's terms before this Agreement became effective.

As Huff's actions also make clear, in addition to Huff's having entered an express agreement with the Trustee prior to July 28, 2009 to act as the Estates' agent for pursuit of claims against SKH, Huff's conduct also gave rise to an implied agreement to act as the Estates' agent. *See Rufenacht v. Iowa Beef Processors, Inc.,* 656 F.2d 198, 203 n.3 (5th Cir. Unit A Sept. 1981) ("the existence of an agency relationship may be implied from the conduct of the parties.") (applying Texas law); *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex. 1992) ("An agency relationship does not depend upon the express appointment or assent by the principal; rather, it may be implied from the conduct of the parties."). *Cf. Span Enters. v. Wood,* 274 S.W.3d 854, 858 (Tex. App.—Houston [1[st] Dist.] 2008, no pet.) ("An attorney-client relationship is a contractual agreement that can be created by an express contract or implied from the actions of the parties.").

18

Because Huff was the Estates' agent beginning at some point prior to July 28, 2009, Huff then became the Estates' fiduciary. *See Johnson v. Brewer & Pritchard PC,* 73 S.W.3d 193, 200 (Tex. 2002) ("The agreement to act on behalf of the principal causes the agent to be a fiduciary ... . Among the agent's fiduciary duty ... is the duty to account for profits arising out of the employment ... the duty not to compete with the principal on his own account ... and the duty to deal fairly with the principal in all transactions between them."). And as a fiduciary, Huff owed the Estates the duty to suborn its own interest to those of the Estates, as well as the duties of scrupulous good faith, candor and transparency. *See, e.g., In re Allied Gaming Mgmt., Inc.*, 209 B.R. 201, 203 (Bankr. W.D. La. 1997); *Mullen v. Jones (In re Jones),* 445 B.R. 677, 706 (Bankr. N.D. Tex. 2011); *Annesley v. Tricentrol Oil Trading, Inc.*, 841 S.W.2d 908, 910 (Tex. App.—Houston [14th Dist] 1992, writ denied).

Just as importantly, Huff's fiduciary duties included "the general duty of *full disclosure* respecting matters affecting the principal's interests … ." *United Teachers Assoc. Ins. Co. v. MacKeen & Bailey, Inc.*, 99 F.3d 645, 650 (5th Cir. 1996) (emphasis added); *see also Chien v. Chen,* 759 S.W.2d 484, 495 (Tex. App.—Austin 1988, no writ) (fiduciary has duties "described as those of 'good faith and candor' by the fiduciary toward his principal ... . This includes a general duty of *full disclosure* respecting matters affecting[10] the principal's interest. ...") (citation omitted; emphasis original).

Despite its duty of full disclosure on matters affecting the Estates' interest, Huff has asserted self-serving privileges in response to the Trustee's First Requests for Production. Disturbingly, many entries on the Huff privilege log provided to the Trustee

---

[10] "Affect" is defined as to "produce an effect or change in." *E.g.,* http://dictionary.reference.com/browse/affect.

assert the attorney-client and/or work-product privileges for documents where Huff *admits it is discussing and handling the Ausam and Noram Estates' interests.  See* Ex. D, Huff Privilege Log at 2 (7/27/09 "Email forwarding emails with counsel regarding *potential claims on behalf of Estate against SKH")* (emphasis added); *id.* at 20 (11/3/09 & 11/4/09 "Emails reflecting advice of counsel regarding *settlement of suit with SKH and assertion of  Estate claims*") (emphasis added); *id.* at 12 (5/22/09 "Email chain reflecting legal advice regarding response to *SKH lawsuit and pursuit of the claims of the Estate*) (emphasis added); *id.* at 20 (11/12/09 "Email reflecting counsel's concerns regarding language in Agreement and Release"); *id.* at 4 (6/11/09 "Email string reflecting advice of counsel regarding information for purposes of *SKH/Huff suit and Ausam claims*") (emphasis added); *id.* at 8 (7/18/09 "Email reflecting legal analysis and advice regarding SKH warranties to *Ausam/Noram*");  *id.* at 9 (8/26/09 "Communications with counsel regarding *strategy related to SKH/Huff suit and Motion for Authority"* for Huff to assert claims for Estates); *id.* at 9 (7/28/09 "Emails with counsel regarding fact development to support Motion for Authority" for Huff to represent the Estates); *id.* at (12/23/09 "Email chain reflecting ... strategy with regard to hearing on Motion for Authority" for Huff to assert claims for Estates); *id.* at 19 (12/21/09 "Emails reflecting counsels' advice regarding hearing on Motion for Authority" to represent Estates "and Settlement" of Estates' claims).   These assertions of privilege are improper where *all* of these Requests at issues seek information *affecting the interests of Debtors Ausam and/or Noram, or the interests of their bankruptcy Estate.*[11]

---

[11]   Specifically, Huff asserted the attorney-client and work-product privileges in Response to Requests Nos. 1-7, 9-10, 13-16, 18-19.  *See* Ex. C, at 2-10.  *See* Ex. C at 2-3 (Request No. 1 requesting information showing "Huff's reasons for determining that the pursuant of claims against SKH on behalf of Debtors' Estates was no longer worthwhile"  and showing "Huff's

These entries are also relevant to the Trustee's claims of Huff's unjust enrichment, *i.e.*, that Huff cut a better for itself in divvying up with SKH the oil and gas properties formerly belonging to Ausam by using its authority to represent the Estates as leverage over SKH. *See, e.g.,* Ex. D at 9 (7/9/10 "Email string regarding analysis of stipulation of Interest/payout of Weatherford" well).

Huff has and had the duty to make full disclosure to the Trustee of the documents and other information sought in these Requests during the entire period of Huff's agency. *See, e.g., United Teachers,* 99 F.3d at 650. Huff cannot assert the attorney-client or work-product privileges to defeat this duty; as an agent and fiduciary of the Estates, Huff had (and has) the duty to place the Estates' interests above its own. *E.g., Plotkin v. Joekel,* 304 S.W.3d 455, 482 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (observing fiduciary must "place the [principal's] interest before his own.").

---

pursuit of 'the Claims'" for Debtors); *id.* at 3 (Request No. 2 seeking "documents showing 'misrepresentations by SKH to the Debtors concerning the Properties.'"); *id.* at 4 (Request No. 3 seeking documents showing "that as a 'result of Title Defects, the Debtors' business plan was seriously impaired'"); *id.* (Request No. 4 seeking "documents showing that 'Ausam overpaid SKH for the properties'"); *id.* (Request No. 5 seeking "documents that 'Ausam was insolvent, rendered insolvent … .'"); *id.* at 5 (Request No. 6 seeking "documents showing the 'Estates Hold Colorable Claims against SKH'"); *id.* (Request No. 7 seeking "documents showing Huff's actions to 'further investigate the identified causes of action … that may exist against SKH'" on behalf of the Estates); *id.* at 6 (Request No. 9 seeking "documents showing, containing or constituting Huff's 'own legal analysis of the breaches of representations and warranties'" that SKH made to Ausam); *id.* at 7 (Request No. 10 seeking "documents showing that Huff shared with the court … Huff's 'own legal analysis of the breaches of representations and warranties'" to Ausam by SKH); *id.* at 8 (Request No. 13 seeking "documents showing that 'Huff has identified significant value that may yield substantial recovery for the benefit of the estates'"); *id.* at 8 (Request No. 14 seeking "documents showing that '[s]ignificant value that should be recovered by the Estates could be lost if Huff is not authorized to assert and prosecute the Claims'" on behalf of the Estates); *id.* at 9 (Request No. 15 seeking documents "showing, containing or constituting Huff's 'extensive and ongoing review of the Claims'" belonging to the Estates); *id.* at 9 (Request No. 16 seeking "documents showing Huff's making 'procedural, strategic, substantive and logistical decisions concerning any aspect of the above-described claims'" to be brought on behalf of the Estates); *id.* at 10 (Request No. 18 seeking "documents showing Huff's reasons for deciding 'not to further investigate, commence, or prosecute the Claims against SKH'" on behalf of the Estates); *id.* (Request No. 19 seeking documents "showing or relating to Huff's reasons for deciding not to further investigate, commence, or prosecute the Claims against SKH on behalf of the Estates").

The Court should order Huff to withdraw the attorney-client, work-product or other privileges asserted in response to the Trustee's Requests, *e.g.,* Nos. 1-7, 9-10, 13-16, 18-19, and to produce all documents and information responsive to these Requests and in Huff's possession during the period of Huff's agency.

> **B.     Because Huff negotiated the settlement of the Estates' claims alongside of Huff's negotiating the settlement of its own claims and SKH's claims in Adv. No. 09-03165, Huff should be required to withdraw any objections made is response to Request No. 22.**

Huff initially asserted no privileges in response to Request No. 22 in the written responses that it served on the Trustee. *See* Ex. C, at 11. However, Huff's counsel has indicated that Huff now asserts the attorney-client and work-product privileges in response to Request No. 22. In other words, Huff states that for the information sought in Request No. 22, Huff claims privileges – not only *before* December 28, 2009, *i.e.*, the date the Court granted Huff's Motion for Authority to Assert Claims Against SKH for the Ausam and Noram Bankruptcy Estates – but also **after** December 28, 2009.

Request No. 22 seeks, "All documents showing, containing, constituting or relating to Huff's and/or SKH's discussions of, or negotiations for, the settlement of the Huff/SKH Lawsuit [Adv. No. 09-6315]." Ex. C, at 11. Huff's asserting privileges in response to this Request is improper.

As set out above, Huff became the Estates' agent well before July 28, 2009 and remained an agent at least until April 1, 2010, when Huff's attorney wrote the Trustee's counsel a one-sentence letter headed, "Notice of Election Not to Prosecute Estate Claims Against SKH." Ex. B, Doc. 44 ¶ 66. As the Estates agent, Huff had the "general duty of full disclosure respecting matters affecting the principal's interests." *United Teachers*, 99 F.3d at 650. As also set out above, the SKH/Huff Settlement Agreement for

Adv. No. 09-3165 shows at pages 2 and 15 that – as part of the *same discussions* where Huff was negotiating settling Huff's claims against SKH (as well as SKH's claims against Huff), in Adv. No. 09-3165 – Huff was also discussing and negotiating the settlement of *the Estates' claims* against SKH.  Accordingly, Huff's negotiations and discussions with SKH in the course of the settlement process in Adv. No. 09-6315 constitute a matter affecting the Estate's interests within the meaning of, *e.g., United Teachers.*

As the Estates' fiduciary, Huff must disclose matters affecting its principal's interest to the Trustee.  Huff must therefore disclose to the Trustee Huff's and/or SKH's discussions of, or negotiations for, the settlement of the Huff/SKH Lawsuit [Adv. No. 09-6315].  And as a fiduciary of the estates, Huff cannot assert the attorney-client or work-product privileges in response to Request No. 22, because Huff would thereby place its own interests before those of its principal, the Estates.  *See Plotkin,* 304 S.W.3d at 482.

The Court should order Huff to withdraw its attorney-client and work-product privileges asserted in response to the Trustee's Requests No. 22, and to produce all documents and information responsive to this Requests.

**V.    Conclusion and Prayer**

For the above reasons, the Court should order Huff to withdraw (1) all privileges that Huff now asserts in response to Requests Nos. 1-21 and 23-24 for documents and information created *prior to* December 28, 2009, and (2) all privileges it now asserts in response to Request No. 22 for documents and information created both before and after December 28, 2009.  Huff should be required to produce all documents and information sought in these Requests within fourteen (14) days of the hearing on this Motion.  The Trustee respectfully requests all other appropriate relief.

Respectfully submitted,

STRAWN PICKENS L.L.P.


By:    /s/ Andrew L. Pickens
        John R. Strawn, Jr., #19374100
        Andrew L. Pickens, #15971900
        Pennzoil Place, South Tower
        711 Louisiana, Suite 1850
        Houston, Texas 77002
        (713) 659-9600
        (713) 659-9601 Fax
        ATTORNEYS FOR PLAINTIFF,
        William G. West, Chapter 7 Trustee


## CERTIFICATE OF CONFERENCE

I state that I have conferred with counsel for Defendant The Huff Energy Fund L.P. Counsel for Defendant has indicated that Huff will not withdraw (1) any privileges asserted in response to the Trustee's First Requests for Production Nos. 1-21 and 23-24 for documents and information created *prior to* December 28, 2009, and (2) the privileges that Huff currently asserts in response to Trustee's First Requests for Production No. 22.   Huff's refusal to withdraw its assertion of these privileges necessitates the filing of this Motion.

        /s/ Andrew L. Pickens
        Andrew L. Pickens


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all interested parties of record in accordance with Fed. R. Civ. P. 5 by email, the Court's electronic service/ECF system, fax, certified mail, RRR, and/or courier receipted delivery on this the 19th  day of April 2013.

Tad Davidson
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas 77002

        /s/ Andrew L. Pickens
        Andrew L. Pickens