# EXHIBIT A

# TRUSTEE'S FIRST MOTION TO COMPEL

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **NORAM RESOURCES, INC. and** | § | **Case No. 08-38222-H1-7** |
| **AUSAM ENERGY CORPORATION,** | § | **(Chapter 7)** |
| | § | **(Jointly Administered)** |
| Debtors. | § | |
| **WILLIAM G. WEST,** | § | |
| **CHAPTER 7 TRUSTEE** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **Adversary No. 10-03703** |
| | § | |
| **WRH ENERGY PARTNERS, L.L.C.,** | § | |
| **HUFF ENERGY FUND, L.P.,** | § | |
| **W.H. AVE., LLC, and BARRY BORAK,** | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANTS THE HUFF ENERGY FUND, L.P. AND BARRY BORAK

TO:   Defendants THE HUFF ENERGY FUND, L.P, and BARRY BORAK by and through their attorney of record, Mr. Robert Jones, Patton Boggs LLP, 2000 McKinney Ave., Suite 1700, Dallas, TX 75201

Plaintiff William G. West, the Chapter 7 Trustee, serves these First Requests for

Production to Defendants THE HUFF ENERGY FUND, L.P. and BARRY BORAK under

FED. R. CIV. P. 34, made applicable to this proceeding by Fed. R. Bankr. P. 7034.

Defendants are requested to produce all documents and things listed in Ex. A

hereto. Defendants are required to produce such documents and things and to serve a

written response on the Trustee no later than thirty (30) days after receipt of these

Requests. *See* FED. R. CIV. P. 34. Defendants are to produce responsive records at

the offices of Strawn Pickens L.L.P., 711 Louisiana, Suite 1850, Houston, Texas 77002,

1

Ph: (713) 659-9600; Fax: (713) 659-9601. Copies of Defendants' responsive records may be provided instead of originals. All responsive records are to be produced either: (a) as they are kept in the ordinary course of business, or (b) organized and labeled to correspond to the categories of the Requests set out on Ex. A.   *See* FED. R. CIV. P. 34(b); Ex. A. Plaintiff specifically requests all electronic/magnetic data corresponding to the individual Requests in the format in which it is ordinarily maintained or in a commonly used or reasonably useable format.   *See* FED. R. CIV. P. 34(b). Plaintiff reserves all rights to supplement these Requests and to serve additional requests consistent with Rule 34.

Respectfully submitted,

STRAWN PICKENS L.L.P.

By: _____
John R. Strawn, Jr., #19374100
Andrew L. Pickens, #15971900
Pennzoil Place, South Tower
711 Louisiana, Suite 1850
Houston, Texas 77002
(713) 659-9600
(713) 659-9601 Fax
ATTORNEYS FOR TRUSTEE WILLIAM G. WEST

## CERTIFICATE OF SERVICE

I, Andrew L. Pickens, hereby certify that a true and correct copy of the foregoing instrument has been provided to all counsel or parties of record in accordance with FED. R. CIV. P. 5 by email, the Court's electronic service/ECF system, fax, certified mail, RRR, and/or courier receipted delivery on the 27th day of April 2012.

_____
Andrew L. Pickens

2

## DEFINITIONS AND INSTRUCTIONS

1.    These document requests shall be read liberally, so as to be inclusive rather than exclusive.

2.    The term "**document**" or "**documents**" is used here in its broadest sense and includes without limitation all written, reported, recorded, pictorial, or graphic matter, however produced or reproduced, in your possession, custody or control, including, but not limited to, all letters, telegrams, tele-copies, facsimiles, telexes, cables, telephone records, notations or like communications, invoices, ledgers, journals, calendar entries, emails, computer disks (hard or soft), magnetic media, spreadsheets, projections, predictions, electronic memory and other formal and informal books of record and account, minutes, bulletins, instructions, financial statements, item of information, photographs, reports, balance sheets, analysis and/or analyses, memoranda, notes, notebooks, drafts, materials, worksheets, contracts, agreements, contract briefs, contract summaries, computer data or records, tape recordings, transcriptions, intra-company drafts of the foregoing items, and any other forms of communication, and copies or reproductions of the foregoing upon which notations in writing have been made which do not appear on the originals.  Without limitation of the term *control* as used herein, a document is deemed to be in your control if you have the right or ability to secure or obtain the documents, or a copy thereof, from another person or entity having actual physical possession thereof, including but not limited to your current or former attorneys, agents, consultants, partners, employees, employers, contractors, vendors, business associates and/or other persons or entity.

3.    The term "**communication**" or "**communications**" is used here in its broadest sense, and includes without limitation, statements, discussions, conversations, letters, memoranda, emails, facsimiles, speeches, conferences, documents, meetings, remarks, questions, answers, notes, outlines, agendas, presentations, spreadsheets, recordings, computer or electronic transmissions, panel discussions, broadcasts, newsletters, updates, reports, analysis and/or analyses, explanations, summaries, materials, item of information, investor relations documents, and symposia of any kind, or any other transmittal of information or document whether written, oral, in person, by telephone or otherwise in your possession, custody or control.   The term further includes, without limitation, both communications and statements which are face-to-face and those which are transmitted by media such as email, fax, pdf, intercom, telephone, television, mail, express mail, hand-delivery, courier, radio, wire, electronic means, computer or any other means, and drafts of such communications or communication. Without limitation of the term *control* as used herein, a document is deemed to be in your control if you have the right to secure the documents, or a copy thereof, from another person having actual physical possession thereof, including but not limited to your current or former attorneys, agents, consultants, partners, employees, employers, contractors, vendors, business associates and/or other persons or entities.

3

4.      The term "**person**" or "**persons**" means a natural person, firm, partnership, association, organization, joint venture, company, limited liability company (LLC), limited partnership (L.P.), limited liability partnership (LLP), S or C corporation, other partnership, corporation or entity (whether public or private) recognized in any jurisdiction, and/or institute, club, trust, real estate investment trust, and/or or any form of business entity, organization or arrangement, for profit or non-profit, of any kind.

5.      "**Huff**" means THE HUFF ENERGY FUND, L.P., Defendant in the above-caption action, and Huff's agents, attorneys, directors, employees, and officers at any time; "**Huff**" **expressly includes**, but is not limited to, the **attorneys representing Huff** in the **Huff/SKH Lawsuit** and in **Motion for Authority,** including, e.g., W. Scott Locher, Hugh M. Ray and Timothy A. ("Tad") Davidson II.

6.      "**Trustee**" means William G. West, Chapter 7 Trustee for Debtors Noram Resources, Inc. and Ausam Energy Corporation in the above-captioned Chapter 7 bankruptcy case.

7.      The term "**third-party**" or "**third parties**" means persons (as defined above) other than Huff or Trustee.

8.      The terms "**referring to**" or "**relating to**" to any given subject, when used to describe a document, communication, or statement, means any document, communication, item of information or statement that constitutes, contains, describes, explains, embodies, reflects, identifies, states, refers to, relates to, addresses, discuses, analyzes, sets out, speaks to, condenses, explains, summarizes, and/or deals with, the subject, or is in any manner pertinent to that subject.

9.      The terms "**to show**" or "**showing**" mean to in any way make known, visible, evident, available, comprehensible, readable, and/or understandable, and/or to in any other way evince, convey, evidence, explain, interpret, relate and/or illustrate.

10.     "**Ausam**" means Ausam Energy Corporation, an Alberta, Canada Corporation and Noram Resources, Inc., its subsidiary and a Texas corporation. Both Ausam and Noram Resources are now debtors in the above-captioned Chapter 7 bankruptcy case .

11.     "**Debenture**" means a U.S. $25,000,000 9% Senior Secured Convertible Debenture issued on July 5, 2007 by Ausam to The Huff Energy Fund L.P., and payable on July 3, 2012.

12.     "**Ausam Assets**" means the assets or property of the bankruptcy estates of Ausam which the Huff Energy Fund L.P. purchased pursuant to the Bankruptcy Court Order entered on or about May 12, 2009, as Document 112 in In re Noram Resources, Inc. and Ausam Energy Corporation, Debtors, No. 08-38222, United States Bankruptcy

Court, Southern District of Texas (**"Sale Order,"** attached as Ex. 1) and/or entered in adversary actions brought in that Bankruptcy Case).

13.    **"APA"** means the Asset Purchase Agreement that Ausam entered on September 21, 2006 with SKH Management, L.P., SKH Management II, L.P., SKH Management III, LLC, SKH Energy Fund L.P., and Antares Exploration Fund, LP (collectively and/or individually **"SKH"**) to convey oil and gas properties owned by SKH (the **"Properties"**) to Ausam, and any amendments or successor provisions to the APA.

14.    **"SKH/Huff Lawsuit"** means an action styled *SKH Management, L.P., et. al. v. The Huff Energy Fund, L.P., and W.H. Ave. LLC*, Adversary No. 09-03165, (Bankruptcy Case No. 08-38222), U.S. Bankruptcy Court, Southern District of Texas.

15.    **"Borak"** means an individual, Barry Borak, who is a Defendant in the above-caption action, and who formerly served as a director and/or officer of Ausam; Borak may reside or may have previously resided at 64 Devonshire Rd., Waban, MA 02468.

16.    **"SKH Settlement"** means any agreement, contract or other understanding between SKH and Huff relating to or showing terms for resolution and/or dismissal of the claims and/or counterclaims brought in *SKH Management, L.P., et al. v. The Huff Energy Fund, L.P., and W.H. Ave. LLC*, Adversary No. 09-03165, (Bankruptcy Case No. 08-38222), U.S. Bankruptcy Court, Southern District of Texas, or terms for the resolution of any other claims, causes of action, disputes or disagreements between SKH and Huff relating to the Leases and/or Ausam Assets.

17.    **"Motion for Authority"** means The Huff Energy Fund LLP's Motion for Authority to Assert Causes of Action of Behalf of the Debtors' Estates filed on July 28, 2009 as Document 137 in *In re Noram Resources, Inc. and Ausam Energy Corp.*, No. 08-38222, Ch. 7, United States Bankruptcy Court for the Southern District of Texas, Houston Division, attached as Ex. 2.

18.    **"Order Granting Motion for Authority"** means the Order granting the Motion for Authority, signed on December 28, 2009, and filed as Document 145 in *In re Noram Resources, Inc. and Ausam Energy Corp.*, No. 08-38222, Ch. 7, United States Bankruptcy Court for the Southern District of Texas, Houston Division, attached as Ex. 3.

19.    **"Davidson April 1, 2010 Letter"** means the letter dated April 1, 2010 that Tad Davidson sent to David Jones re: Case No. 08-38222, Noram Resources, Inc. and Ausam Energy Corp., Debtor – Notice of Election not to Prosecute Estate Claims Against SKH, which advised the Trustee that "Huff has decided not to further investigate, commence, or prosecute the Claims against SKH," attached as Ex. 4.

5

20.   **"Agreed  Motion to Dismiss"** means the Agreed Motion to Dismiss Adversary Proceeding with Prejudice signed and filed on February 3, 2010, and filed as Document 52 in the SKH/Huff Lawsuit, attached as Ex. 5.

21.   **"Trustee's Jones June 28, 2011 Letter"** means the letter that Andrew L. Pickens, an attorney for the Trustee, sent to Robert W. Jones, an attorney for Huff, on June 28, 2011, attached as Ex. 6.

22.   **"Avery October 16, 2008 Letter"** means the letter signed by Mark Avery that Ausam sent to the attention of Mr. Bryan Bloom, at The Huff Energy Fund LP, 67 Park Place, Morristown, NJ 07960, regarding "Proposed amendments with respect to Ausam Energy Corporation and Noram Resources, Inc. 9% Senior Secured Convertible Debenture due July 3, 2010", attached as Ex. 7.

23.   **"Avery November 21, 2008 Letter"** means the letter signed by Mark Avery that Ausam sent to the attention of Mr. Bryan Bloom, at The Huff Energy Fund LP, 67 Park Place, 9th Fl., Morristown, NJ 07960, regarding "Status of Proposal to Clarify Provisions of the US$25,000,000 9% Senior Secured Convertible Debenture due July 3, 2010, dated July 3, 2007 ... ", attached as Ex. 8.

24.   **"Huff November 28, 2008 Letter"** means the letter signed by Bryan Bloom that WRH Energy Partners, L.L.C. sent to the attention of Mark Avery, President and Chief Executive Officer of Ausam, at 13103 FM 1960 West – Suite 210, Houston, Texas 77065, dated November 28, 2008, regarding "Debenture Issued to The Huff Energy Fund, L.P.", attached as Ex. 9.

25.   **"Der August 20, 2008 Letter"** means the letter signed by Michael Der that Bennett Jones LLP sent by via email and fax  to The Huff Energy Fund, L.P., dated August 20, 2008, regarding "Proposed Financing by Ausam Energy Corporation ('Ausam')," attached as Ex. 10.

26.   **"Jones February 25, 2010 Letter"** means the letter signed by David R. Jones and sent to six officers and/or directors of Ausam dated February 25, 2010 regarding "In re Noram Resources, Inc. and Ausam Energy Corporation, Jointly Administered under Case No. 08-38222-H4-7 in the United States Bankruptcy Court for the Southern District of Texas," attached as Ex. 11.

27.   **"Bennett Jones"** or **"Bennett Jones LLP"** means a law firm with an office located at 4500 Bankers Hall East, 855 – 2nd Street SW, Calgary, Alberta, Canada T2P 4K7, ph. 403.298.3100, and the attorneys and counselors at that firm.

28.   **"Payout"** means the recovery from production of the costs of drilling and equipping an oil or gas well.

29.   With respect to each document, communication and piece of information covered by these requests which You presently contend that You are not required to disclose because of any privilege or work-product doctrine,

    (a)   identify the date of, parties to, and general subject matter of such document, communication or information;

    (b)   state the nature of the privilege asserted (*e.g.*, attorney-client, self-incrimination, work-product, etc.);

    (c)   identify all facts, statutes, or rules which You contend support the assertion of such privilege;

    (d)   identify each person who was present when it was prepared, communicated or revealed in any manner, or who has seen such document or information or heard such communication; and,

    (e)   identify any document which refers to or discusses the contents of such document, communication, or information.

30.   Defendants Huff is further obligated to produce any and all documents which may be in its possession, custody, or control or which are in the possession, custody or control of its attorneys, subsidiaries, affiliates, affiliated funds, parent companies, employees, accountants, investigators, partners, business associates, agents, consultants, contractors, vendors or any persons now or previously acting on Huff's behalf or with Huff's authority.

31.   Each document request shall be construed independently and shall not be limited by any other document request.

32.   A request for a document shall be deemed to include a request for any and all cover or transmittal letters or sheets, certified mail/return receipt requested cards, exhibits, enclosures, email threads or attachments of any kind to the document, in addition to the document itself.

33.   Each request for production of documents herein shall be deemed continuing so as to require prompt supplemental responses, if the responding party obtains or discovers further documents called for herein between the time of responding to this request and the time of trial.

34.   Defendants Huff and Borak shall produce responsive documents as they have been kept in the usual course of business or shall organize and label them to correspond to the enumerated request of this demand.   If there is no document responsive to any particular category, Defendant Huffs and/or Borak shall so state in writing in response to the specific request.

7

35.     If any document responsive to this request once existed but has been destroyed or is otherwise not capable of being produced, including because the document is no longer in your possession or subject to your control, Defendants Huff and Borak shall furnish a list specifying each such document and setting forth the following information:

(a)     the date of document;

(b)     a description of the subject matter of the document; and

(c)     the name(s) and address(es) of each person who prepared, reviewed, viewed or has had possession, custody, or control of the document, and a statement of the circumstances under which the document was destroyed and discarded or otherwise what disposition was made of it, and why such document is not capable of being produced.

36.     The words "**and**", "**or**" and **"and/or"** shall be construed conjunctively or disjunctively as necessary to make the request inclusive and broad rather than exclusive and narrow, *i.e.*, construed to bring within the scope of the request all responses, documents and or communications of any type that otherwise might be construed to be outside the scope of the request.

37.     The singular of any word includes the plural and vice versa; the masculine includes the feminine and vice versa (except where the context may otherwise clearly dictate).

38.     Any undefined terms or words used in these Requests shall be given their broadest usual and commonly-understood meanings.

39.     Unless otherwise stated, the relevant timeframe for these requests and the documents and communications sought therein shall be from January 1, 2007 through the date of these requests. Without limitation of the term **control** as used herein, a document is deemed to be in your control if you have the right or ability to secure the documents, or a copy thereof, from another person or entity having actual physical possession thereof, including but not limited to your current or former attorneys, agents, consultants, partners, employees, employers, contractors, vendors, business associates or any other persons or entities.

40.     To any extent a request is interpreted by Huff or Borak to seek information that is confidential by reason of agreement or confidential for any reason, Huff and Borak are directed to inquire of the Trustee as to his willingness to enter appropriate protective orders in the form typically employed in the Southern District of Texas. The Trustee hereby advises and informs Huff and Borak of his willingness to enter any appropriate and reasonable protective orders in a form typically employed in the Southern District of Texas.

8

## EXHIBIT A – First Requests for Production

Huff is requested to produce the following:

1.   All documents and/or communications described in the Trustee's Jones June 28, 2011 Letter, including but not limited to:

   - Any and all work product, analyses or reports on the status of investigations that Huff or its attorneys created after December 28, 2009, referring to, relating to or showing in any way Huff's reasons for determining that the pursuit of claims against SKH on behalf of the Debtor's Estates was no longer worthwhile, whether from Huff's perspective or the perspective of the Estates;

   - Any communications or documents, including but not limited to letters, faxes, emails, memoranda or like documents, made between Huff and SKH after December 28, 2009, which refer to, relate to or show in any Huff's pursuit of "the Claims" as defined in Motion for Authority; and

   - Any agreement, contract or other understanding between SKH and Huff relating to or in any way showing terms for resolution and/or dismissal of the claims and/or counter-claims brought in *SKH Management, L.P., et al v. Huff Energy Fund LP and W.H. Ave., LLC,* Adversary No. 09-03165, (Bankruptcy case No. 08-38222), U.S. Bankruptcy Court Southern District of Texas. (The Trustee will enter a standard protective order to the extent needed to protect confidential portions of this agreement.)

2.   All documents showing the "misrepresentations by SKH to the Debtors concerning the Properties" as described at page 3 of the Motion for Authority.

3.   All documents showing that as a "result of the Title Defects, the Debtors' business plan was seriously impaired," as stated at page 3 of the Motion for Authority.

4.   All documents showing that "Ausam overpaid SKH for the Properties" and/or "Ausam did not receive reasonably equivalent value in return for its payment of the purchase price for the Properties," as stated at page 3 of the Motion for Authority.

5.   All documents showing that "Ausam was insolvent, rendered insolvent, had unreasonably small capital and/or could not pay its debts as they became due as result [of] making payment of the purchase price to SKH," as stated at page 3 of the Motion for Authority.

6.   All documents showing the "Estates Hold Colorable Claims against SKH" and/or that the Debtors' estates had claims against SKH for "recovery of fraudulent transfers/conveyances" as stated at pages 5 and 6 of the Motion for Authority.

7.   All documents showing Huff's actions to "further investigate the identified causes of action and any other causes of action that may exist against SKH," as stated at page 6 of the Motion for Authority.

8.   Copies of all "Rule 2004 examinations (or depositions pursuant to Part VII of the Federal Rule[s] of Bankruptcy Procedure" that Huff took pursuant to its representations at page 6 of the Motion for Authority.

9.   All documents showing, containing or constituting Huff's "own legal analysis of the breaches of representations and warranties" as described at page 6, footnote 2, of the Motion for Authority.

10.   All documents showing that Huff shared with the Court, in camera or otherwise, Huff's "own legal analysis of the breaches of representations and warranties" as Huff represented it would do at page 6, footnote 2, of the Motion for Authority.

11.   All "settlement offers" that Huff received from SKH before, during and after the time that Huff was representing the Trustee as contemplated at page 7 Motion for Authority.

12.   All "periodic reports from Huff of the status of the investigation and prosecution of the Claims" as described at page 7 of the Motion for Authority.

13.   All documents showing that "Huff has identified significant value that may yield substantial recovery for the benefit of the estates" as stated at page 7 of the Motion for Authority.

14.   All documents showing that "[s]ignificant value that should be recovered by the estates could be lost if Huff is not authorized to assert and prosecute the Claims" as stated at page 7 of the Motion for Authority.

15.   All documents showing, containing or constituting Huff's "extensive and ongoing review of the Claims" as referred to at page 8 of the Motion for Authority.

16.   All documents showing Huff's making "procedural, strategic, substantive and logistical decisions concerning any aspect of the above-described Claims," as set out at page 1 of the Order Granting Motion for Authority.

17.   All documents showing Huff's providing "any settlement offers and periodic updates to the Chapter 7 Trustee" as stated at page 2 of the Order Granting Motion for Authority.

18.   All communications and/or documents showing Huff's reasons for deciding "not to further investigate, commence, or prosecute the Claims against SKH," as stated in the Davidson April 1, 2010 Letter.

19.      All communications and/or documents showing or relating to Huff's reasons for deciding not to further investigate, commence, or prosecute the Claims against SKH," as related in the Davidson April 1, 2010 Letter.

20.      All communications between Huff and SKH relating to the Huff/SKH Lawsuit.

21.      All communications between Huff and SKH relating to settlement of the Huff/SKH Lawsuit.

22.      All documents showing, containing, constituting or relating to Huff's and/or SKH's discussions of, or negotiations for, the settlement of the Huff/SKH Lawsuit.

23.      The SKH Settlement, and the "Settlement Agreement and Release" referred to at page 1 of the Agreed Motion to Dismiss, including all drafts of the SKH Settlement and Settlement Agreement and Release.

24.      All communications with SKH relating to Payouts, performance or production for oil or gas wells drilled on the Leases since September 21, 2006.

25.      All communications between Huff and Borak relating to the Debenture, the Properties or the Ausam Assets.

26.      All communications between Huff and Borak relating to default or any events of default under the Debenture.

27.      All communications between Bennett Jones LLP and Huff or Borak relating to the Debenture, default or events of default under the Debenture, or the financing referenced in the Der August 20, 2008, Letter.

28.      All communications between that Huff or Borak made in response to the Der August 20, 2008, Letter.

29.      All documents showing the due diligence that Huff conducted for Ausam and/or the Properties, prior to lending the $25 million principal amount of the Debenture to Ausam, including documents containing, constituting or showing any summaries or executive summaries, condensations, or conclusions for the due diligence.

30.      All documents showing communications which Huff made to investors, shareholders, unit holders, partners or owners of any type in the Huff Energy Fund LP relating to the Debenture or to Huff's loaning the amount evidenced by the Debenture to Ausam.

31.      All documents showing communications which Huff made to investors, shareholders, unit holders, partners or owners in the Huff Energy Fund LP relating to Huff's due diligence for Ausam and/or the Properties.

11

32.    All documents showing Huff's analysis of, or reasons for, lending the amount evidenced by the Debenture to Ausam, including documents containing, constituting or showing any summaries or executive summaries, condensations, or conclusions of those reasons.

33.    All documents showing Huff's appraisal or analysis of, or conclusions as to, the value of the Collateral defined at page 2 of the Debenture.

34.    All communications Huff made to investors, shareholders, unit holders, partners or owners of any type in the Huff Energy Fund LP about, or relating to, the Sale Order or Ausam Assets.

35.    All communications showing the Payout, performance or production of any oil or gas wells drilled on the Ausam Assets or Properties, including documents containing, constituting or showing any summaries or executive summaries, condensations, or conclusions of those reasons.

36.    All communications Huff made to investors, shareholders, unit holders, partners or owners of any type in the Huff Energy Fund LP about, or relating to, the Payout, performance or production of any oil or gas wells drilled on the Ausam Assets or Properties.

37.    All communications Borak made, or which Huff made, to any managers and/or directors of Ausam.

38.    All communications internal to Huff, or which Borak read or saw, relating to Ausam's ability to repay the loan evidence by the Debenture.

39.    All communications internal to Huff, or which Borak read or saw, relating to Payout, performance or production of any oil or gas wells drilled on the Ausam Assets or Properties, including documents containing, constituting or showing any summaries or executive summaries, condensations, or conclusions of those reasons.

40.    All documents or communications relating to, or discussing the contents of, the Avery October 16, 2008 Letter.

41.    All documents or communications which Borak read or saw relating to the Avery October 16, 2008 Letter.

42.    All communications which Huff or Borak made relating to, or in responding to, the Avery October 16, 2008 Letter.

43.    All documents or communications relating to, or discussing the contents of, the Avery November 21, 2008 Letter.

44.   All documents or communications which Borak read or saw relating to the Avery November 21, 2008 Letter.

45.   All communications which Huff or Borak made relating to, or in responding to, the Avery November 21, 2008 Letter.

46.   All documents or communications relating to, or discussing the contents of, the Huff November 28, 2008 Letter.

47.   All documents or communications which Borak read or saw relating to the Huff November 28, 2008 Letter.

48.   All drafts of the Huff November 28, 2008 Letter.

49.   All documents or communications which Borak read or saw relating to Ausam, the Ausam Assets, or the Properties.

50.   All communications which Huff or Borak made relating to, or in responding to, the Der August 20, 2008 Letter.

51.   All documents or communications which Borak read or saw relating to the Der August 20, 2008 Letter.

52.   All documents or communications relating to, or discussing the contents of, the Huff November 28, 2008 Letter.

53.   All communications that Huff made in responding to any letters from Ausam or Bennett Jones LLP serving as notice under article 6.14 of the Debenture, or as notice of any proposed financing by Ausam.

54.   All documents or communications that Borak read or saw relating to notice under article 6.14 of the Debenture, or to notice of any proposed financing by Ausam.

55.   All communications that Huff made in responding to any letters from Ausam or Bennett Jones LLP or seeking a response from Huff regarding financings by Ausam.

56.   All communications relating to Ausam, the Ausam Assets, the Properties, or financings or proposed financings by Ausam that Huff sent to or received from Bennett Jones LLP.

57.   All documents, including electronically stored documents, initially belonging to Ausam that Huff obtained as a result of purchasing the Ausam Assets or as a result of the Sale Order, including documents stored or retained on computers of any type.

13

58. All documents responsive to First Request for Production No. in their native format.

59. All documents or communications that Borak or Huff read or saw showing: (a) all the oil or gas wells drilled on the Properties after September 21, 2006, (b) the volumes of oil, gas or hydrocarbon produced from each well drilled on the Properties after September 21, 2006 since the date that production first began, (c) calculations of payout for each well drilled on the Properties since September 21, 2006, and/or (d) Huff's total net revenue interest received from May 12, 2009 (*i.e.*, the date that Huff purchased the Ausam Assets) up to the present date on oil or gas wells drilled on the Properties since May 12, 2009.

60. All documents or communications reviewed or relied upon by any testifying expert witness retained by Huff or by Borak in the above-captioned adversary action.

61. All policies of insurance covering claims made against Huff or Borak in the above-captioned adversary action.

62. All indemnity agreements between Huff and Borak relating to claims in the above-captioned adversary action.

63. All recordings of telephone conversations or other conversations between Huff and Ausam or Ausam's directors or officers, or between Borak and Ausam or Ausam's directors or officers.

64. All documents relating to or showing telephone conversations or other conversations between Huff and Ausam or Ausam's directors or officers, or between Borak and Ausam or Ausam's directors or officers .

65. All documents relating to or showing meetings between Huff and Ausam or Ausam's directors or officers, or Borak and Ausam or Ausam's directors or officers .

66. All documents prepared, read or seen by Huff or Borak relating to June 2008 telephone conversations between Ed Dartley and Mark Avery or other Ausam directors or officers.

66. All documents prepared, read or seen by Huff or Borak relating October 2008 telephone conversations between Bryan Bloom and Mark Avery or other Ausam directors, including specifically, but not exclusively, conversations on October 7, 2008.

67. The letter that Huff sent to Ausam on or about December 15, 2008 requesting that Ausam deed, convey or transfer certain oil and gas properties to Huff.

14

68. All documents or communications relating to, or discussing the contents of, the letter that Huff sent to Ausam on or about December 15, 2008

69. All drafts of the letter that Huff sent to Ausam on or about December 15, 2008.

70. All communications that Huff or Borak had with American Home Assurance Company or American International Group, Inc. relating to Executive and Organization Liability Insurance Policy No. 340 95 27, or relating to coverage for any Ausam director or officer, including Borak, under this Policy, including but not limited to any reservations of rights letters.

71. Any analysis, estimation, calculation or computation of damages caused to Ausam by the Ausam directors' and/or officers' (1) failure to perform the necessary due diligence for the Acquisition Agreement for the Leases, (2) causing Ausam and/or Noram to acquire a 12.5% working interest in the Rice University A-393 IH well without proper authorization, and/or (3) payment of oversized bonuses to Ausam officers, directors and employees, as described in the Jones February 25, 2010 Letter.

# EXHIBIT 1

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANTS THE HUFF ENERGY FUND, L.P. AND BARRY BORAK**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
05/11/2009

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **NORAM RESOURCES, INC. and** | § | **Case No. 08-38222-H1-7** |
| **AUSAM ENERGY CORPORATION,** | § | **(Chapter 7)** |
| | § | **(Jointly Administered)** |
| Debtors. | § | |

### ORDER GRANTING TRUSTEE'S EXPEDITED MOTION
### FOR APPROVAL OF SALE OF ASSETS FREE AND CLEAR OF LIENS
### UNDER 11 U.S.C. § 363(F) AND TO ASSUME AND ASSIGN
### CERTAIN EXECUTORY CONTRACTS UNDER 11 U.S.C. § 365
[Docket No. 92]

The Court has considered the Trustee's Expedited Motion for Approval of Sale of Assets Free and Clear of Liens under 11 U.S.C. § 363(f) and to Assume and Assign Certain Executory Contracts under 11 U.S.C. § 365 and the objections filed thereto. The Court finds that (i) it has jurisdiction over the Trustee's motion pursuant to 28 U.S.C. § 1334; (ii) the Trustee and the Purchaser have negotiated and undertaken the transactions contemplated herein at arm's length in good faith within the meaning of 11 U.S.C. § 363(m) and the Purchaser is entitled to the protections of 11 U.S.C. § 363(m); (iii) the proposed sale of assets and assignment of executory contracts is in the best interest of the estates and their creditors; (iv) adequate notice of the proposed sale, the proposed assignment and the hearing to consider the Trustee's motion has been given to all creditors and parties-in-interest; (v) the executory contracts set forth on **Exhibit 3** should be assumed and assigned; and (vi) all of the estates' right, title and interest in and to the assets that are set forth on **Exhibit 1** and **Exhibit 2** should be conveyed free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f) except as specifically set forth in this order. Accordingly, it is

**ORDERED THAT:**

1. The Trustee's Expedited Motion for Approval of Sale of Assets Free and Clear of Liens under 11 U.S.C. § 363(f) and to Assume and Assign Certain Executory Contracts under 11 U.S.C. § 365 is **GRANTED** as set forth herein.

2. The Trustee is authorized to sell all of the estates' right, title and interest in the following oil and gas properties, which properties include but are not limited to the oil and gas leasehold interests listed on **Exhibit 1** (the "O&G Assets") to The Huff Energy Fund, L.P. ("Huff"):

| Prospects | State | County/Parish |
|---|---|---|
| T-Patch 1, 2, 3 4 | Texas | Starr |
| Weathorford | Texas | Liberty |

**EXHIBIT**

1

| Prospects | State | County/Parish |
|---|---|---|
| Nolte Marsh | Texas | Liberty |
| Wiseman | Texas | Liberty |
| Peach Creek | Texas | Wharton |
| N. Constitution | Texas | Jefferson |
| Oak Grove | Louisiana | Bienville |
| Maben | Mississippi | Oktibbeha |
| Iola | Texas | Grimes |
| Z Sand | Texas | Duval |
| Rosita | Texas | Duval |
| Hoffman Creek | Texas | Duval |
| Bideman Gully | Louisiana | Acadia |
| S. Womack Hill | Alabama | Clarke |
| Saudi | Mississippi | Perry |
| Plantation | Mississippi | Lowndes |
| Sugar Grove | Arkansas | Logan |
| Vision Chalk Prospect | Texas | Tyler |
| Fisher Lindsey (Quatre) | Louisiana | Calsieu |

The O&G Assets shall include, without limitation, all related data files, seismic data, plats and computers related to the O&G Assets as well as all of the estates' right, title and interest in all wells, equipment, pipe, pipelines and other personal property located on any of the leases in any of the prospects or used or installed for the benefit of a listed prospect, to the extent of the estates' right, title and interest therein and rights under any insurance policies related to the estates' right, title and interest in the O&G Assets. In addition, Huff will receive all unpaid proceeds of production at the time of closing attributable to the estates' interest in the O&G Assets, save and except that with respect to the Weatherford prospect, such unpaid proceeds of production will be retained and paid to Ballard until such time as the cure cost on such prospect set forth in **Exhibit 3** has been paid in full.

3.      Nothing in this Order shall adjudicate the claims and defenses that are now, or may later become, the subject of, and more particularly described in, *SKH Management, L.P. et al v. William G. West, Chapter 7 Trustee for Noram Resources, Inc. and Ausam Energy Corporation, et al.* (In re Noram Resources, Inc. and Ausam Energy Corporation, Case No. 08-38222), Adversary No. 09-03165, pending in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division (the "Adversary"). For purposes of this Order, SKH refers to SKH Management, LP., SKH Management II, L.P.; SKH Management III, L.L.C.; SKH Energy Fund, L.P.; and Antares Exploration Fund. The Bankruptcy Court shall retain jurisdiction to the maximum extent allowed by law to resolve this litigation. Both SKH and Huff agree to the Bankruptcy Court's entry of a final judgment in the Adversary on the issues presented or to be presented therein, including issues regarding ownership of production proceeds. SKH and Huff have agreed to request an expedited trial setting to resolve the issues in the Adversary.

4.      The Trustee is further authorized to sell all of the estates' right, title and interest in the furniture, equipment and computers as listed on **Exhibit 2**; the 18,000,000 shares of Bounty Oil and Gas NL (the "Bounty Stock"); and the prepaid software maintenance contracts on the

following software (i) Seismic Micro Tec.; (ii) Drilling Info. Inv. 112217 and (iii) Technical Toolbox to Huff. The estates' right, title and interest in the personal property on **Exhibit 2**, the Bounty Stock and the identified software maintenance contracts are hereafter referred to as the "Personal Property Assets."

5.     In exchange for all of the estates' right, title and interest in the O&G Assets and the Personal Property Assets, Huff shall (i) pay the Trustee the sum of $200,000 cash at Closing; (ii) reduce its claim against the estates by $12,550,000; and (iii) waive any right to a distribution from the estates on account of the cash payment or any other estate assets, save and except any litigation claims of any nature that are owned by the estates and any insurance proceeds that may cover same. Closing shall occur no later than the fifth business day after the entry date of this Order.

6.     Nothing herein will affect Huff's rights against any third parties or guarantors or its right to a distribution from the estates on account of any recovery from a litigation claim or to credit bid its remaining secured claim, if any, on other unknown estate assets that may be subject to Huff's liens.

7.     Subject only to a final determination of the claims and defenses asserted by, or to be asserted by SKH and Huff in the Adversary, the sale of the O&G Assets and the Personal Property Assets to Huff shall be made free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363(f). Except for the foregoing, the O&G Assets and the Personal Property Assets shall be conveyed to Huff "as is, where is" with no representation or warranty of any kind.

8.     The executory contracts set forth on **Exhibit 3** are hereby assumed by the Trustee and assigned free and clear of liens, claims, interests and encumbrances at Closing to Huff pursuant to 11 U.S.C. §§ 363(f) and 365. The cure costs to be paid by Huff are set forth on **Exhibit 3** and are binding on all parties. Upon the entry date of this Order, Huff shall be liable for all obligations under the executory contracts set forth on **Exhibit 3** and the estates shall have no further obligations whatsoever. The assumption of the executory contracts by Huff is expressly subject to all contractual and statutory rights and remedies regarding such executory contracts. All other executory contracts and unexpired leases to which one or more of the Debtors is a party are rejected pursuant to 11 U.S.C. § 365, save and except an oral agreement between Noram and Square Mile related to sharing of costs/revenue of lease that were re-leased by Square Mile at the N. Constitution prospect. All proofs of claim for damages arising as a result of such rejection shall be filed within 30 days of the entry date of this order.

9.     Upon the consummation of the sale and except with respect to the resolution of SKH's claims as specifically set forth above in paragraph 3, all persons holding any lien, claim, interest or encumbrance against or in the Debtor or the O&G Assets and/or the Personal Property Assets of any kind or nature whatsoever, including all taxing authorities, are prohibited from asserting, prosecuting or otherwise pursuing such lien, claim, interest or encumbrance against Huff or the assets purchased hereunder.

10.     The Trustee is authorized to pay from the sale proceeds any recording fees, certificate transfer fees and other miscellaneous expenses/charges incident to closing the sale.

The Trustee is authorized to execute all documents necessary to effectuate the sale, including but not limited to a bill of sale and/or one or more recordable assignments conveying the estates' interest in the assets purchased hereunder.

11. Upon the Trustee's or Huff's request, any and all holders of any liens or encumbrances filed of public record or arising by statute shall execute a release of such liens and encumbrances as, but only to the extent that, they affect the O&G Assets and/or the Personal Property Assets. If any person or entity that has filed financing statements, mortgages, mechanics liens, abstracts, *lis pendens* or other documents evidencing a lien or encumbrance in any of the O&G Assets and/or the Personal Property Assets shall not have delivered to the Trustee prior to the closing of the sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such liens, claims, interests or encumbrances, the filing or recording of a certified copy of this Order shall constitute conclusive evidence of the release of all liens and encumbrances against the O&G Assets and/or the Personal Property Assets. Provided, however, the provisions of this Paragraph 11 shall not apply to SKH unless otherwise ordered by the Court in connection with the adjudication of the Adversary.

12. To the extent provided under Title 11 and the applicable provisions of Title 28, the Court retains exclusive jurisdiction to interpret and enforce the provisions of this Order.

13. The transactions contemplated by this Order are undertaken by Huff in good faith, as that term is used in 11 U.S.C. § 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale to Huff, unless such authorization is duly stayed pending such appeal prior to the closing. Huff is entitled to all of the protections afforded by 11 U.S.C. § 363(m).

14. The Court has determined that the stay imposed by Bankruptcy Rule 6004(h) shall not apply to the transactions contemplated by this order, for good cause shown, and this Order shall be effective and enforceable immediately upon entry.

SIGNED this **11** day of _____**May**_____, 2009.

THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

**AGREED:**

Counsel for Huff

Counsel for the Trustee

Counsel for SKH

Counsel for Ballard Exploration Company, Inc.

Counsel for Vision Operating Company LLC

# EXHIBIT 2

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANTS THE HUFF ENERGY FUND, L.P. AND BARRY BORAK**

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:                              §
                                    §    CASE NO. 08-38222
NORAM RESOURCES, INC., and          §
                                    §    Chapter 7
AUSAM ENERGY CORPORATION,           §
                                    §    (Jointly Administered)
          Debtors.                  §

## THE HUFF ENERGY FUND L.P.'S MOTION FOR AUTHORITY TO ASSERT CAUSES OF ACTION ON BEHALF OF THE DEBTORS' ESTATES

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The Huff Energy Fund, L.P. ("Huff") files its Motion for Authority to Assert Causes of

Action on Behalf of the Debtors' Estates (the "Motion"), and respectfully states as follows:



EXHIBIT
2

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

A.   **SKH's Sells Deficient Oil and Gas Assets to Ausam**

2.   SKH Management, L.P. ("SKH Management"), SKH Management II, L.P. ("SKH II"), SKH Management III, L.L.C. ("SKH III"), SKH Energy Fund, L.P. ("SKH Fund"), and Antares Exploration Fund, L.P. ("Antares") (collectively "SKH") and Ausam Energy Corporation ("Ausam") executed an Asset Purchase Agreement dated September 21, 2006 ("APA"), under which SKH agreed to convey to Ausam all of SKH' rights, title and interests in and to certain oil and gas leases and certain associated personal property (together, the "Properties"). Under the APA, Ausam was allowed to assign its interest in the Properties to Noram Resources, Inc. ("Noram") and SKH would transfer title to the assets into the name of Noram directly.

3.   Noram was (and still is) a wholly-owned subsidiary of Ausam.

4.   On various dates between January 27, 2007 and July 30, 2008 (the "Closings"), SKH executed and delivered Conveyances to Noram conveying to Noram all of their rights, title, and interests to hundreds of oil and gas leases (the "Leases") identified in Exhibits A to the Conveyances. The Leases cover acreage over 16 development prospects (the "Prospects") in five states.

5.   Article 4 of the APA contains certain representations and warranties of SKH in favor of Ausam related to the Properties. A copy of the APA is attached as **Exhibit "A"**.

6.    Upon information and belief, SKH represented to Ausam that the Prospects were "ready to drill." After the Closings, it quickly became apparent that the Prospects had serious title defects and other problems and that they were far from drill ready. There were numerous title defects related to the Properties and misrepresentations by SKH to the Debtors concerning the Properties (the "Title Defects"). As a result of the Title Defects, the Debtors' business plan was seriously impaired.    Subsequent to the Closings, the Debtors, upon discovering the Title Defects, directed their prepetition counsel, Bennett Jones LLP, to send a letter to SKH listing the affected Prospects and the associated Title Defects. *See* attached **Exhibit "B."** Huff believes that there may be additional Title Defects and problems with the Properties that are not listed on Exhibit A and Huff reserves its rights regarding any additional Title Defects or claims.

7.    Ausam paid SKH cash in the amount of $13,419,558 and 63,417,143 common shares in Ausam for the Properties (with the value of the common shares at the time of the transaction deemed to be CA $0.35 per share). Upon information and belief, Ausam overpaid SKH for the Properties.    Accordingly, Ausam did not receive reasonably equivalent value in return for its payment of the purchase price for the Properties. Upon information and belief, Ausam was insolvent, rendered insolvent, had unreasonably small capital and/or could not pay its debts as they became due as a result making payment of the purchase price to SKH. Ausam and Noram had existing creditors at the time of the purchase of the Properties and have present creditors as of the Petition Date.

**B.    Ausam and Noram File Bankruptcy**

8.    Ausam and Noram (the "Debtors") filed voluntary chapter 11 cases on December 30, 2008 (the "Petition Date"). Ausam is the parent company of Noram. The cases were jointly administered by order entered January 7, 2009. The cases were converted to chapter 7 cases by

HOU:2943289.3

order entered February 26, 2009. William West is the duly appointed chapter 7 trustee (the "Trustee") in each case.

9.      As of the Petition Date, Ausam and Noram were indebted to Huff in the amount of at least $29,172,859.07 (the "Huff Indebtedness").[1] The Huff Indebtedness is secured by a lien on the Debtors' oil and gas assets as well as a blanket lien on all personalty owned by the Debtors.

10.     On April 14, 2009, the Trustee filed a motion seeking this Court's approval to sell substantially all of the Debtors' assets to Huff free and clear of liens, claims, interests and encumbrances under 11 U.S.C. § 363(f). Huff "credit bid" $12,550,000 of its secured claim and paid $200,000 cash for the Debtors' assets. On May 11, 2009, this Court entered an Order Granting Trustee's Sale Motion, approving sale of Debtors' assets to Huff free and clear of all liens, claims and encumbrances.

11.     Huff still has significant claims against the Debtors. Huff requested that the Trustee consent to Huff filing suit on and prosecution of the estate causes of action against SKH (the "Claims"). The Trustee consented.

## RELIEF REQUESTED

12.     Pursuant to this Motion, Huff is seeking leave from this Court to file suit on and prosecute the Claims.

## AUTHORITY

13.     In *Louisiana World Exposition, Inc. v. Federal Ins., Co. (In re Louisiana World Exposition, Inc.),* the Fifth Circuit held that a creditors' committee has standing to assert and prosecute actions on behalf of a debtor's estate. 832 F.2d 1391, 1397 (5th Cir. 1987). The

---

[1]      Additionally, Huff purchased a secured claim against Noram from Square Mile Energy, LLC in the amount of $697,090.42.

HOU:2943289.3

following considerations should be considered in a court's analysis of whether a creditor should be authorized to pursue and prosecute the debtor's claims:

     (i)     are the estate's claims colorable;

     (ii)    did the debtor-in-possession unjustifiably refused to pursue such claims; and

     (iii)   did the creditor receive leave from the bankruptcy court to pursue such claims.

*Id.* 832 F.2d at 1397 ("We agree that these are relevant considerations, though not necessarily a formalistic checklist."). The Court, as a court of equity, has the authority to grant derivative standing to Huff in these chapter 7 cases. *See PW Enters., Inc. v. North Dakota Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892 (8th Cir. 2008); *Avalanche Maritime, Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029 (9th Cir. 1999). An analysis of these considerations supports the Court's authorization of Huff to pursue and prosecute the Claims on behalf of the estates.

## A. The Estates Hold Colorable Claims Against SKH

14. "On the issue of whether a claim is 'colorable,' the Court should consider whether the Committee has asserted 'claims for relief that on appropriate proof would support a recovery.'" *In re iPSC, Inc.*, 297 B.R. 283, 291 (Bankr. N.D. Ga. 2003) (citing *In re Tennessee Valley Steel Corp.*, 183 B.R. 795, 800 (Bankr. E.D. Tenn. 1995) (quoting *In re STN Enters., Inc.*, 779 F 2d 901, 905 (2d Cir. 1985)). In determining this issue, courts view the "colorable" standard as "whether the claim would survive a motion to dismiss for failure to state a claim." *Id.* at 292; *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (setting forth applicable standard for motion to dismiss). The claims must be construed in the light most favorable to the estates and the facts as alleged must be accepted as true. *In re iPSC, Inc.*, 297 B.R. at 291-92; *see Spring Service Texas, Inc. v. McConnell (In re McConnell)*, 122 B.R. 41, 44 (Bankr. S.D. Tex. 1989) (stating that claims are colorable if there is a possibility of success).

15.     There are colorable estate claims against SKH for breach of the representations

and warranties in the APA and recovery of fraudulent transfers/conveyances related to Ausam

overpaying for the Properties.[2] Huff intends on taking Rule 2004 examinations (or depositions

pursuant to Part VII of the Federal Rule of Bankruptcy Procedure) of SKH and other parties to

further investigate the identified causes of action and any other causes of action that may exists

against SKH.

## B.     The Trustee Has Consented to Huff's Standing

16.     The Trustee has consented to Huff's filing and prosecuting the Claims against

SKH. This consent negates the requirement that Huff show that the Trustee unjustifiably refused

to prosecute the Claims. "When the party seeking derivative standing has the consent of the

debtor-in-possession, the most important factor to be considered is whether the claims are

colorable." *In re iPSC, Inc.*, 297 B.R. 283, 291 (Bankr. N.D. Ga. 2003).[3] A number of courts

have held that a creditor should be authorized to file suit when a trustee consents to the creditor's

request to file suit and the creditor has shown that suit by the creditor is (i) in the best interest of

the bankruptcy estate; and (ii) is necessary and beneficial to the fair and efficient resolution of

the bankruptcy proceeding. *PW Enters., Inc. v. North Dakota Racing Comm'n (In re Racing

Servs., Inc.)*, 540 F.3d 892 (8th Cir, 2008); *Avalanche Maritime, Ltd. v. Parekh (In re Parmetex,

Inc.)*, 199 F.3d 1029 (9th Cir. 1999).

17.     The Trustee's consent shows that Huff is not usurping the Trustee's role. The

Trustee has requested clarification that any recoveries on the Claims will be received by the

---

[2]     Huff has conducted its own legal analysis of the breaches of representations and warranties and will share
same with the Court *in camera* but at this time does not believe it is appropriate to disclose this work
product.

[3]     *See also In re Commodore Int'l Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001); *In re Spaulding Composites Co.,
Inc.*, 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997) ("The question, then is whether a DIP may stipulate to
representation by an unsecured creditors' committee. We hold that it may."); *In re Enron Corp.*, 319 B.R.
at 132 ("Where a debtor in possession consents to suit by a committee, the test is met.").

Trustee on behalf of the estates. The Trustee has requested and Huff agrees that any settlement offers will be conveyed to the Trustee and that the Trustee will receive periodic reports from Huff of the status of the investigation and prosecution of the Claims. The Trustee has agreed that, subject to further order of the Court, Huff will be reimbursed for its reasonable costs and expenses from the first dollars received from the Claims.

18.     Huff's filing suit on and prosecution of the Claims is in the best interest of the Debtors' estates because Huff has identified significant value that may yield substantial recovery for the benefit of the estates and the estates have no resources to pursue the Claims. Huff's filing suit on and prosecution of the Claims is also necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. *See Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 71 (2d Cir. 2002) (holding both trustee and secured lender had standing to file joint complaint because it was a fair and efficient resolution of the bankruptcy proceeding because, in part, it prevented the likelihood of future litigation between the trustee and the lender). Significant value that should be recovered by the estates could be lost if Huff is not authorized to assert and prosecute the Claims. *See Whyte v. Williams (In re Williams)*, 152 B.R. 123, 128 (Bankr. N.D. Tex. 1992) (stating that "[w]ith a statute of limitations running, the creditors' committee successfully obtained [authorization to bring a action on behalf of the estate] in this case with respect to one cause of action.").

## C.     Huff Should Be Granted Leave Pursuant To This Motion

19.     Huff seeks leave from the Court for authority to assert and prosecute the Claims on behalf of the Debtors' estates.

20.     Huff and its counsel have performed an extensive and ongoing review of the Claims.   Huff's counsel charged with the investigation and prosecution of the Claims is experienced in litigation of this type and has recovered substantial judgments in similar cases

WHEREFORE Huff respectfully requests that this Court grant this Motion together with such further relief as may be just and proper.

Respectfully submitted this 28th day of July, 2009.

ANDREWS KURTH LLP

By: /s/ Timothy A. Davidson II
    Hugh Ray
    State Bar No. 16611000
    Timothy A. Davidson, II
    State Bar No. 24012503
    600 Travis, Suite 4200
    Houston, Texas 77002
    (713) 220-4200 (telephone)
    (713) 220-4285 (telecopy)

    ATTORNEYS FOR THE HUFF ENERGY FUND, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on July 28 2009, a true and correct copy of the foregoing Motion was served via ECF on those parties set up for ECF notice, and by United States First Class mail, postage prepaid, on the persons and entities listed on the attached Service List.

                    /s/ Timothy A. Davidson II
                    Timothy A. Davidson II

# EXHIBIT 3

**PLAINTIFF'S FIRST REQUESTS FOR
PRODUCTION TO DEFENDANTS THE
HUFF ENERGY FUND, L.P.
AND BARRY BORAK**



UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/28/2009

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 08-38222** |
| **NORAM RESOURCES, INC., and** | § | |
| | § | **Chapter 7** |
| **AUSAM ENERGY CORPORATION,** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.** | § | |

## ORDER GRANTING THE HUFF ENERGY FUND L.P.'S MOTION FOR AUTHORITY TO ASSERT CAUSES OF ACTION ON BEHALF OF THE DEBTORS' ESTATES
### [This Order corresponds to Docket No. 137]

Upon the Huff Energy Fund L.P.'s Motion for Authority to Assert Causes of Action on

Behalf of the Debtors' Estates (the "Motion"), and the Court having jurisdiction over the Motion

pursuant to 28 U.S.C. § 1334; and the Motion being a core proceeding under 28 U.S.C. §

157(b)(2); and after due and sufficient notice of the Motion; and after due deliberation and good

cause appearing that the relief sought in the Motion is in the best interests of the Debtors' estate

and is necessary and beneficial to the fair and efficient resolution of the Debtors' bankruptcy

proceedings, it is hereby ORDERED as follows:

    1.    That the Motion is GRANTED.

    2.    That pursuant to 11 U.S.C. §§ 105 and 503(b) The Huff Energy Fund, L.P.

("Huff"), as a representative of the Debtors' estates and on behalf of the estates, is authorized

and granted standing to investigate, commence and prosecute any and all legal proceedings and

actions (including appeals) in any court or other tribunal of competent jurisdiction related to the

Claims (as defined in the Motion), including filing complaints related to such Claims. Huff is

further given exclusive authority to make all procedural, strategic, substantive and logistical

decisions concerning any aspect of the above-described Claims to be brought pursuant to this

**EXHIBIT**

tabbies

3

Huff

Order by the Committee, provided, however, that Huff will provide any settlement offers and periodic status updates to the Chapter 7 Trustee (the "Trustee"). Should Huff decide not to investigate, commence and prosecute the Claims, it shall provide notice of such decision to the Trustee and SKH and the Trustee shall have exclusive control of the Claims.

3.     That in connection with the above-referenced Claims, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to Huff shall vest in Huff and its representatives, and the Trustee and Huff are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses.

4.     That the Trustee's providing documents and communications to Huff shall not constitute a waiver of any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) and likewise Huff's providing documents and communications to the Trustee shall not constitute a waiver of any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral).

5.     If Huff and SKH have not closed and consummated their draft settlement agreement on or before January 15, 2010, Huff is authorized to begin conducting discovery regarding the Claims. Huff shall not propound any discovery regarding the Claims prior to January 15, 2010. Nothing in this Order shall be deemed an adjudication of the Claims.

Signed this 28 day of _December_, 2009.

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 4

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANTS THE HUFF ENERGY FUND, L.P. AND BARRY BORAK



ANDREWS
ATTORNEYS  KURTH LLP

600 Travis, Suite 4200
Houston, Texas 77002
713.220.4200 Phone
713.220.4285 Fax
andrewskurth.com

Timothy Davidson
713.220.3810 Phone
713.238.7102 Fax
tdavidson@andrewskurth.com


April 1, 2010


David Jones
Porter & Hedges, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

   Re: *Case No. 08-38222; Noram Resources, Inc. and Ausam Energy Corp., Debtor –*
     **Notice Of Election Not To Prosecute Estate Claims Against SKH**

Dear David:

  Please take notice that pursuant to paragraph 2 of the Order Granting The Huff Energy Fund L.P.'s Motion for Authority to Assert Causes of Action on Behalf of the Debtors Estates [Docket No. 145], Huff[1] has decided not to further investigate, commence or prosecute the Claims against SKH.

           Very truly yours,



           Tad Davidson


07848:ebc

cc: Ed Dartley
  Bryan Bloom
  Edward J. Westmoreland
  Paul J. Sigmund (SKH)

**EXHIBIT**

4

---

[1] Capitalized terms not defined in this notice shall have the meaning ascribed in the Motion for Authority to Assert Causes of Action on Behalf of the Debtors Estates [Docket No. 137].

# EXHIBIT 5

# PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANTS THE HUFF ENERGY FUND, L.P. AND BARRY BORAK

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: | § |
| | § |
| NORAM RESOURCES, INC., and | § |
| AUSAM ENERGY CORPORATION, | § |
| | § |
| Debtors. | § |
| | § |
| SKH MANAGEMENT, L.P. *et al.*, | § |
| | § |
| Plaintiffs | § |
| | § |
| v. | § |
| | § |
| THE HUFF ENERGY FUND, L.P. *at al.*, | § |
| | § |
| Defendants. | § |
| | § |
| | § |
| | § |

Case No. 08-38222
(Jointly Administered)

CHAPTER 7

Adv. Pro. No. 09-03165

## AGREED MOTION TO DISMISS ADVERSARY PROCEEDING WITH PREJUDICE

SKH Management, L.P., SKH Management II, L.P., SKH Management III, L.L.C., SKH

Energy Fund, L.P., and Antares Exploration Fund, L.P. (collectively, "SKH") and The Huff

Energy Fund, L.P. and W.H. Ave, L.L.C. (collectively, "Huff") have entered into a Settlement

Agreement and Release and move jointly for dismissal with prejudice of all claims,

counterclaims, and causes of action asserted by the parties in the above-styled adversary

proceeding, with each party to bear its own attorneys' fees and costs. The parties request that the

Court grant this Agreed Motion to Dismiss with Prejudice and enter the Agreed Order submitted

herewith.



EXHIBIT
5

-1-

Respectfully submitted this 3rd day of February, 2010.

ANDREWS KURTH LLP

By: _____

Timothy A. Davidson, II
State Bar No. 24012503
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4200 (telephone)
(713) 220-4285 (telecopy)

ATTORNEYS FOR THE HUFF ENERGY
FUND, L.P. AND W.H. AVE, L.L.C.

By: _____

Mitchell E. Ayer

Rhett G. Campbell
SBN 03714500
Mitchell E. Ayer
SBN 01465500
Matthew R. Reed
SBN 24046693
THOMPSON & KNIGHT LLP
333 Clay Street, Suite 3300
Houston, Texas 77002
Phone: 713-654-8111
Fax: 713-654-1871

EDWARD J. WESTMORELAND, P.C.
Edward J. Westmoreland
State Bar No: 21227900
2000 Bering Drive, Suite 380
Houston, Texas 77057
(713) 334-7011- Telephone

COUNSEL FOR THE SKH FUNDS

-2-

HOU:2982647.2